Gabriel S. Gross (SBN 254672)
Gaby LaHatte (SBN 321844)
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, California 94065
Telephone: (650) 802-3000
Facsimile: (650) 802-3100
gabe.gross@weil.com
gaby.lahatte@weil.com

Christopher W. Henry (*pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
1001 Boylston Street, Suite 300
Boston, Massachusetts 02115
Telephone: (617) 772-8300
Facsimile: (617) 772-8333
chris.henry@weil.com

Rachel L. Weiner Cohen (*pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, DC 20036
Telephone: (202) 682-7000
Facsimile: (202) 857-0940
rachel.cohen@weil.com

John M. Desmarais (SBN 320875)
DESMARAIS LLP
230 Park Avenue, 26th Floor
New York, New York 10169
Telephone: (212) 351-3400
Facsimile: (212) 351-3401
jdesmarais@desmaraisllp.com

*Attorneys for Plaintiff Apple Inc.*

[Additional counsel listed in signature block]

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC.,<br><br>　　　　　　Plaintiff,<br><br>　　vs.<br><br>CHANG LIU, TANG YEW TAN, OPENAI FOUNDATION f/k/a OPENAI, INC., OPENAI GROUP PBC, and IO PRODUCTS, LLC F/K/A IO PRODUCTS, INC.,<br><br>　　　　　　Defendants. | Case No. 5:26-cv-07078-EJD<br><br>**DECLARATION OF PARIN PATEL IN SUPPORT OF PLAINTIFF APPLE INC.'S MOTION FOR PRELIMINARY INJUNCTION**<br><br>**REDACTED Version of Document Filed Under Seal**<br><br>**Judge:** Edward J. Davila<br><br>**Complaint Filed:** July 10, 2026 |

| TABLE OF EXHIBITS | |
|---|---|
| **Ex.** | **Description** |
| 1 | DisplayNotes.key |
| 2 | DisplayNotes(DonotChange).key |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | |
| 8 | |
| 9 | |
| 10 | |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | Global Security Requirements for Physical Security |
| 28 | Global Security Requirements for Prototype Field Testing |
| 29 | Global Security Requirements for Transporting Prototypes |
| 30 | Global Security Requirements for Protecting Your Devices |
| 31 | Global Security Requirements for Data Storage and Residency |
| 32 | Global Security Requirements for Network Segmentation |
| 33 | Global Security Requirements for Data Protection |
| 34 | Global Security Requirements for Avoiding Spoilers |
| 35 | Global Security Requirements for Products & Surprise |
| 36 | Global Security Requirements for Confidentiality & Disclosure |
| 37 | Global Security Requirements for Employee Use of Electronic Systems |
| 38 | Global Security Requirements for Data Classification and Risk Assessment |
| 39 | Global Security Requirements for Access Control |

**TABLE OF CONTENTS**

**Page**

I.     APPLE HARDWARE AND RELATED PROPRIETARY INFORMATION ........................1

     A.     DisplayNotes.key & DisplayNotes(DonotChange).key ................................................3

                                  .......9

                                    .....11

                                    .....13

                                    .....14

                                    .....17

                                    .....21

     H.     Additional Apple Documents ......................................................................................24

     I.     Apple Hardware Components, Parts, and Samples ......................................................25

     J.     Apple Codenames .....................................................................................................26

II.     HOW APPLE PROTECTS ITS PROPRIETARY INFORMATION ....................................26

I, Parin Patel, declare as follows:

1. I am currently employed by Apple as Senior Director, Hardware Engineering, on the iPhone systems team. The iPhone systems team is responsible for electrical engineering at a product level. The role encompasses the definition of specifications, integration of components, validation testing, failure analysis, and cross-functional coordination among hardware, software, and operations teams. I have been a member of this team since 2007. In my role, I work on iPhones and AirPods, as well as power systems, including the hardware team that Chang Liu worked on during his time at Apple. Given my role, I am familiar with the projects and programs reflected in the documents discussed below.

2. I have access to and personal knowledge of the matters and information set out in this declaration, and if I were asked to testify about the issues I address here, I could competently testify to them.

