REDACTED VERSION OF
DOCUMENT FILED
UNDER SEAL

Gabriel S. Gross (SBN 254672)
Gaby LaHatte (SBN 321844)
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, California 94065
Telephone: (650) 802-3000
Facsimile: (650) 802-3100
gabe.gross@weil.com
gaby.lahatte@weil.com

Christopher W. Henry (*pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
1001 Boylston Street, Suite 300
Boston, Massachusetts 02115
Telephone: (617) 772-8300
Facsimile: (617) 772-8333
chris.henry@weil.com

Rachel L. Weiner Cohen (*pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, DC 20036
Telephone: (202) 682-7000
Facsimile: (202) 857-0940
rachel.cohen@weil.com

*Attorneys for Plaintiff Apple Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC.,<br><br>Plaintiff,<br><br>vs.<br><br>CHANG LIU, TANG YEW TAN, OPENAI FOUNDATION f/k/a OPENAI, INC., OPENAI GROUP PBC, and IO PRODUCTS, LLC f/k/a IO PRODUCTS, INC.,<br><br>Defendants. | Case No. 5:26-cv-07078-EJD<br><br>**DECLARATION OF JOY IEYOUB IN SUPPORT OF PLAINTIFF APPLE INC.'S MOTION FOR PRELIMINARY INJUNCTION**<br><br>**Highly Confidential – Outside Attorney's Eyes Only**<br><br>**Judge:** Edward J. Davila<br><br>**Complaint Filed:** July 10, 2026 |

DECLARATION OF JOY IEYOUB
APPLE'S MOT. FOR PREL. INJ.

| TABLE OF EXHIBITS | |
|---|---|
| **Ex.** | **Description** |
| A | Security @ Apple |
| B | Form IPA |
| C | Tang Yew Tan IPA |
| D | Chang Liu 2017 IPA |
| E | Chang Liu 2018 IPA |
| F | 2026 Business Conduct Policy |
| G | 2026 Worldwide Business Conduct Training |
| H | Manager's Checklist for Voluntary Termination |
| I | Checklist for Employees Leaving Apple |
| J | ███████████████████████ |
| K | ███████████████████████ |
| L | Confidentiality Reminder |

CASE NO. 5:26-CV-07078-EJD

DECLARATION OF JOY IEYOUB
APPLE'S MOT. FOR PREL. INJ.

i

I, Joy Ieyoub, declare as follows:

1.    I am a Senior Manager of Human Resources for Apple Inc. ("Apple" or the "Company"). I started working at Apple in January of 2011. I manage a team of People Business Partners ("PBPs") in the Hardware Engineering organization. As part of my role, I am knowledgeable about onboarding and offboarding of certain Apple employees and assist with implementing policies to protect Apple's confidential information. I am also familiar with certain confidentiality and security measures that Apple adopts to protect its secret information. The facts stated in this declaration are true and correct based on my personal knowledge, review of documents, and/or based on information provided to me by others.

2.    People choose to work at Apple to work on innovative products with world class engineers. Apple aims to surprise and delight its customers with novel technologies and products, and our employees want to be a part of that cutting-edge development. Apple's foundation and culture are centered around consistently innovating and making new and exciting products for its customers. For example, the entire industry, and greater public, anticipates that each year Apple will deliver previously unannounced and new state-of-the-art products, tools, technologies, and designs that become an important aspect of so many people's lives. This culture of anticipation and reveal can only work if Apple and its employees work together to keep its proprietary information and trade secrets confidential and out of the public's and competitors' knowledge. As a result, employees have a responsibility to their Company, colleagues, and customers to maintain secrecy and confidentiality.

3.    Apple has robust security measures, including contractual, physical, and digital, to keep products new, innovative, and of the design, look, and feel that is unique to Apple. Apple also provides trainings, reminders, and tools to create, maintain, and foster a culture of confidentiality to protect the Company's proprietary information. One reason why Apple so diligently and rigorously reminds and trains its people on confidentiality is to educate them and instill its values. Apple trusts its employees to be part of the fabric of who Apple is and what it delivers. Apple trusts its employees to act with integrity and do the right thing, having educated and taught them about Apple's expectations and how to execute them. Apple strives to achieve compliance with its policies and deter

any misconduct or violations.

4.     Apple diligently protects the secrecy of its proprietary and confidential information. Apple employs many professionals devoted to maintaining and enhancing the security required to protect Apple's proprietary information, including digital and physical security. Apple's security measures empower teams across the Company to maintain confidentiality over new products, to supervise the implementation of all secrecy policies, and to mitigate and address potential breaches. These teams include the following organizations:



Exhibit A (Security @ Apple) at 2. A copy of the "Security @ Apple" internal webpage is attached hereto as Exhibit A (Security @ Apple).

