**REDACTED VERSION OF DOCUMENT FILED UNDER SEAL**

Gabriel S. Gross (SBN 254672)
Gaby LaHatte (SBN 321844)
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, California 94065
Telephone: (650) 802-3000
Facsimile: (650) 802-3100
gabe.gross@weil.com
gaby.lahatte@weil.com

Christopher W. Henry (*pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
1001 Boylston Street, Suite 300
Boston, Massachusetts 02115
Telephone: (617) 772-8300
Facsimile: (617) 772-8333
chris.henry@weil.com

Rachel L. Weiner Cohen (*pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, DC 20036
Telephone: (202) 682-7000
Facsimile: (202) 857-0940
rachel.cohen@weil.com

John M. Desmarais (SBN 320875)
DESMARAIS LLP
230 Park Avenue, 26th Floor
New York, New York 10169
Telephone: (212) 351-3400
Facsimile: (212) 351-3401
jdesmarais@desmaraisllp.com

*Attorneys for Plaintiff Apple Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC.,<br><br>    Plaintiff,<br><br>    vs.<br><br>CHANG LIU, TANG YEW TAN, OPENAI FOUNDATION f/k/a OPENAI, INC., OPENAI GROUP PBC, and IO PRODUCTS, LLC f/k/a IO PRODUCTS, INC.,<br><br>    Defendants. | Case No. 5:26-cv-07078-EJD<br><br>**DECLARATION OF DANIEL ROFFMAN IN SUPPORT OF PLAINTIFF APPLE INC.'S MOTION FOR PRELIMINARY INJUNCTION**<br><br>**Judge:** Edward J. Davila<br><br>**Complaint Filed:** July 10, 2026 |

CASE NO. 5:26-CV-07078-EJD                    DECLARATION OF D. ROFFMAN

# **TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ...................................................................................................1

    A.   Table of Exhibits..........................................................................................1

    B.   Summary of Qualifications...........................................................................2

II.  SUMMARY OF INVESTIGATION TO DATE.....................................................3

III. MY DIGITAL FORENSICS INVESTIGATION ...................................................4

    A.   Chang Liu......................................................................................................5

    B.   Yu-Ting "Alyssa" Peng ................................................................................8

    C.   Individual No. 1 ...........................................................................................11

    D.   Other Former Apple Employees ...................................................................13

IV.  NEXT STEPS ........................................................................................................17

## I.   INTRODUCTION

1.     My name is Daniel Roffman. I am a Vice President in the Forensic Services Practice at Charles River Associates, Inc. ("CRA"). I have over twenty years of digital forensics and information security consulting experience, helping clients protect their most valuable information, and investigating allegations of cyber incidents. My primary job duties involve leading digital forensic investigations and providing expert advice or testimony for clients.

2.     I was retained by Apple Inc. through CRA in connection with the above-captioned lawsuit to investigate and provide analyses of certain technical aspects of this dispute relating to digital forensics and information security.

3.     CRA is being compensated at rates ranging between approximately $446/hour and $705/hour for work relating to this matter. CRA's compensation, including mine, is not tied to the substance of any analyses or the outcomes of CRA's investigation or this case, in any way.

4.     If called upon to testify, I would do so consistent with the statements and opinions contained in this declaration.

### A.   Table of Exhibits

5.     The documents I discuss in this declaration are identified in the "Table of Exhibits" below. True and correct copies of these documents are attached to this declaration, as the exhibits noted.

| TABLE OF EXHIBITS | |
| --- | --- |
| Ex. | Description |
| A | Daniel Roffman *Curriculum Vitae* |
| B | Chang Liu's Downloads from Apple's Repository |
| C | iMessages Collected from Chang Liu's Apple-Issued Work MacBook (certified translations) |
| D | Certification of Translation for iMessages Collected from Chang Liu's Apple-Issued Work MacBook |
| E | iMessages Collected from Yu-Ting "Alyssa" Peng's Apple-Issued Work MacBook (certified translations) |
| F | Certification of Translation for iMessages Collected from Alyssa Peng's Apple-Issued Work MacBook |

