# EXHIBIT E

**quinn emanuel** trial lawyers | chicago

191 N. Wacker Drive, Suite 2700, Chicago, Illinois 60606-1881 | TEL (312) 705-7400

WRITER'S DIRECT DIAL NO.
**(312) 705-7403**

WRITER'S EMAIL ADDRESS
**andrewschapiro@quinnemanuel.com**

July 13, 2026

**VIA EMAIL**

Gabriel S. Gross
Weil, Gotshal & Manges LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
gabe.gross@weil.com

Re:     ***Apple Inc. v. Liu et al.*, Case No. 26-cv-7078 (N.D. Cal.)**

Dear Mr. Gross:

This firm represents OpenAI in the above-referenced action.[1]  Please direct all future correspondence to us.  We write in response to your letter to Che Chang dated July 10, 2026, seeking certain "assurances" from OpenAI in order to avoid "the burden of preliminary injunction proceedings."

Apple filed its complaint on Friday evening, July 10, and in conjunction with that filing your firm sent direct demand letters to more than 40 current OpenAI employees—only two of whom are named as defendants in Apple's complaint—requesting that the employees contact your firm.[2]  OpenAI is in the process of reviewing Apple's complaint and the several dozen letters from your firm.  OpenAI takes Apple's allegations seriously and we are prepared to work with you regarding a reasonable process to address the concerns raised in your letters.  To be clear, OpenAI has no interest in its competitors' trade secrets.  It believes in fair, healthy competition and relies on its own ingenuity to build innovative technology.

---

[1]  For ease of reference only, this letter refers to the three corporate defendants collectively as "OpenAI."  We note that your letter was addressed to "OpenAI, Inc.," which is not a named defendant in Apple's complaint.  *See* Compl. (ECF 1) at 1 and ¶¶ 19-20.

[2]  Your letters to OpenAI's employees and your continued direct contact with such employees violate Cal. R. Prof. Conduct 4.2.  We will be writing to you and your firm separately regarding these matters and OpenAI reserves all rights in connection with the same.

quinn emanuel urquhart & sullivan, llp

ABU DHABI | ATLANTA | AUSTIN | BEIJING | BERLIN | BOSTON | BRUSSELS | CHICAGO | DALLAS | DOHA | HAMBURG | HONG KONG | HOUSTON |
LONDON | LOS ANGELES | MANNHEIM | MIAMI | MUNICH | NEUILLY-LA DEFENSE | NEW YORK | PARIS | PERTH | RIYADH | SALT LAKE CITY |
SAN FRANCISCO | SEATTLE | SHANGHAI | SILICON VALLEY | STUTTGART | SYDNEY | TOKYO | WASHINGTON, DC | WILMINGTON | ZURICH

Your letter to Mr. Chang states that "Apple intends to move for a preliminary injunction" but "may be able to avoid this" if OpenAI confirm that it agrees to provide five categories of "assurances" regarding potential evidence. While OpenAI does not believe that Apple has a basis for an injunction, the first three categories of requested "assurances" are noncontroversial, and OpenAI agrees to provide them as drafted. Specifically, OpenAI does not intend to "access, acquire, use, disclose, or solicit" any Apple "confidential, proprietary, [or] trade secret information," and has never done so in the past. Nor is OpenAI engaged in any "access, acquisition, use, disclosure, or solicitation" of such material. Similarly, OpenAI intends to "preserve and not destroy, delete, or conceal evidence that is potentially relevant to the claims in Apple's complaint." The parties are therefore already in agreement regarding three of the five "assurances" requested by Apple.

The fourth "assurance" requests that OpenAI:

> permit and enable Apple's counsel and third-party forensic analysts to inspect, image, and analyze all devices, storage drives, and accounts in OpenAI's possession, custody, or control that contain, or previously contained, any of Apple's confidential, proprietary, and trade secret information (including but not limited to any external hard drives, USB flash drives, cloud backups, Time Machine backups, laptops, personal computers or tablets, mobile phones, instant messaging applications, and email)[.]

While OpenAI is not presently aware of any "devices, storage drives, [or] accounts" that contain, or previously contained, any of Apple's "confidential, proprietary, [or] trade secret information," we are prepared to discuss a reasonable protocol that would provide Apple with the comfort it seeks. Such a protocol would balance Apple's requests with risks such as unintended disclosure of privileged information to Apple or its counsel, disclosure of OpenAI's trade secrets and other unrelated competitive material, and disclosure of employee data protected by privacy laws and regulations. Your fourth requested "assurance," as drafted, creates these and other risks, and granting Apple unfettered access to OpenAI devices is not workable. We are prepared to discuss a reasonable protocol that incorporates appropriate safeguards.

Finally, the fifth "assurance" requests that OpenAI "agree to a search, inspection, and imaging, within the next thirty days of any OpenAI network location where any Apple proprietary and trade secret information may have been transferred or stored." Here, too, OpenAI is not presently aware of any such "network location," but we are prepared to discuss a reasonable protocol that would provide Apple with the assurances it seeks. Granting Apple unfettered access to OpenAI network locations creates the same risks identified above (among others), including the exposure of privileged material, trade secrets, and privacy-protected employee data. We are prepared to discuss a reasonable protocol with you to alleviate these risks.

OpenAI is amenable to finding a solution regarding the remaining two requested "assurances," subject to compliance with the basic confines of discovery such as protection of privilege, privacy, and unrelated sensitive material. Please let us know your availability to meet and confer this week.

OpenAI reserves all rights and nothing herein shall be construed as a waiver or admission as to any of Apple's allegations, which OpenAI is still reviewing.

Very truly yours,

Andrew H. Schapiro

3