Andrew H. Schapiro (*pro hac vice*)
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
(312) 705-7400
andrewschapiro@quinnemanuel.com

Patrick D. Curran (Bar No. 241630)
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
111 Huntington Ave, Suite 520
Boston, MA 02199
(617) 712-7100
patrickcurran@quinnemanuel.com

David Eiseman (Bar No. 114758)
Jodie W. Cheng (Bar No. 292330)
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600
davideiseman@quinnemanuel.com
jodiecheng@quinnemanuel.com

Yehuda Goor (*pro hac vice*)
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
295 Fifth Avenue, 9th Floor
New York, NY 10016
(212) 849-7000
yehudagoor@quinnemanuel.com

*Attorneys for Defendants OpenAI Foundation, OpenAI Group PBC, io Products LLC, and Tang Yew Tan*

Kate E. Lazarus (Bar No. 268242)
klazarus@kblfirm.com
KWUN BHANSALI LAZARUS LLP
555 Montgomery Street, Suite 750
San Francisco, CA 94111
Tel: (415) 630-2350

*Attorneys for Defendant Chang Liu*

[Additional counsel listed in signature block]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

APPLE INC.,

Plaintiff,

vs.

CHANG LIU, TANG YEW TAN, OPENAI FOUNDATION f/k/a OPENAI, INC., OPENAI GROUP PBC, and IO PRODUCTS, LLC f/k/a IO PRODUCTS, INC.,

Defendants.

Case No. 5:26-CV-07078-EJD

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR EXPEDITED DISCOVERY**

Date: October 1, 2026 (Reserved)
Time: 9:00 a.m. P.T.
Courtroom: 4 - 5th Floor
Judge: The Hon. Edward J. Davila
Trial Date: None Set

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION ........ 1

II. BACKGROUND ........ 1

A. Factual Background ........ 1

B. Procedural Background ........ 3

C. Apple's Requested Discovery ........ 3

III. APPLE'S REQUEST FOR EXPEDITED DISCOVERY IS MOOT ........ 5

IV. APPLE HAS NOT ESTABLISHED "GOOD CAUSE" FOR EXPEDITED DISCOVERY ........ 6

A. Apple's Motion For Preliminary Injunction Does Not Justify Expedited Discovery ........ 6

B. Apple's Discovery Requests Are Overbroad ........ 7

1. Apple's Written Discovery Is Untethered To Its Motion For Preliminary Injunction ........ 8

2. Apple's Request For Depositions Is Better Suited For Merits Discovery ........ 10

C. Apple Seeks Discovery For Improper Purposes ........ 12

D. Apple's Discovery Requests Are Burdensome ........ 12

V. IF ANY EXPEDITED DISCOVERY IS ORDERED, IT SHOULD BE RECIPROCAL ........ 13

VI. CONCLUSION ........ 14

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Accretive Specialty Ins. Sols., LLC v. XPT Partners, LLC*,
2023 WL 9019017 (C.D. Cal. Oct. 13, 2023) .......... 8, 11

*Advanced Laboratories International, LLC v. Valentus, Inc.*,
2017 WL 6209297 (N.D. Cal. Dec. 8, 2017) .......... 9

*Am. LegalNet, Inc. v. Davis*,
673 F. Supp. 2d 1063 (C.D. Cal. 2009) .......... 6, 11, 12

*Apple Inc. v. Samsung Elecs. Co.*,
2011 WL 1938154 (N.D. Cal. May 18, 2011) .......... 11

*Applied Materials, Inc. v. Advanced Micro-Fabrication Equip. (Shanghai) Co.*,
2008 WL 183520 (N.D. Cal. Jan. 18, 2008) .......... 12

*Bagdasaryan v. City of Los Angeles*,
2017 WL 10560536 (C.D. Cal. Nov. 1, 2017) .......... 9

*Citibank, N.A. v. Mitchell*,
2024 WL 4906076 (N.D. Cal. Nov. 26, 2024) .......... 7

*eHealthinsurance Servs., Inc. v. Healthpilot Techs. LLC*,
2021 WL 3052918 (N.D. Cal. July 20, 2021) .......... 9

*Eurofins Elec. & Elec. Testing NA, LLC v. SGS N. Am. Inc.*,
2024 WL 4453315 (N.D. Cal. Oct. 8, 2024) .......... 8

*Extreme Reach, Inc. v. PriorityWorkforce, Inc.*,
2017 WL 10544621 (C.D. Cal. Oct. 18, 2017) .......... 6

*Jobscience, Inc. v. CVPartners, Inc.*,
2014 WL 852477 (N.D. Cal. Feb. 28, 2014) .......... 8

*Mattson Tech., Inc. v. Applied Materials, Inc.*,
2026 WL 1303361 (N.D. Cal. May 12, 2026) .......... 12