3. Having worked at Apple for 19 years, I am familiar with certain information Apple protects as confidential and proprietary and the measures it takes to protect that information. For example, I can confirm that the proprietary Apple documents and records I discuss in this declaration are maintained in the regular course of Apple's business and access to these documents is limited to those employees with a need-to-know basis in connection with their work on particular projects.

## I. APPLE HARDWARE AND RELATED PROPRIETARY INFORMATION

4. I was asked to review and explain the contents of the 26 documents listed in the table below. True and correct copies of these documents are attached to this declaration as the exhibits indicated in the table.

| Ex. | Document Filename |
|---|---|
| 1 | DisplayNotes.key |
| 2 | DisplayNotes(DonotChange).key |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | |
| 8 | |
| 9 | |
| 10 | |

Declaration of Parin Patel ISO
Apple's Motion for Preliminary Injunction

| Ex. | Document Filename |  |
|-----|-------------------|--|
| 11 | | |
| 12 | | |
| 13 | | |
| 14 | | |
| 15 | | |
| 16 | | |
| 17 | | |
| 18 | | |
| 19 | | |
| 20 | | |
| 21 | | |
| 22 | | |
| 23 | | |
| 24 | | |
| 25 | | |
| 26 | | |

5.    As I describe in further detail below, the 26 documents in the table above contain Apple's confidential and proprietary information related to hardware development, including consumer electronics and confidential unreleased products.  To ensure the confidentiality of this information, Apple implements certain protective measures.  For example, as I discuss further below, Apple uses internal codenames to refer to certain projects████████████████████████ *See* Section II.  The use of internal codenames to anonymize projects within Apple is itself a measure implemented to keep confidential information on a need-to-know basis.  Apple also limits this information to a need-to-know basis, as this information reflects years of significant investment (billions of dollars), knowledge accumulated over multiple product generations, and research and development, including design, testing, refinement, and quality assurance (Q/A).  Because some of this information is critical to Apple's R&D, product development, and resulting competitive position in the marketplace, as I explain in more detail below, we are especially cautious when handling or transmitting this information and we ensure that this information is subject to strict protections.  *See id*.  Competitors would also find this information valuable, as Apple is a leader in hardware development and its confidential and proprietary information related to hardware development could provide a competitive edge.

6.    Some of the information included in these documents is not generally known or otherwise available to the mobile hardware manufacturing industry or the public, and if competitors

were to obtain this information, they would gain a significant advantage in the development of consumer electronics hardware at the expense of Apple's years of labor and investment.

  A.  **DisplayNotes.key & DisplayNotes(DonotChange).key**

**SECTIONS OF THIS FILING COVERING CONFIDENTIAL TRADE SECRET INFORMATION HAVE BEEN FILED MANUALLY WITH THE COURT**

its own development efforts.

**J.      Apple Codenames**

72.      Apple uses internal codenames for its internal R&D projects.  This allows Apple personnel to refer to projects without using a descriptor that might divulge the confidential nature of the product, and also gives Apple an internal nomenclature that is not intended for use outside the company. ███████████████████████████████████████████ ███████████████ as discussed above.  Apple's codenames are confidential.  Even within Apple, employees do not know what all codenames refer to—employees generally know the codenames that relate to the projects with which they are involved.  And if a codename is mentioned or used outside of Apple by a third party, Apple does not confirm the codename or what it is used for.  Apple's use of codenames is consistent with its long-standing practice of keeping sensitive information protected on a need-to-know basis, which Apple has done for as long as I have been employed here.

**II.      HOW APPLE PROTECTS ITS PROPRIETARY INFORMATION**

73.      Apple implements multiple policies, security measures, and practices to protect its confidential and proprietary information, including the policies, measures, and practices I describe below.  These or similar policies, measures, and practices have been in place for years at Apple.

74.      Apple implements physical security measures to protect its confidential information. For example, Apple limits employees' access to buildings on Apple's campuses.  Where I work, the building is locked, there are security cameras, and there are security personnel as well at the entrance. Someone can only access the building using a key card that grants them access.  From my experience, I know that this key card access is building-specific.  In other words, my badge only allows me to enter the buildings I have been granted access to for my role and would not permit me to enter other buildings on Apple's campuses, which are similarly protected.