5.     Apple maintains secure facilities, including by locking its buildings, requiring access cards and required visitor escorts, having security personnel and cameras, and other controls to prevent unauthorized access to Apple facilities and information stored in them. Apple has digital security protections, including by keeping proprietary and confidential information in internal databases protected by several layers of access controls, password protection, and firewalls.

6.     Apple also protects its proprietary and trade secret designs and investments in research and development, including through contractual agreements. One of the critical agreements for protecting Apple's proprietary and trade secret information is the Intellectual Property Agreement ("IPA"). A copy of Apple's current "Form IPA" is attached hereto as Exhibit B (Form IPA). Each of the Individual Defendants executed an IPA at the outset of their employment.

CASE NO. 5:26-CV-07078-EJD

DECLARATION OF JOY IEYOUB
APPLE'S MOT. FOR PREL. INJ.

## I.    Executed IPAs

7.    The executed IPA for Tang Yew Tan is attached hereto as Exhibit C (Tang Yew Tan IPA).

8.    Chang Liu executed two IPAs during his tenure at Apple, one in conjunction with his internship and the other with his role as Hardware Development Engineer. The executed IPAs for Chang Liu are attached hereto as Exhibit D (Chang Liu 2017 IPA) and Exhibit E (Chang Liu 2018 IPA).

## II.    Confidentiality Obligations

9.    During new employee orientation, all employees are instructed on the importance of confidentiality at Apple and their obligations to uphold their IPAs. Apple also informs new employees of the importance of upholding the IPAs of their previous employers.

10.    Apple also provides its employees with rules and guidance on how to preserve the confidentiality of Apple's proprietary information. These materials specifically forbid the distribution of Apple's confidential information to others except on a need-to-know basis.

11.    Apple employees also complete mandatory trainings on, among other things, their confidentiality obligations. For example, Apple's long-standing Business Conduct Policy, a copy of which is attached hereto as Exhibit F, instructs employees how to adhere to their confidentiality obligations and preserve Apple's proprietary information. Exhibit F (2026 Business Conduct Policy). The Business Conduct Policy has been in existence since the start of my employment, is updated from time-to-time, and remains in effect through today. *See* Exhibit F (2026 Business Conduct Policy).

12.    Apple reinforces the Business Conduct Policy with interactive mandatory Business Conduct trainings, where employees verify that they understand the Business Conduct Policy and agree to its provisions. Exhibit G (2026 Worldwide Business Conduct Training at 202). The trainings have been given routinely during my tenure at Apple and are updated regularly. The most recent version is attached hereto as Exhibit G (2026 Worldwide Business Conduct Training). Tang Tan and Chang Liu both completed these trainings, including in the several years before their respective departures. For example, I confirmed that Mr. Tan certified compliance in 2020, 2021, 2022, and

2023, and that Mr. Liu certified compliance in 2020, 2021, 2022, 2023, 2024, and 2025.

13.    In addition to these formal required trainings, Apple's New Product Security Team holds sessions to further communicate to employees the expectations around preserving and protecting Apple's proprietary information and trade secrets. These sessions are often delivered by senior leaders to reiterate the culture of secrecy and confidentiality.

14.    Apple also reminds departing employees of their confidentiality obligations and instructs them to return any Apple proprietary information before leaving Apple. The Hardware Engineering (HWE) PBPs provide HWE managers with a "Manager's Checklist for Voluntary Termination," a copy of which is attached hereto as Exhibit H. This document, marked "Need to Know," describes security procedures for employee departures and includes a confidentiality reminder. Exhibit H (Manager's Checklist for Voluntary Termination). For all departing employees, Apple provides a "Checklist for Employees Leaving Apple" to guide departing employees through their responsibilities, including preserving confidentiality of intellectual property and returning Apple property and confidential information. Exhibit I (Checklist for Employees Leaving Apple). This checklist, a copy of which is attached hereto as Exhibit I, also includes a confidentiality reminder, which reminds departing employees that they are "expected to continue to abide by the provisions of the Intellectual Property Agreement after [their] employment with Apple ends." Exhibit I at 4.

15.    Apple instructs departing employees that they must return Apple-issued devices, including laptops and mobile devices, as well as their badges and other Apple-owned equipment. Moreover, employees with access to certain particularly sensitive information, including certain HWE employees, are subject to additional protective measures.

Exhibit K

Copies of the

are attached hereto as Exhibits J and K.

CASE NO. 5:26-CV-07078-EJD

4

DECLARATION OF JOY IEYOUB
APPLE'S MOT. FOR PREL. INJ.