CASE NO. 5:26-CV-07078-EJD                    DECLARATION OF D. ROFFMAN

| G | iMessages Collected from Individual No. 1's[1] Apple-Issued Work MacBook (certified translations) |
| H | Certification of Translation for iMessages Collected from Individual No. 1's Apple-Issued Work MacBook |
| I | Individual No. 1 Download Screenshot No. 1 |
| J | Individual No. 1 Download Screenshot No. 2 |
| K | Individual No. 1's Apple-Issued Work MacBook Download |
| L | iMessages Collected from Individual No. 2's Apple-Issued Work MacBook |
| M | iMessages Collected from Individual No. 3's Apple-Issued Work MacBook |
| N | Checklist Extracted from Individual No. 3's Apple-Issued Work MacBook |
| O | iMessages Collected from Individual No. 4's Apple-Issued Work MacBook |
| P | iMessages Collected from Individual No. 6's Apple-Issued Work MacBook |
| Q | iMessages Collected from Individual No. 7's Apple-Issued Work MacBook |
| R | iMessages Collected from Individual No. 8's Apple-Issued Work MacBook |
| S | iMessages Collected from Individual No. 9's Apple-Issued Work MacBook |
| T | Safari Internet History from Individual No. 9's Apple-Issued Work MacBook |
| U | iMessages Collected from Individual No. 10's Apple-Issued Work MacBook |
| V | iMessages Collected from Individual No. 12's Apple-Issued Work MacBook. |
| W | iMessages Collected from Individual No. 14's Apple-Issued Work MacBook. |

### B.   Summary of Qualifications

6.   I am a VP in the Forensic Services Practice at CRA and have over twenty years of digital forensics and information security consulting experience.

7.   Before I joined CRA, I was a Senior Managing Director at FTI Consulting in their digital forensics practice for fifteen years. I also previously worked in the High Technology Investigations Unit of the Criminal Division of the US Department of Justice. At the DOJ, I assisted in investigations and developed software that was used to track IP addresses and websites that the DOJ investigators analyzed.

---

[1] In this declaration, I do not use the names of individuals mentioned or referred to in the documents and materials I reviewed unless they were already identified in filings in this case.  Instead, out of an abundance of caution with respect to the privacy of such individuals, I use the placeholders "Individual No. 1," "Individual No. 2," etc.

CASE NO. 5:26-CV-07078-EJD                    DECLARATION OF D. ROFFMAN

2

8.     I have extensive testifying experience and have served as a court-appointed neutral expert in matters involving misappropriation of trade secrets and file deletions and alteration, and recovery of various types of files.

9.     I am a recognized thought leader in the industry, a frequently requested speaker at conferences, an author of numerous articles and whitepapers on digital forensics, cybersecurity, and trade secret theft, and an innovator in developing unique digital forensics solutions.

10.    I hold a bachelor's degree in Information Systems from the University of Maryland, as well as the EnCase Certified Examiner certification for complex computer investigations and analysis. I have been recognized nine times by Lexology (formerly "Who's Who Legal"), an organization that identifies the foremost practitioners and consulting experts based on comprehensive, independent research.

11.    A copy of my CV is attached to this declaration as Exhibit A.

## II.     SUMMARY OF INVESTIGATION TO DATE

12.    After January 22, 2026, which is when I understand Chang Liu left Apple for OpenAI, Mr. Liu downloaded at least 37 unique documents through Apple's repository on five separate occasions from February 8, 2026 to April 27, 2026. Ex. B.

13.    After January 22, 2026, Mr. Liu exchanged iMessages with Yu-Ting "Alyssa" Peng over Ms. Peng's Apple-issued work MacBook discussing among other things:

- ███████████████████████████████████████ (Ex. E);
- ███████████████████████████████████████ (Ex. E);
- ███████████████ (Ex. E);[2]
- ██████████████████████████ (Ex. E);
- ███████████████████████████████████████ (Ex. E); and

---

[2] LINE is a "secure messaging" app that offers end-to-end encryption, meaning the content of messages is encrypted so that only the sender and recipient can read them. *See* https://www.line.me/en/#communication.