*Neothermia Corp. v. Rubicor Med., Inc.*,
345 F. Supp. 2d 1042 (N.D. Cal. 2004) .......... 8

*Perdomo v. Noem*,
2025 WL 3053167 (C.D. Cal. Oct. 17, 2025) .......... 11

*Praecipio Consulting, LLC v. Howser*,
2025 WL 1084766 (N.D. Cal. Apr. 10, 2025) .......... 9

*Profil Institut Fur Stoffwechselforschung GbmH v. Profil Inst. for Clinical Rsch.*, 2016 WL 7325466 (S.D. Cal. Dec. 16, 2016) ........ 11, 12, 13

*Pyro Spectaculars N., Inc. v. Souza*, 2012 WL 13220023 (E.D. Cal. Feb. 8, 2012) ........ 10

*Ryan v. Editions Ltd. W., Inc.*, 786 F.3d 754 (9th Cir. 2015) ........ 9

*Satmodo, LLC v. Whenever Commc'ns, LLC*, 2017 WL 4557214 (S.D. Cal. Oct. 12, 2017) ........ 6

*SolarPark Korea Co. v. Solaria Corp.*, 2023 WL 4983159 (N.D. Cal. Aug. 2, 2023) ........ 5

*Synopsys, Inc. v. InnoGrit, Corp.*, 2019 WL 1779978 (N.D. Cal. Apr. 23, 2019) ........ 5

*Taylor v. Google LLC*, 2024 WL 4947270 (N.D. Cal. Dec. 3, 2024) ........ 9

*Trulite Glass & Aluminim Sols., LLC v. Smith*, 2016 WL 8738432 (E.D. Cal. Aug. 10, 2016) ........ 7, 11

*U.S. Legal Support, Inc. v. Beverly*, 2025 WL 1766348 (C.D. Cal. Jan. 30, 2025) ........ 9, 10, 11

*Wedge Water LLC v. Ocean Spray Cranberries, Inc.*, 2021 WL 2138519 (S.D. Cal. May 26, 2021) ........ 13

*WeRide Corp. v. Kun Huang*, 379 F. Supp. 3d 834 (N.D. Cal. 2019) ........ 9

**Other Authorities**

Fed. R. Civ. P. 16(b) ........ 11

Fed. R. Civ. P. 26(d)(1) ........ 3

Fed. R. Civ. P. 26(f) ........ 1, 3, 5

Fed. R. Civ. P. 30(a)(2)(A) ........ 4, 5, 10

Fed. R. Civ. P. 33(a)(1) ........ 5

Fed. R. Civ. P. 33(b)(2) ........ 4

## I. INTRODUCTION

By the time the Court hears Apple's motion for expedited discovery, the parties will have conducted a Rule 26(f) conference, and full, merits-based discovery will be open. Defendants welcome that discovery, which will establish that Apple's stewardship of its supposed trade secrets has been strikingly inadequate, and that no trade secrets were misappropriated. In this case, which can and should be ready for trial within nine months (if Apple's claims withstand Defendants' motion to dismiss), there is no reason to prolong proceedings and duplicate efforts by conducting discovery in phases, as Apple's motion would require. Instead, all parties should propound discovery as permitted under the Federal Rules.

In any event, Apple fails to show the requisite good cause for expedited discovery, including because Apple's discovery requests are untethered to the requested preliminary injunction, and instead appear aimed at gaining an improper peek at the corporate Defendants' competitive product plans and strategies. Apple seeks broad and burdensome discovery—including an unspecified number of depositions, requests for production unbounded by time, and broad interrogatories—not just from Defendants but from and regarding some boundless set of unnamed former Apple employees about any manner of "Apple originated information," regardless of whether that information is confidential or proprietary, let alone relevant to Apple's motion for preliminary injunction. And Apple wants all that discovery without counting it against the limitations set forth by the Federal Rules.

With full, merits-based discovery open by the time this motion is heard, Apple's motion should be denied as moot. In the alternative, it should be denied for failure to demonstrate the good cause necessary to justify the "expedited" discovery sought.

## II. BACKGROUND

### A. Factual Background

This case arises from Apple's anti-competitive effort to stem the lawful movement of employees from Apple to OpenAI. Drawn by OpenAI's effort to design a new family of devices for the AI era, hundreds of employees have chosen to leave their jobs at Apple and join the team at

OpenAI. Dkt. 1 ¶ 53. Among them is Defendant Chang Liu, who resigned from Apple in January 2026. *Id.* ¶ 55.