75.      Apple strictly monitors visits from non-employees.  Visitors are required to check-in with reception or security, sign nondisclosure agreements before being allowed to enter the campus and be escorted by an Apple employee during their visit.  A true and correct copy of Apple's Global Security Requirements for Physical Security is attached to this declaration as Exhibit 27.

76.      Apple has restrictions on how employees handle confidential prototypes.  For example,

before any employee personally transports any prototype outside of Apple, they must get approval. Apple employees are also prohibited from leaving Apple prototypes with unreleased software or Apple proprietary information unattended and accessible. Employees are not permitted to leave such devices in their cars, for example, and they are advised to exercise caution when such devices are brought home or into public places. True and correct copies of Apple's Global Security Requirements for Prototype Field Testing, Transporting Prototypes, and Protecting Your Devices are attached to this declaration as Exhibits 28–30.

77.     Apple also implements digital security measures to protect its confidential information. Based on my experience, I know that Apple's network and servers are password-protected and firewall-protected, and that access to these systems is limited to current employees with valid credentials. Apple keeps proprietary information in multiple internal databases. In my experience, access to proprietary information in these databases is limited to those within Apple's virtual private network ("VPN"). Also, once an employee leaves Apple, access to Apple's systems is deactivated such that a former employee cannot log into Apple's networks, servers, or systems he or she leaves. True and correct copies of Apple's Global Security Requirements for Data Storage and Residency, Network Segmentation, and Data Protection are attached to this declaration as Exhibits 31–33.

78.     Apple also uses database and collaboration systems with permission controls to ensure access only on a need-to-know basis. Apple employees must be granted permission to access a specific project, or a section of the project to which they are assigned. Apple uses an internal software tool to manage requests for project disclosure and maintain a record of all permissions, to keep track of the circulation of confidential information. Apple employees are prohibited from sharing information about certain projects with other employees who have not been granted permission. Further, as I discussed above, we are taught to use internal codenames when discussing unannounced products or services and to not use third-party messaging apps to discuss Apple proprietary information. True and correct copies of Apple's Global Security Requirements for Avoiding Spoilers, Products & Surprise, Confidentiality & Disclosure, and Employee Use of Electronic Systems are attached to this declaration as Exhibits 34–37.

79.     Additionally, when Apple's teams begin development projects, they are instructed to

assess the type of data that will be handled, determine the required security posture, which will dictate the security controls to be applied, and document that determination. True and correct copies of Apple's Global Security Requirements for Data Classification and Risk Assessment and Access Control are attached to this declaration as Exhibits 38–39. The information I discussed above in Section I is all valuable and proprietary and thus would be subject to stricter confidentiality protections than other, less sensitive information.

80.    Apple also implements contractual measures to protect its confidential information. When I started working at Apple, I signed an Intellectual Property Agreement (IPA), agreeing to protect Apple's confidential information, including trade secrets, during and after my employment. To the best of my knowledge, all Apple employees sign the same or similar IPAs when they join Apple.

81.    It is clear to employees that Apple confidential and proprietary information cannot be used or disclosed unless that is needed to do our jobs. Apple makes clear to employees through the trainings and the above policies how to protect confidential information on a day-to-day basis and use best efforts to safeguard Apple's confidential information. For example, I know that if I were to leave Apple, I would be required to return to Apple any property, documents, and materials containing Apple confidential information that I have in my possession, including in cloud repositories. I could not take Apple information with me. This is well known and appreciated throughout Apple.

82.    Apple also requires employees to complete annual training that covers protections of Apple's confidential information. For example, every year I complete a "Business Conduct" course that goes over examples of what Apple employees should do to protect Apple's confidential information. And I have been given specific guidance on how to handle projects with varying levels of sensitivity, including projects involving the confidential and proprietary information I have discussed in this declaration, which includes some of the most sensitive information at Apple.

I declare under penalty of perjury that, to the best of my knowledge, the foregoing is true and correct.

Executed in Sunnyvale, California on August 3, 2026.

_____

Parin Patel