These exit procedures are part of Apple's overall strategy for protecting its trade secrets. Exhibit J ███████████████████████████████████████████ at 2. The security, human resources, and business teams work together to swiftly provide the departing employee with a "Confidentiality Reminder" for signature, a copy of which is attached hereto as Exhibit L; a link to book an exit interview with Apple's Global Security team; and directions on how to return their Apple-issued devices. Employees are also reminded not to "inadvertently leav[e] with any Apple Confidential Information or devices." Exhibit L at 3. ████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████

16.    The PBP team that supports HWE typically conducts exit interviews for departing HWE employees to obtain insight into reasons for attrition. PBPs often fill out a form with the departing employees' responses and that form is stored by Apple in the normal course of business.

**III.    Personnel Records**

17.    I have reviewed the personnel records for Tang Yew Tan. Mr. Tan was hired by Apple in March of 1999 to work as a Digital Hub Product Designer and was promoted into various roles in hardware engineering, with the latest being Vice President of iPhone & Apple Watch Product Design in March 2017. Mr. Tan executed an IPA on February 8, 1999. Exhibit C (Tang Yew Tan IPA).

18.    Mr. Tan notified Apple around November 2023 of his intention to leave Apple. Mr. Tan provided Apple with an official resignation letter on January 17, 2024. Mr. Tan stated that he would turn in his Apple computer and badge and all Apple property in his possession. Mr. Tan's last day in the office was February 2, 2024, and he turned in his badge and various Apple-issued devices at that time. Mr. Tan took accrued Paid Time Off (PTO) from February 2 until February 29, 2024, his official departure date. Before Mr. Tan left, he received the Manager's Checklist for Voluntary Termination, which I understand he accessed along with the Checklist for Employees Leaving Apple. I also understand that Mr. Tan affirmatively requested and received a copy of his IPA before he left.

19.    I have reviewed the personnel records for Chang Liu. Mr. Liu was hired by Apple from January 2018 to August 2018 to work as an iPhone Hardware Intern and again in February 2019 as a

Hardware Development Engineer.

20.    Mr. Liu executed IPAs on October 20, 2017 and September 16, 2018. Exhibit D (Chang Liu 2017 IPA); Exhibit E (Chang Liu 2018 IPA).

21.    Mr. Liu spent nearly eight years at Apple in the Hardware Engineering group working on some of Apple's most sensitive product development programs before leaving in January 2026.

22.    On Thursday, January 22, 2026, Mr. Liu provided notice that he was leaving Apple. I understand that Mr. Liu's manager walked him through the Manager's Exit Checklist. Promptly thereafter, Apple personnel sent Mr. Liu written requests to sign the Confidentiality Reminder, schedule an exit interview with Global Security, and return his Apple-issued devices. Mr. Liu did not respond to the Apple Security Group's email and slack message regarding exit procedures, failed to sign Apple's Confidentiality Reminder, failed to schedule a Global Security exit interview, and was otherwise unresponsive to Apple's departure-related communications.

23.    Mr. Liu exited Apple on January 22, 2026 at or around 5 PM local time. Mr. Liu did not provide two weeks' notice. I understand Mr. Liu started at OpenAI early the following week.

24.    I have reviewed the personnel records for Yu-Ting ("Alyssa") Peng. Ms. Peng was most recently employed by Apple between July 2021 and April 2026.

25.    I have reviewed the personnel records for each of the individuals listed in Table 1.0 and provided their most recent employment dates. I reference each by Individual No. out of an abundance of caution with respect to their privacy.

CASE NO. 5:26-CV-07078-EJD

DECLARATION OF JOY IEYOUB
APPLE'S MOT. FOR PREL. INJ.

**Table 1.0 Employment Dates**

| Individual | Most Recent Apple Employment Dates |
|---|---|
| Individual No. 1 | ██████████████ |
| Individual No. 2 | ████████████████████ |
| Individual No. 3 | ███████████ |
| Individual No. 4 | ██████████ |
| Individual No. 6 | █████████████ |
| Individual No. 7 | █████████████ |
| Individual No. 8 | █████████████ |
| Individual No. 9 | █████████████ |
| Individual No. 10 | ████████████ |
| Individual No. 11 | ████████████ |
| Individual No. 12 | █████████████ |
| Individual No. 13 | ███████████ |
| Individual No. 14 | █████████████ |

CASE NO. 5:26-CV-07078-EJD                    DECLARATION OF JOY IEYOUB
APPLE'S MOT. FOR PREL. INJ.

7

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct.

Executed in _Cupertino_, California on July 31, 2026.

_____
Joy Ieyoub

CASE NO. 5:26-CV-07078-EJD                    DECLARATION OF JOY IEYOUB
APPLE'S MOT. FOR PREL. INJ.

8