CASE NO. 5:26-CV-07078-EJD                    DECLARATION OF D. ROFFMAN

- ████████████████████████████████████████ (Ex. E).

14.     My investigation of Apple-issued work MacBooks also found the following exchanges between individuals affiliated with or employed by OpenAI or io and individuals who were Apple employees at the time:

- August 25, 2024: ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ Ex. L.

- September 23, 2024: ███████████████████████████████████████████████████████████████████████████████████████████████ Ex. L.

- September 2, 2025: ██████████████████████████████████████████████ Ex. R.

- January 9, 2026 ███████████████████████████████████████████████████████████████ Ex. V.

- March 22, 2025: █████████████████████████████████████████████████████████████████████████████████████████████████████████ Exs. M-N.

- June 24, 2025: ██████████████████████████████; Ex. P ███████████████; Ex. Q ██████████; Ex. N (the checklist.)

- April 15, 2026: ███████████████████████████████████████████████████████████████████ Ex. W.

## III.    MY DIGITAL FORENSICS INVESTIGATION

15.     As noted above, I investigated the departures of certain former Apple employees who left Apple for OpenAI and io, including Mr. Liu. Below I describe certain work I undertook and directed,

including my investigation of Mr. Liu. The work described in this declaration was performed by me or others on the CRA team that I supervised and directed.

### A. Chang Liu

16.    I conducted a digital forensic investigation of Chang Liu's Apple-issued work MacBook, serial number █████████ (the "Liu MacBook"). My analysis was conducted on a forensic image of the Liu MacBook. Forensic images are copies of all the data on a computer—a bit-by-bit copy of the computer's storage—and used by forensic examiners to conduct their investigations.

17.    I also analyzed Mr. Liu's communications with others that were retained on his Apple-issued work MacBook after his departure, such as his iMessages, including correspondence with Yu-Ting "Alyssa" Peng. Exhibit C is a true and correct copy of certified translations of iMessages sent and received by Mr. Liu on his Apple-issued work MacBook on January 23, 2026. I also analyzed messages collected from Apple-issued work MacBooks that had been issued to others who received Mr. Liu's messages, including Ms. Peng and Individual No. 1. Exhibit E is a true and correct copy of certified translations of iMessages sent and received by Ms. Peng on her Apple-issued work Macbook.

18.    I understand that Mr. Liu left Apple on January 22, 2026. *See* Ieyoub Decl. ¶¶ 22-23; *see also* Ex. C, Mr. Liu Jan. 23, 2026 Apple-issued work MacBook iMessage (████████████ ███████"). Mr. Liu and Ms. Peng exchanged the Apple-issued work MacBook iMessages shown in Exhibit E on January 22, 2026. (The Coordinated Universal Time (UTC) times used in Exhibit E are eight hours ahead of Pacific Time (PT), so the messages are from January 22, 2026 in Pacific Time.). ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████ Ex. E.

19.    In addition to investigating Mr. Liu's Apple-issued work MacBook and his communications on that Apple-issued work MacBook, I investigated Mr. Liu's activities relating to his use of third-party cloud storage. Apple employees use a third-party cloud repository for secure cloud-based storage. I investigated reports relating to third-party cloud storage comprising information about Mr. Liu's activities through May 29, 2026.