Apple acknowledges that it tried to contact OpenAI in February 2026 regarding purported concerns over the recruitment of Apple employees but mistakenly directed the correspondence to the wrong individual and raised only generic concerns regarding unspecified Apple information. Henry Decl. (Dkt. 47) Exs. A-C. Apple did not identify Mr. Liu as a point of concern, nor did it try to contact Mr. Liu directly at any time prior to filing suit. *See id.* Ex. A. Even after OpenAI promptly responded to Apple, informing Apple of its mistake (*id.* Exs. B, C), Apple made no effort to follow up with OpenAI regarding any concern, nor did it ever raise its specific allegations regarding the individual Defendants, until several months later in July, when it initiated this lawsuit. *See id.*, Exs. A-D.

Apple recognizes that its departing employees often inadvertently retain Apple information in their personal iCloud accounts (*see* Dkt. 38 at 4 n.2) as a result of Apple's unusual policy of encouraging employees to connect their Apple-issued devices to personal iCloud accounts and using those accounts to store work-related documents.[1] Apple also acknowledges that its third-party cloud storage systems have "bug[s]" in their security protocols, such that departing employees may inadvertently retain access to those systems. Dkt. 38 at 3. Apple contends there were many downloads of material, but only relies on some, curiously omitting others, presumably because they would undermine Apple's claims. *See e.g.* Dkt. 38 at 10 (alleging Mr. Liu downloaded "dozens" of documents, but identifying only four as allegedly containing confidential information). Apple nevertheless asserts that Defendants stole Apple trade secrets, which it describes as Apple information belonging to five broad categories that reflect generic stages of product development. Dkt. 1 ¶ 40. Within each category, Apple provides a list of vague, non-limiting examples of information, the descriptions of which demonstrate that the information would be useful only to Apple and its products. *Id.*

---

[1] *See* Zoë Schiffer, Apple cares about privacy, unless you work at Apple, The Verge (Aug. 30, 2021), https://www.theverge.com/22648265/apple-employee-privacy-icloud-id.

**B. Procedural Background**

The downloads of Apple documents about which Apple complains are alleged to have occurred between February and April, 2026. Dkt. 38 at 3. Apple then waited months before it initiated this litigation on July 10, 2026. Dkt. 1. It did not move for a TRO or any other emergency relief. On August 3, 2026, Apple filed a motion for preliminary injunction, noticing it for hearing on October 1, 2026. Dkt. 38. This motion for expedited discovery is also set for hearing on October 1, 2026, as is Defendants' motion to dismiss. Dkts. 49, 59.

This Court has set an initial case management conference for October 1, 2026, the same day Apple's motions are set to be heard. Dkt. 32. Pursuant to Rule 26(f)(1), the parties are to meet and confer regarding the scope of discovery by September 10, 2026, at least 21 days in advance of the scheduled conference. At that point, discovery will be open for all purposes. Fed. R. Civ. P. 26(d)(1).

**C. Apple's Requested Discovery**

Although Apple frames its request as "limited and tailored" (Mot. at 1), the discovery it seeks is anything but.

Apple's wish-list of deponents includes (i) Mr. Liu, Mr. Tan, Ms. Peng, and "Individual No. 1"; (ii) corporate representatives from the non-profit OpenAI Foundation(f/k/a OpenAI, Inc.) OpenAI Group PBC, and io Products, LLC (f/k/a io Products, Inc.); and (iii) all declarants on whom Defendants rely in their opposition to Apple's preliminary injunction motion. Notice of Motion at 1-2. The topics Apple provides for the corporate depositions go even further, broadly seeking competitive information about Defendants' confidential product plans, including, for example, "[a]ny work at OpenAI related to supply chain and component sourcing, including batteries, and fabrication, including metal finishing, information for consumer hardware products" and "[a]ny work by Certain Former Apple Employees at OpenAI involving Apple Originated Information related to: (1) hardware research and development and unreleased product and feature information; (2) power management information and designs; (3) battery management information and designs; (4) metal finishing processes; and (5) testing, reliability, and internal performance data and information." Sim Decl. Ex. G at Topics 2-3. Apple proposes no time limit on any given deposition

and contends these depositions should not count against the presumptive limits set forth in Rule 30(a)(2)(A). Mot. at 11-12.

Apple also asks this Court to order Defendants to respond to vague and overbroad interrogatories and requests for production, untethered to the issues raised in its motion for preliminary injunction. Most notably, each of Apple's interrogatories seeks information about "Apple Originated Information," which is broadly defined to mean: "***any information*** that was ***created for or by Apple***, or that was learned as a result of or created ***for purposes of supporting, analyzing, or otherwise advancing any Apple business or other endeavor***, and which is ***not provided or disseminated in its entirety to the public***." *See* Sim Decl. Exs. A-C (emphasis added); *see also* Exs. D-F (requesting production of documents regarding "Apple Originated Information" in all but four of Apple's 19 requests for production); Ex. G (seeking testimony regarding "Apple Originated Information"). Almost nothing covered by that definition will qualify as an Apple trade secret, as it is not even limited to confidential information and includes information belonging to third parties or that is readily available in public materials. Apple also requests a full forensic image of any device, including those in the possession of unnamed former Apple employees, that may have been used to "access, acquire, store, use, review, disclose, solicit, or communicate about, for any purpose, Apple Originated Information." Sim Decl. Exs. D-F at No. 3. None of its requests for production are limited by date. *See id.* at Exs. D-F. And, although Apple offers no evidence whatsoever of spoliation, it seeks "Documents, and Things showing any and all efforts to delete, destroy, tamper with or conceal information pertaining to the unauthorized acquisition, use, disclosure, or solicitation of Apple Originated Information." *Id.* at Exs. D-F at No. 5; *see also* Ex. G at Topic 6 (seeking testimony regarding the "erasure, deletion, or destruction" of any purported "Apple Originated Information").