---

CASE NO. 5:26-CV-07078-EJD                                          DECLARATION OF D. ROFFMAN

20.     From February 8, 2026 to April 27, 2026, Mr. Liu performed over 240 downloads from this third-party cloud storage, including downloads of at least thirty-seven unique Apple files. Ex. B. The reports relating to this third-party cloud storage also show over 470 instances of "Content Access," which are entries that can occur for a variety of user-initiated reasons such as when a user browses or searches directories. Ex. B. The unique downloaded documents are listed in the following table, which provides the documents' filenames and the documents' download dates and times:

| Chang Liu's Unique Downloads from Third-Party Cloud Storage | | |
|---|---|---|
| # | Filename | Download Dates and Times (PT) |
| 1 | DisplayNotes(DonotChange).key | 2/8/26, 9:41 PM<br>2/8/26, 9:42 PM |
| 2 | | 2/8/26, 9:41 PM |
| 3 | | 2/8/26, 10:02 PM |
| 4 | | 2/8/26, 10:03 PM |
| 5 | | 2/10/26, 10:11 PM |
| 6 | | 3/7/26, 9:05 PM<br>3/7/26, 9:07 PM |
| 7 | | 3/7/26, 9:07 PM |
| 8 | | 3/7/26, 9:07 PM |
| 9 | DisplayNotes.key | 3/11/26, 4:54 PM<br>3/11/26, 11:26 PM |
| 10 | | 3/11/26, 5:00 PM |
| 11 | | 3/11/26, 11:26 PM |
| 12 | | 3/11/26, 11:26 PM |
| 13 | | 4/27/26, 10:22 PM |
| 14 | | 4/27/26, 10:22 PM |
| 15 | | 4/27/26, 10:22 PM |
| 16 | | 4/27/26, 10:29 PM |
| 17 | | 4/27/26, 10:29 PM |
| 18 | | 4/27/26, 10:30 PM |
| 19 | | 4/27/26, 10:37 PM |

CASE NO. 5:26-CV-07078-EJD                    DECLARATION OF D. ROFFMAN

6

| Chang Liu's Unique Downloads from Third-Party Cloud Storage | | |
|---|---|---|
| # | Filename | Download Dates and Times (PT) |
| 20 | ███████████ | 4/27/26, 10:43 PM |
| 21 | ███████████ | 4/27/26, 10:46 PM |
| 22 | ███████████ | 4/27/26, 10:49 PM |
| 23 | ███████████ | 4/27/26, 10:50 PM |
| 24 | ███████████ | 4/27/26, 10:50 PM |
| 25 | ███████████ | 4/27/26, 10:50 PM |
| 26 | ███████████ | 4/27/26, 10:50 PM |
| 27 | ███████████ | 4/27/26, 10:50 PM |
| 28 | ███████████ | 4/27/26, 10:51 PM |
| 29 | ███████████ | 4/27/26, 10:51 PM |
| 30 | ███████████ | 4/27/26, 10:51 PM |
| 31 | ███████████ | 4/27/26, 10:51 PM |
| 32 | ███████████ | 4/27/26, 10:54 PM |
| 33 | ███████████ | 4/27/26, 10:55 PM |
| 34 | ███████████ | 4/27/26, 10:56 PM |
| 35 | ███████████ | 4/27/26, 11:01 PM |
| 36 | ███████████ | 4/27/26, 11:22 PM |
| 37 | ███████████ | 4/27/26, 11:22 PM |

*See also* Ex. B; *see also* Ex. E, ████████████ (Feb. 8, 2026 at 10:08 pm PT / Feb. 9, 2026 at 6:08 am UTC). ███████████ ed a manager in Information Systems and Technology at Apple who supports collaboration tools, including third-party cloud storage, about Mr. Liu's continued access to Apple third-party cloud storage after he left Apple for OpenAI. When Mr. Liu left in January 2026, a deprovisioning request was sent, which should have revoked his access to the third-party cloud storage. July 16, 2026 Interview with IS&T Manager. However, I understand the deprovisioning scripts that ran in January 2026 did not properly deprovision (revoke) Mr. Liu's access. July 16, 2026

Interview with IS&T Manager. As a result, Mr. Liu's access to the third-party cloud storage was not completed as expected. July 16, 2026 Interview with IS&T Manager.

22.     Apple's offboarding processes did revoke Mr. Liu's access to AppleConnect—Apple's authentication system that controls each sign-in attempt to Apple repositories. As such, any attempts to log in to Apple repositories via a web browser by Mr. Liu would have been blocked as of January 24, 2026. July 16, 2026 Interview with IS&T Manager. However, as noted above, Mr. Liu was able to continue accessing Apple's cloud-based storage after he left Apple and was therefore able to continue to access and browse and download Apple files from that repository, which he did. *See* Paragraph 20 above.