Apple requests answers to this written discovery within 30 days, the standard response time allowed by the Federal Rules. *See* Exs. A-F; Fed. R. Civ. P. 33(b)(2), 34(b)(2)(A). As with the requested depositions, Apple asks that the interrogatories not be counted against the presumptive limits set forth in Rule 33(a)(1).

## III. APPLE'S REQUEST FOR EXPEDITED DISCOVERY IS MOOT

By the time the Court hears this motion, full merits-based discovery will be open, and Apple's motion will be moot. The parties will conduct their Rule 26(f) conference by September 10, 2026, and discovery may proceed apace after that date.

The current procedural posture—in which both sides may propound discovery immediately—is readily distinguishable from that of the cases on which Apple relies. In *SolarPark Korea Co. v. Solaria Corp.*, 2023 WL 4983159, at *12 (N.D. Cal. Aug. 2, 2023) (Mot. at 3), the court permitted limited expedited discovery in part because it had stayed the litigation pending arbitration and thus discovery was "unlikely to commence in the near term." *Id.* at *12. And in *Synopsys, Inc. v. InnoGrit, Corp.*, 2019 WL 1779978, at *4 (N.D. Cal. Apr. 23, 2019) (Mot. at 4), the court permitted expedited discovery where there was "no case schedule set and no initial case management conference date." Here, the Court has set an initial case management conference—for October 1, 2026, the same day this motion will be heard. Dkt. 32. At that conference, the Court may well set a case schedule to govern this matter. Defendants intend to work cooperatively with Apple to construct that schedule, and Defendants believe that this case can and should be ready for trial within nine months, subject to the Court's availability.

Apple's motion ignores the current procedural posture entirely. Instead, Apple seeks to break up discovery into unnecessary and inefficient phases and, in so doing, accomplish an end-run around the discovery limits imposed by the Federal Rules. Indeed, Apple asks for a ruling that none of the expedited discovery it takes should count against the presumptive limits of 10 depositions and 25 interrogatories in total throughout the case. *See* Mot. at 11-12; Fed. R. Civ. Proc. 30(a)(2)(A)(i); 33(a)(1). Apple may further want to depose the same witnesses more than once, also in contravention of the Federal Rules. *See* Fed. R. Civ. P. 30(a)(2)(A)(ii).

With discovery open for all purposes by the time this motion is heard, Apple's request should be denied as moot.

## IV. APPLE HAS NOT ESTABLISHED "GOOD CAUSE" FOR EXPEDITED DISCOVERY

"[E]xpedited discovery is not the norm. Plaintiff must make some *prima facie* showing of the *need* for the expedited discovery." *Extreme Reach, Inc. v. PriorityWorkforce, Inc.*, 2017 WL 10544621, at *2 (C.D. Cal. Oct. 18, 2017) (citation omitted; emphasis in original). A party can meet this burden only if it can establish "good cause," which Apple has not done. *Id.* To the contrary, the factors courts consider weigh against expected discovery here, where Apple has consistently acted without urgency and the case can simply proceed to full, merits-based discovery. Those factors are: "(1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made." *Am. LegalNet, Inc. v. Davis*, 673 F. Supp. 2d 1063, 1067 (C.D. Cal. 2009) (citation omitted).

### A. Apple's Motion For Preliminary Injunction Does Not Justify Expedited Discovery

Even if Apple's request for expedited discovery were not moot under the Court's case schedule, Apple's unexplained delay in filing this lawsuit and filing a motion for preliminary injunction is at odds with its purported need for expedited discovery. Apple admits that Mr. Liu departed from Apple for OpenAI in January 2026 (Mot. at 1), that it contacted OpenAI (directing a letter to the wrong person) in February 2026, but did not raise any specific concern about any specific individual (Henry Decl. (Dkt. 47) Ex. A), and that it did not follow-up further (*id.* Exs. B-D). (Tellingly, Apple omits that it never raised concerns regarding Mr. Liu, and that, even after OpenAI promptly informed Apple of its mistake, Apple did not follow up. *Id.*) Yet Apple waited until July 10 to initiate this lawsuit. Dkt. 1. Apple filed this motion three weeks later, *see* Dkt. 49, and did not move for shortened time; in addition, its proposed discovery requests contemplate Defendants responding within the typical 30 days provided by the Federal Rules. Sim Decl. Exs. A-F. Apple's delay in seeking any relief alone justifies denial of its motion. *See Satmodo, LLC v. Whenever Commc'ns, LLC*, 2017 WL 4557214, at *5 (S.D. Cal. Oct. 12, 2017) ("Had the discovery been so urgent, Plaintiff should have filed this motion [for expedited discovery] at its earliest

opportunity, and certainly not eight months down the line. This fact alone warrants denying the motion.").