23.     After Apple discovered the bug that Mr. Liu exploited, it made sure that Mr. Liu's unauthorized access was fully deactivated. July 16, 2026 Interview with IS&T Manager. Apple further determined that this previously unknown bug may have impacted a limited number of other former Apple employees, but, as of July 16, 2026, Apple had not identified any other former Apple employees who exploited it as Mr. Liu did. July 16, 2026 Interview with IS&T Manager.

### B.     Yu-Ting "Alyssa" Peng

24.     As I explained above, my digital forensics work in this case encompassed an investigation of Ms. Peng's Apple-issued work MacBook and communications, and Exhibit E comprises translations of iMessages sent and received by Ms. Peng.

25.     The tables below present iMessage exchanges between Mr. Liu and Ms. Peng. I understand that at the time of these exchanges, Ms. Peng worked for Apple (Ms. Peng left Apple in April 2026, *see* Ieyoub Decl. ¶ 24), and Mr. Liu worked for OpenAI.

| Peng iMessages, Table 1 | | | |
|---|---|---|---|
| Date/Time in UTC | Sender | Recipient | Message Content |
|  |  |  |  |

CASE NO. 5:26-CV-07078-EJD                    DECLARATION OF D. ROFFMAN

| Peng iMessages, Table 1 | | | |
|---|---|---|---|
| Date/Time in UTC | Sender | Recipient | Message Content |
| | | | |

| Peng iMessages, Table 2 | | | |
|---|---|---|---|
| Date/Time in UTC | Sender | Recipient | Message Content |
| | | | |

| Peng iMessages, Table 3 | | | |
|---|---|---|---|
| Date/Time in UTC | Sender | Recipient | Message Content |
| | | | |

---

[3] *See* note 2 above.

CASE NO. 5:26-CV-07078-EJD                    DECLARATION OF D. ROFFMAN

| Peng iMessages, Table 3 |
|---|
|  |

| Peng iMessages, Table 4 | | | |
|---|---|---|---|
| Date/Time in UTC | Sender | Recipient | Message Content |

| Peng iMessages, Table 4 | | | |
|---|---|---|---|
| Date/Time in UTC | Sender | Recipient | Message Content |
| ████████ | ██████ | ██████ | ████████████ |

| Peng iMessages, Table 5 | | | |
|---|---|---|---|
| Date/Time in UTC | Sender | Recipient | Message Content |
| ████████ | ██████ | ██████ | ████████████ |

Ex. E.

### C.    Individual No. 1

26.    My digital forensics work in this case encompassed an investigation of Individual No. 1's Apple-issued work MacBook and communications.

27.    Exhibit G is a true and correct copy of certified translations of iMessages sent and received by Individual No. 1 on an Apple-issued work MacBook. I understand that, at the time of the exchanges in Exhibit G, Individual No. 1 worked for Apple ██████████████████████████ *see* Ieyoub Decl. ¶ 25), and Mr. Liu worked for OpenAI.

28.    From my investigation of Individual No. 1's Apple-issued work MacBook, I also found that Individual No. 1 took two screenshots of a keynote file titled ██████████████ ████ at 7:39 AM PT on February 27, 2026. *See* Exs. I, J. These screenshots are shown below and attached as Exhibits I and J.

---

CASE NO. 5:26-CV-07078-EJD                    DECLARATION OF D. ROFFMAN



Exhibit I.

Exhibit J.

29.    Individual No. 1 also downloaded the ████████████████████ file at 7:41 AM PT that same day. Ex. K. ████████████████████

**D.     Other Former Apple Employees**

30.     My digital forensic work in this case also encompassed certain initial investigations of other Apple-issued work computers and departure-related activities of former Apple employees who took positions at OpenAI or io following their departures from Apple. My investigations relating to these other former Apple employees is ongoing, and I reserve the right to amend my findings relating to their devices and activities. At present, my additional investigations have already revealed the exchanges I attach as exhibits and discuss below.