Apple's conduct also stands in sharp contrast to that of the plaintiffs in the cases on which it relies. In *Citibank, N.A. v. Mitchell*, 2024 WL 4906076, at *7 (N.D. Cal. Nov. 26, 2024) (Mot. at 3), the court granted in part plaintiff's request for expedited discovery where it granted a TRO and set a hearing on Plaintiff's preliminary injunction motion just 17 days later. In *Trulite Glass & Aluminim Sols., LLC v. Smith*, 2016 WL 8738432, at *1 (E.D. Cal. Aug. 10, 2016) (Mot. at 3-4), the plaintiff filed a complaint, motion for preliminary injunction, and *ex parte* application for leave to conduct expedited discovery on the same day. Here, by contrast, Apple has shown no justification for prioritizing some discovery ahead of other discovery, nor any need for an "expedited" discovery schedule. This factor weighs in favor of Defendants.

**B. <u>Apple's Discovery Requests Are Overbroad</u>**

Apple's contention that its discovery requests are "appropriately tailored" (Mot. at 4) does not pass the straight-face test. The requests define "Apple Originated Information" to include "any information created for or by Apple, or that was learned as a result of or created for purposes of supporting, analyzing, or otherwise advancing any Apple business or other endeavor, and which is not provided or disseminated in its entirety to the public." *See e.g.* Sim Decl. Ex. A ¶ 14. That sweeping term is not limited to trade secret information. It is not even limited to Apple confidential information. Instead, it encompasses any information—including information created by third parties—used to "advanc[e] any Apple business or other endeavor"—whatever that means—regardless of whether portions of it are publicly available, readily ascertainable, or treated as confidential by Apple. The definition and all requests that stem from it are thus untethered to any issue raised in Apple's motion for preliminary injunction.

Apple's overly broad definition is particularly problematic in light of the frequent intermingling of personal and work-related documents in Apple employees' iCloud accounts, given Apple's well-known policy of encouraging (if not requiring) Apple employees to link company-issued devices to personal iCloud accounts. Against this backdrop, and as explained in Defendants' motion to dismiss (Dkt. 59), Apple has failed to identify its trade secrets with any reasonable

particularity. Apple puts the cart before the horse: in support of an undefined and unlimited injunction that prohibits the use or discussion of any alleged, but as-yet unidentified, trade secrets, it first wants expansive discovery, and only ***then***, after rummaging through everything and obtaining a limitless order, will Apple presumably reveal a list of particularized trade secrets to match whatever it purports to find in discovery. That is wholly improper. "A true trade secret plaintiff ought to be able to identify, up front, and with specificity the particulars of the trade secrets without any discovery." *Jobscience, Inc. v. CVPartners, Inc.*, 2014 WL 852477, at *5 (N.D. Cal. Feb. 28, 2014); *see also Neothermia Corp. v. Rubicor Med., Inc.*, 345 F. Supp. 2d 1042, 1044-45 (N.D. Cal. 2004) (similar).

1. Apple's Written Discovery Is Untethered To Its Motion For Preliminary Injunction

Apple leverages its vague and overbroad definition of "Apple Originated Information" to demand all manner of documents and communications from Defendants, including information from and about an unnamed list of "Certain Former Apple Employees," regardless of whether that information is properly within the possession, custody, or control of Defendants, and without any date limitation. Sim Decl. Exs. D-F. Apple's vague and overbroad discovery requests are in stark contrast to those in the cases on which Apple relies. *See* Mot. at 6; *Accretive Specialty Ins. Sols., LLC v. XPT Partners, LLC*, 2023 WL 9019017, at *2 (C.D. Cal. Oct. 13, 2023) (permitting limited expedited discovery where court issued TRO and defined at-issue trade secrets for purposes of "evidence to be presented to the Court at the preliminary injunction hearing"); *Eurofins Elec. & Elec. Testing NA, LLC v. SGS N. Am. Inc.*, 2024 WL 4453315, at *1 (N.D. Cal. Oct. 8, 2024) (permitting expedited discovery where the "Court has limited the scope of discovery requests so that they are narrowly tailored to the subject matter at issue in the preliminary injunction hearing").