31.     Exhibit L is a true and correct copy of iMessages sent and received by Individual No. 2 and Tang Tan via Individual No. 2's Apple-issued work MacBook ███████████████ I understand that, at the time of these exchanges, Individual No. 2 worked for Apple ███████ ███████████████ *see* Ieyoub Decl., Table 1), and Mr. Tan worked for OpenAI.

███████████████ e and correct copy of iMessages sent and received by Individual No. 3 and Tang Tan (and others) via Individual No. 3's Apple-issued work MacBook ███████████ I understand that, at the time of these exchanges, Individual No. 3 worked for Apple (███████ ███████████ *see* Ieyoub Decl., Table 1), and Mr. Tan worked at OpenAI. The checklist discussed in these iMessages is attached as Exhibit N.

33.     Exhibit O is a true and correct copy of iMessages exchanged by Individual No. 4 and Individual No. 5 via Individual No. 4's Apple-issued work MacBook ███████ I understand that, at the time of these exchanges, Individual No. 4 worked for Apple (███████████ ███ *see* Ieyoub Decl., Table 1), and Individual No. 5 was an OpenAI recruiter. The checklist discussed in the iMessages in Exhibit O is a copy of the same checklist attached as Exhibit N.

34.     Exhibit P is a true and correct copy of iMessages exchanged by Individual No. 6 and Individual No. 5 via Individual No. 6's Apple-issued work MacBook ███████ I understand that, at the time of these exchanges, Individual No. 6 worked for Apple ███████████ ███████ *see* Ieyoub Decl., Table 1), and Individual No. 5 worked at OpenAI. The checklist discussed in the iMessages in Exhibit P is a copy of the same checklist attached as Exhibit  N.

CASE NO. 5:26-CV-07078-EJD                              DECLARATION OF D. ROFFMAN

35.    Exhibit Q is a true and correct copy of iMessages exchanged by Individual No. 7 and Individual No. 5 via Individual No. 7's Apple-issued work MacBook ██████████ I understand that, at the time of these exchanges, Individual No. 7 worked for Apple ██████ ██████ *see* Ieyoub Decl., Table 1), and Individual No. 5 worked at OpenAI. The ██████ discussed in the iMessages in Exhibit Q is a copy of the same checklist attached as Exhibit N.

36.    Exhibit R is a true and correct copy of iMessages exchanged by Individual No. 8 and Tang Tan via Individual No. 8's Apple-issued work MacBook ██████████ I understand that, at the time of these exchanges, Individual No. 8 worked for Apple ██████ ██ *see* Ieyoub Decl., Table 1), and Mr. Tan worked for OpenAI.

37.    The message reproduced in the table below is a message that Individual No. 9 sent to himself via his Apple-issued work MacBook ██████████ *See* Ieyoub Decl., Table 1.

| Date/Time in UTC | Sender | Recipient | Message Content |
|---|---|---|---|
| ████ | ████ | ████ | ████ |

| Date/Time in UTC | Sender | Recipient | Message Content |
|---|---|---|---|
|  |  |  |  |

Ex. S.

CASE NO. 5:26-CV-07078-EJD                                                DECLARATION OF D. ROFFMAN

15

38.    I reviewed the safari internet history from Individual No. 9's Apple-issued work MacBook. Before the above message, Individual No. 9 accessed the following URLs relating to an OpenAI interview:

| Date/Time in UTC | URL |
| --- | --- |
| ████████████████████ | ███████████████████████████████████████████████████ |

Ex. T.

39.    Exhibit U is a true and correct copy of iMessages exchanged by Individual No. 10 and Individual No. 11 via Individual No. 10's Apple-issued work MacBook ████████████████ I understand that, at the time of these exchanges, Individual No. 10 worked for Apple ████████████████ ████████████████ *see* Ieyoub Decl., Table 1), and Individual No. 11 worked for OpenAI.