Apple also seeks full forensic images of any device that may at any time have interacted with such purported "Apple Originated Information." Sim Decl. Exs. D-F at No. 3. Apple's attempt to justify its requests for full forensic images fails. In *WeRide Corp.* (cited Mot. at 5), this Court found expedited discovery, including forensic images of certain devices, to be appropriate where there was evidence the defendant "has already deleted computer files on at least two relevant

devices, further increasing the need for early discovery." *WeRide Corp. v. Kun Huang*, 379 F. Supp. 3d 834, 854 (N.D. Cal. 2019), *modified in part*, 2019 WL 5722620 (N.D. Cal. Nov. 5, 2019). Nothing like that is alleged to have happened here. And in *eHealthinsurance Servs.* (Mot. at 5), the court found disclosure of forensic images to a neutral third party was appropriate after finding the plaintiff had "described its trade secrets in detail, including by specifically identifying documents downloaded or saved in internet-based storage" and demonstrated it was likely to prevail on the merits. *eHealthinsurance Servs., Inc. v. Healthpilot Techs. LLC*, 2021 WL 3052918, at *2 (N.D. Cal. July 20, 2021). Apple has not done so.

Apple further demands broad discovery regarding deletion of relevant evidence, despite offering no evidence of spoliation, as is required to get such discovery. *See* Sim Decl. Exs. D-F at No. 5; Ex. G. at Topic 6; *Bagdasaryan v. City of Los Angeles*, 2017 WL 10560536, at *11 (C.D. Cal. Nov. 1, 2017) ("The party alleging spoliation bears the burden of demonstrating that the spoliator destroyed evidence with notice that it was relevant." (citing *Ryan v. Editions Ltd. W., Inc.*, 786 F.3d 754, 766 (9th Cir. 2015))); *Taylor v. Google LLC*, 2024 WL 4947270, at *2 (N.D. Cal. Dec. 3, 2024) (denying plaintiff's efforts to obtain discovery of defendant's document preservation efforts or lack thereof because plaintiff's showing of "some factual basis to conclude that relevant evidence was not preserved" was "thin"). *Advanced Laboratories International, LLC v. Valentus, Inc.*, 2017 WL 6209297 (N.D. Cal. Dec. 8, 2017), on which Apple relies (Mot. at 6), is not to the contrary. There, the court permitted discovery into the circumstances surrounding a third party's failure to produce documents where the defendant had demonstrated that such documents existed, and the third party claimed his iPhone had been destroyed. *Id.* at *3-4. Similarly, in *Praecipio Consulting, LLC v. Howser* (cited Mot. at 9), which found a forensic analysis by a neutral examiner to be appropriate, the defendant had "destroyed two Praecipio-owned laptops in his possession," after receiving a preservation notice. 2025 WL 1084766, at *2 (N.D. Cal. Apr. 10, 2025). The circumstances here could not differ more.

*U.S. Legal Support v. Beverly*, on which Apple also relies, is plainly distinguishable. *See* Mot. at 9; *U.S. Legal Support, Inc. v. Beverly*, 2025 WL 1766348 (C.D. Cal. Jan. 30, 2025). There, the court issued a TRO and scheduled a preliminary injunction hearing. It ordered expedited

discovery "limited to understanding the extent of the alleged misappropriation ahead of the preliminary injunction hearing." *Id.*, at *5. The discovery Apple seeks is not limited at all. It extends to any information that may have been used to "advanc[e] any Apple business or other endeavor," regardless of whether that information was created or maintained confidentially by Apple, let alone whether that information has any relation to the alleged trade secrets that are the subject of Apple's motion for preliminary injunction. The discovery Apple seeks is thus much more akin to the discovery the court in *Pyro Spectaculars* (cited Mot. at 9) found to be "unwarranted" for expedited treatment. *Pyro Spectaculars N., Inc. v. Souza*, 2012 WL 13220023, at *3 (E.D. Cal. Feb. 8, 2012), *amended in part*, 2012 WL 13220022 (E.D. Cal. Feb. 23, 2012). There, the court granted expedited discovery only to the extent it was focused on the "confidential and proprietary information allegedly misappropriated and whether [plaintiff] st[ood] to suffer irreparable harm." *Id.* Apple's requests do not meet that requirement.

2. <u>Apple's Request For Depositions Is Better Suited For Merits Discovery</u>

In addition to this sweeping written discovery, Apple also seeks at least five (and apparently many more) depositions, including of an unnamed "Individual No. 1" and corporate representatives, as well as every declarant for whom Defendants submit a declaration in connection with their opposition to Apple's motion for preliminary injunction.