40.    Exhibit V is a true and correct copy of iMessages exchanged by Individual No. 12 and Individual No. 13 via Individual No. 12's Apple-issued work MacBook ████████████████ ████████████████ I understand that, at the time of these exchanges, Individual No. 12 worked for Apple ████████████████ *see* Ieyoub Decl., Table 1), and Individual No. 13

---

[4] Calendly is a scheduling platform to book meetings and "capture discussions and decisions." https://calendly.com/.

CASE NO. 5:26-CV-07078-EJD                    DECLARATION OF D. ROFFMAN

16

worked for OpenAI.

41.    Exhibit W is a true and correct copy of iMessages exchanged by Individual No. 14 and Individual No. 15 via Individual No. 14's Apple-issued work MacBook ██████████████ I understand that, at the time of these exchanges, Individual No. 14 worked for Apple ██████████████ ██████████████ *see* Ieyoub Decl., Table 1), and Individual No. 15 worked as a recruiter for OpenAI.

## IV.    NEXT STEPS

42.    My investigation to date has been limited by time and to the information available to Apple, including logs from third-party cloud storage and the forensic images of Apple-issued work MacBooks returned upon employees' departures. The specific device Mr. Liu used to download Apple files from third-party cloud storage after he left Apple, however, has not yet been determined. Forensic examinations and investigations of full physical images of this and any other devices used by Mr. Liu to acquire, use, and disclose Apple files, including to OpenAI, should take place to determine the full scope of these activities. Without forensic access to and examination of these and any other devices Mr. Liu used, I cannot determine the full scope of the Apple files Mr. Liu accessed, copied, or transferred, whether Mr. Liu further transferred such files to other repositories, any additional steps Mr. Liu took to conceal his conduct, and the full extent of what Mr. Liu, OpenAI, and/or io have done with the downloaded materials.

43.    In my experience, the devices and accounts of individuals who directly access and remove confidential information, such as Mr. Liu, are not the only devices and accounts that matter to understand what happened to that confidential information afterward. Files that leave a company through one person's device are routinely shared, copied, uploaded to shared repositories, referenced in internal communications, or incorporated into other work by colleagues who received them. Based on the facts described and shown above in this declaration, I believe forensic examinations are needed well beyond Mr. Liu's own devices and accounts. These should include forensic examinations of full images of relevant OpenAI and io devices and accounts, including the devices of Mr. Liu, Mr. Tan, and other custodians identified above.  Such investigations are equally necessary to determine how Apple

CASE NO. 5:26-CV-07078-EJD                          DECLARATION OF D. ROFFMAN

information moved once it left Apple's systems: who received it, where it was stored, whether and how it was shared or further distributed internally, whether it was incorporated into OpenAI's or io's technical material or product development, and whether it continues to be accessible or was deleted from any device, account, or repository.

44.     These forensic investigations should take place without delay, to decrease the risk that evidence will be lost, overwritten, or deliberately destroyed. Apple operating systems retain many types of logs, metadata, and artifacts that forensic examiners use to understand actions taken by individuals. Unfortunately, many of these logs and artifacts are temporal in nature. Moreover, much of the metadata that I rely on, such as information about the last time a file was opened, is lost upon deletion of a file. For this reason, it is important to preserve a forensic image of any system at issue as rapidly as possible to avoid any loss of files, metadata, logs or artifacts.

45.     Given the number of individuals and devices involved here, I believe prompt, coordinated forensic imaging across any Apple-owned devices kept by the Defendants and across OpenAI and io devices and accounts is warranted and should take place. That will better facilitate the parties determining with confidence the full scope of what happened to Apple's information.

CASE NO. 5:26-CV-07078-EJD                                    DECLARATION OF D. ROFFMAN

I declare under penalty of perjury that, to the best of my knowledge, the foregoing is true and correct.

Executed in Baltimore, Maryland on August 3, 2026.


_____
Daniel Roffman

CASE NO. 5:26-CV-07078-EJD                    DECLARATION OF D. ROFFMAN