Defendants do not dispute that Apple can and should, at the appropriate time and assuming its claims survive dismissal, depose Mr. Liu, Mr. Tan, Ms. Peng, and "Individual No. 1" to uncover the truth behind Apple's selective reading of their messages and tortured forensic analysis of their devices; in parallel, Defendants will depose the Apple employees with relevant knowledge that will contradict Apple's allegations. But there is no reason for Defendants' witnesses to be deposed twice. Apple should not be permitted "two bites" by taking one early deposition and one later in the case. *Cf.* Fed. R. Civ. P. 30(a)(2)(A)(ii) (requiring leave of court to take a second deposition where "the deponent has already been deposed in the case").

With respect to the corporate depositions, Defendants likewise agree that corporate depositions (of all parties) will be appropriate—but Apple should notice all the topics on which it seeks testimony, so that Defendants may appropriately designate representatives only once. And

the topics that Apple has noticed again center on the impermissibly vague and overbroad definition of "Apple Originated Information." Sim Decl. Ex. G. It would be impossible to prepare a witness on such topics regardless of timing, but such sweeping topics are certainly improper for expedited discovery. The cases on which Apple relies are in accord. In *Accretive* (Mot. at 8), after entering a TRO, the court authorized no more than five depositions on specific, narrow topics. 2023 WL 9019017, at *3-4. And in *Perdomo v. Noem* (Mot. at 8), the court permitted depositions regarding a "relatively small number of [immigration] stops," noting it was less than what would be allowed if the court were to certify a class action. 2025 WL 3053167, at *3 (C.D. Cal. Oct. 17, 2025).

Finally, while Apple proposes that its first five depositions be limited to 20 hours in total, it excludes the depositions of Defendants' declarants from that cap and proposes no hours limit (beyond that provided by the Federal Rules) on any given deposition. Mot. at 8. Even the cases to which Apple points do not support its position. In *Trulite* (Mot. at 8), for example, any deposition taken during expedited discovery was limited to three hours. 2016 WL 8738432, at *1. Similarly, in *U.S. Legal Support*, 2025 WL 1766348, at *5 (Mot. at 9), the expedited discovery sought included two depositions, each limited to no more than three hours.

***

Courts overwhelmingly reject expansive discovery requests such as those Apple proposes. *Apple Inc. v. Samsung Elecs. Co.*, 2011 WL 1938154, at *3 (N.D. Cal. May 18, 2011) (denying expedited discovery request for 30(b)(6) deposition and "broad and somewhat vague" request for documents that would require defendant to "undertake a wide-ranging investigation to determine whether any such documents exist"); *Am. LegalNet*, 673 F. Supp. 2d at 1071 (denying expedited discovery where "the broad discovery that [plaintiff] seeks should be pursued more properly within the structure and supervision afforded by a court-approved scheduling order under Fed. R. Civ. P. 16(b)" (citation omitted)); *Profil Institut Fur Stoffwechselforschung GbmH v. Profil Inst. for Clinical Rsch.*, 2016 WL 7325466, at *3 (S.D. Cal. Dec. 16, 2016) (denying expedited discovery where "requests [were] broad, burdensome, and directed toward the merits of the dispute"). The breadth of Apple's proposed discovery weighs heavily in favor of Defendants.

**C. <u>Apple Seeks Discovery For Improper Purposes</u>**

Apple's claim that it will use the requested expedited discovery to "protect its intellectual property" (Mot. at 9) is belied by the scope and breadth of its requests regarding "Apple Originated Information." Instead, it appears that Apple intends to use this "free" discovery to rummage through its former employees' and competitor's files in an effort to find something it can then claim is a trade secret. Such fishing expeditions are improper. They are particularly improper here, as Apple has not clearly identified any purported trade secrets with specificity. *See Applied Materials, Inc. v. Advanced Micro-Fabrication Equip. (Shanghai) Co.*, 2008 WL 183520, at *1 (N.D. Cal. Jan. 18, 2008) (requiring plaintiff to disclose trade secrets in order to "determin[e] the appropriate scope of discovery"); *Mattson Tech., Inc. v. Applied Materials, Inc.*, 2026 WL 1303361, at *4 (N.D. Cal. May 12, 2026) (limiting discovery to trade secrets for which plaintiffs provided "fair notice" in its complaint).

Even if the requested discovery were tailored to Apple's claimed trade secrets, it still would be improper for expedited, as opposed to merits-based, discovery. *See Profil Institut Fur Stoffwechselforschung* 2016 WL 7325466, at *4 (finding that plaintiff's expedited discovery requests were improperly directed toward the merits when "[p]laintiff contend[ed] that the requested expedited discovery [was] needed to determine the nature and scope of the alleged ongoing breach"); *see also Am. LegalNet, Inc.*, 673 F. Supp. 2d at 1069 (denying a motion for expedited discovery where plaintiff sought discovery that was not "narrowly tailored to obtain information relevant to a preliminary injunction determination and instead [went] to the merits of plaintiff's claims in this action").

Apple should not be permitted to use discovery to take a sneak peek at the confidential product plans and strategies of a competitor through the guise of "expedited" discovery. This factor also favors Defendants.

**D. <u>Apple's Discovery Requests Are Burdensome</u>**

Apple seeks "All Communications, Documents, and Things" regarding the nebulously defined "Apple Originated Information," without any date limitation, from a long and undefined list of "Certain Former Apple Employees," regardless of whether those employees have any connection

to the (vague) conduct alleged in Apple's motion for preliminary injunction. Sim Decl. Exs. D-F. Apple also seeks numerous depositions, including those of corporate representatives, on a number of equally sprawling topics. *Id.* Ex. G. Such broad, vague, and amorphous requests are unduly burdensome at any stage of proceedings. *See e.g*, *Wedge Water LLC v. Ocean Spray Cranberries, Inc.*, 2021 WL 2138519, at *4 (S.D. Cal. May 26, 2021) ("Given the breadth of the discovery requests, the work that Defendant must perform to properly respond to the requests, and the requested time frame, the Court finds the discovery requests would impose an undue burden on Defendant."); *see also Profil Institut Fur Stoffwechselforschung*, 2016 WL 7325466, at *3 (denying requests for expedited discovery when "the requests potentially include a large number of documents" and "to respond accurately to the requests, Defendant will need to search digital emails and documents maintained by a variety of custodians").

## V. IF ANY EXPEDITED DISCOVERY IS ORDERED, IT SHOULD BE RECIPROCAL

If the Court is inclined to grant any portion of Apple's motion, Defendants respectfully request that they be permitted to serve discovery requests, attached to the accompanying Declaration of Andrew Schapiro as Exhibits A, B, and C, on Apple. Fundamental fairness requires that, if Apple is permitted to take discovery to bolster its otherwise weak and unsupported allegations, Defendants be permitted to take discovery to test those allegations. For example, Defendants must be able to probe Apple's allegations regarding Mr. Liu's continued access to Apple information, which was at the request of Apple employees, to show that Apple's claims of theft are false. *See e.g.* Dkt. 38 at 3. Defendants must likewise conduct discovery into Apple's allegations that Mr. Tan encouraged the disclosure of Apple confidential information during what would appear to be routine employment interviews. *Id.* at 4. And Defendants must explore Apple's knowledge of security defects in its iCloud and third-party file share systems, to assess whether Apple employs reasonable measures to protect its alleged trade secrets. *Id.* at 13. In short, any discovery must be a two-way street.

## VI. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny Apple's motion for expedited discovery in its entirety.

DATED: August 18, 2026

By /s/ Andrew H. Schapiro

QUINN EMANUEL URQUHART & SULLIVAN, LLP

Andrew H. Schapiro (*pro hac vice*)
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
(312) 705-7400
andrewschapiro@quinnemanuel.com

Patrick D. Curran (Bar No. 241630)
111 Huntington Ave, Suite 520
Boston, MA 02199
(617) 712-7100
patrickcurran@quinnemanuel.com

David Eiseman (Bar No. 114758)
Jodie W. Cheng (Bar No. 292330)
Victoria B. Parker (Bar No. 290862)
Andrew M. Mather (Bar No. 345548)
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600
davideiseman@quinnemanuel.com
jodiecheng@quinnemanuel.com
vickiparker@quinnemanuel.com
andrewmather@quinnemanuel.com

Yehuda Goor (*pro hac vice*)
Lucas A. Hammill (*pro hac vice*)
Jordan M. Nakdimon (*pro hac vice*)
295 Fifth Avenue, 9th Floor
New York, NY 10016
(212) 849-7000
yehudagoor@quinnemanuel.com
lucashammill@quinnemanuel.com
jordannakdimon@quinnemanuel.com

Joseph E. Reed (Bar No. 323524)
555 Twin Dolphin Dr., 5th Floor
Redwood Shores, CA 94065
(650) 801-5000
joereed@quinnemanuel.com

*Attorneys for Defendants OpenAI Foundation, OpenAI Group PBC, io Products LLC, and Tang Yew Tan*

DATED: August 18, 2026

By *_/s/ Kate E. Lazarus_*

KWUN BHANSALI LAZARUS LLP

Kate E. Lazarus (Bar No. 268242)
klazarus@kblfirm.com
555 Montgomery Street, Suite 750
San Francisco, CA 94111
Tel: (415) 630-2350

*Attorneys for Defendant Chang Liu*

**ATTESTATION**

I, Andrew H. Schapiro, am the ECF user whose ID and password are being used to file the above document. In compliance with Local Rule 5-1(i)(3), I hereby attest that Kate E. Lazarus has concurred in the filing of the above document.

By *\/s/ Andrew H. Schapiro*
Andrew H. Schapiro