Gabriel S. Gross (SBN 254672)
Gaby LaHatte (SBN 321844)
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, California 94065
Telephone: (650) 802-3000
Facsimile: (650) 802-3100
gabe.gross@weil.com
gaby.lahatte@weil.com

Christopher W. Henry (*pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
1001 Boylston Street, Suite 300
Boston, Massachusetts 02115
Telephone: (617) 772-8300
Facsimile: (617) 772-8333
chris.henry@weil.com

Rachel L. Weiner Cohen (*pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, DC 20036
Telephone: (202) 682-7000
Facsimile: (202) 857-0940
rachel.cohen@weil.com

John M. Desmarais (SBN 320875)
Karim Z. Oussayef (*pro hac vice*)
Steven Balcof (*pro hac vice*)
Ido Sadeh (*pro hac vice*)
DESMARAIS LLP
230 Park Avenue, 26th Floor
New York, New York 10169
Telephone: (212) 351-3400
Facsimile: (212) 351-3401
jdesmarais@desmaraisllp.com
koussayef@desmaraisllp.com
sbalcof@desmaraisllp.com
isadeh@desmaraisllp.com

Marie Delzell (SBN 367393)
DESMARAIS LLP
101 California Street, Suite 3000
San Francisco, California 94111
Telephone: (415) 573-1900
Facsimile: (415) 573-1901
mdelzell@desmaraisllp.com

Atifah Safi (*pro hac vice*)
DESMARAIS LLP
1899 Pennsylvania Avenue, NW, Suite 400
Washington, DC 20006
Telephone: (202) 451-4900
Facsimile: (202) 451-4901
asafi@desmaraisllp.com

*Counsel for Plaintiff Apple Inc.*

[Additional counsel listed in signature block]

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| APPLE INC.,<br><br>Plaintiff,<br><br>v.<br><br>CHANG LIU, TANG YEW TAN, OPENAI FOUNDATION f/k/a OPENAI, INC., OPENAI GROUP PBC, and IO PRODUCTS, LLC f/k/a IO PRODUCTS, INC.,<br><br>Defendants. | Case No. 5:26-cv-07078-EJD<br><br>**PLAINTIFF APPLE INC.'S REPLY IN SUPPORT OF ITS MOTION FOR EXPEDITED DISCOVERY**<br><br>**Judge**: Edward J. Davila<br><br>**Hearing Date**: Oct. 1, 2026<br><br>**Time**: 9:00 a.m. |

## TABLE OF CONTENTS

Page

I. INTRODUCTION ....1

II. APPLE'S REQUEST FOR EXPEDITED DISCOVERY IS NOT MOOT....2

III. APPLE HAS ESTABLISHED GOOD CAUSE FOR EXPEDITED DISCOVERY ....3

A. Apple's Diligent Pursuit Of A Preliminary Injunction Justifies Expedited Discovery. ....3

B. Apple's Discovery Requests Are Appropriately Limited. ....5

1. Apple's Requests For Written Discovery Are Appropriate. ....7

2. Apple's Requests For Depositions Are Appropriate. ....9

C. Apple's Discovery Requests Are Appropriately Directed To Discovering The Nature Of Defendants' Misappropriation. ....12

D. Apple's Discovery Requests Are Not Unduly Burdensome. ....12

E. Apple's Discovery Requests Were Made At An Appropriate Time. ....13

F. Defendants' Request For "Reciprocal" Expedited Discovery Should Be Denied. ....13

IV. CONCLUSION....15

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Accretive Specialty Ins. Sols., LLC v. XPT Partners, LLC*,
No. 8:23-cv-01903, 2023 WL 9019017 (C.D. Cal. Oct. 13, 2023) ....5, 9

*Advanced Lab'ys Int'l, LLC v. Valentus, Inc.*,
No. 17-MC-80096, 2017 WL 6209297 (N.D. Cal. Dec. 8, 2017) ....5

*Am. LegalNet, Inc. v. Davis*,
673 F. Supp. 2d 1063 (C.D. Cal. 2009) ....3, 10, 11, 12

*Apple Inc. v. Samsung Elecs. Co.*,
768 F. Supp. 2d 1040 (N.D. Cal. 2011) ....13, 14

*Apple Inc. v. Samsung Elecs. Co.*,
No. 11-CV-01846-LHK, 2011 WL 1938154 (N.D. Cal. May 18, 2011) ....10

*AssuredPartners of California Ins. Servs., LLC v. Clem*,
No. 2:25-CV-11856-JAK, 2026 WL 1182808 (C.D. Cal. Jan. 28, 2026) ....10, 11

*Bagdasaryan v. City of Los Angeles*,
No. 2:15-cv-01008-JLS-KES, 2017 WL 10560536 (C.D. Cal. Nov. 1, 2017)....8

*Columbia Ins. Co. v. seescandy.com*,
185 F.R.D. 573 (N.D. Cal. 1999)....3

*eHealthinsurance Servs., Inc. v. Healthpilot Techs. LLC*,
No. 21-CV-4061-YGR, 2021 WL 3052918 (N.D. Cal. July 20, 2021)....7, 8

*Eurofins Elec. & Elec. Testing NA, LLC v. SGS N. Am. Inc.*,
No. 5:24-cv-06340, 2024 WL 4453315 (N.D. Cal. Oct. 8, 2024) ....3, 5, 8

*Fed. Trade Comm'n v. GM UniverseApps Ltd.*,
No. 26-CV-05232-HSG, 2026 WL 1912087 (N.D. Cal. July 2, 2026) ....9

*Finjan, Inc. v. Blue Coat Sys., Inc.*,
No. 13-CV-03999-BLF, 2015 WL 3630000 (N.D. Cal. June 2, 2015) ....13

*Kincaid v. Cnty. of Los Angeles*,
2023 WL 4681603 (C.D. Cal. June 6, 2023) , *report and recommendation adopted*, 2023 WL 5154472 (C.D. Cal. Aug. 7, 2023)....13

*MACOM Technology Solutions Holdings, Inc. v. Infineon Technologies AG*,
No. 2:16-cv-02859-CAS-PLAx, 2017 WL 1371247 (C.D. Cal. Mar. 17, 2017) ....10

*Perdomo v. Noem*,
No. 2:25-CV-05605-MEMF-SP, 2025 WL 3053167 (C.D. Cal. Oct. 17, 2025)........................2, 5

*Profil Institut Fur Stoffwechselforschung GbmH v. Profil Inst. for Clinical Rsch.*,
No. 16CV2762-LAB (BLM), 2016 WL 7325466 (S.D. Cal. Dec. 16, 2016) ........................11, 12

*Pyro Spectaculars N., Inc. v. Souza*,
No. CIV S-12-0299 GGH, 2012 WL 13220023 (E.D. Cal. Feb. 8, 2012), *amended in part*, 2012 WL 13220022 (E.D. Cal. Feb. 23, 2012)..................................................................8

*Rosario v. 11343 Penrose Inc.*,
No. 2:20-CV-04715-SB-RAO, 2020 WL 8812460 (C.D. Cal. Oct. 26, 2020) ............................12

*Satmodo, LLC v. Whenever Commc'ns, LLC*,
2017 WL 4557214 (S.D. Cal. Oct. 12, 2017) ...............................................................3, 4

*SolarPark Korea Co. v. Solaria Corp.*,
2023 WL 4983159 (N.D. Cal. Aug. 2, 2023) ............................................................2, 3, 8

*Synopsys, Inc. v. InnoGrit, Corp.*,
2019 WL 1779978 (N.D. Cal. Apr. 23, 2019) ..............................................................2, 3

*Taylor v. Google LLC*,
No. 20-CV-07956-VKD, 2024 WL 4947270 (N.D. Cal. Dec. 3, 2024)........................................8

*Trulite Glass & Aluminim Sols., LLC v. Smith*,
No. 2:16-cv-01798-JAM-CKD, 2016 WL 8738432 (E.D. Cal. Aug. 10, 2016) ........................5, 9

*Twitch Interactive, Inc. v. Johnston*,
No. 16-cv-03404, 2017 WL 1133520 (N.D. Cal. Mar. 27, 2017) ..................................................3

*U.S. Legal Support, Inc. v. Beverly*,
No. 5:25-CV-00218-SSS-SPX, 2025 WL 1766348 (C.D. Cal. Jan. 30, 2025) ................3, 8, 9, 10

*Visher v. Rose*,
No. 3:18-cv-02472-WHO, Dkt. 15 (N.D. Cal. Oct. 30, 2018) .......................................................2

*Washington v. Lumber Liquidators, Inc.*,
No. 15-CV-01475-JST, 2015 WL 2089992 (N.D. Cal. May 5, 2015) ..........................................2

*Wedge Water LLC v. Ocean Spray Cranberries, Inc.*,
No. 21-CV-0809-GPC(BLM), 2021 WL 2138519 (S.D. Cal. May 26, 2021).............................12

*WeRide Corp. v. Kun Huang*,
379 F. Supp. 3d 834 (N.D. Cal. 2019), *modified in part*, 2019 WL 5722620 (N.D. Cal. Nov. 5, 2019)...........................................................................................................7

## RULES

Fed. R. Civ. P. 26(f) ........................................................................ 2

Fed. R. Civ. P. 30(a)(2)(A)(ii) ........................................................................ 9

Fed. R. Civ. P. 30(b)(6) ........................................................................ 10

Fed. R. Civ. P. 30(a)(2)(A) ........................................................................ 9

Fed. R. Civ. P. 31(a)(2)(A) ........................................................................ 9

## I. INTRODUCTION

As set forth in Apple's Motion for Preliminary Injunction, Defendants have solicited Apple trade secrets through current and former Apple employees on a substantial scale. Apple discovered that Defendants misappropriated thousands of pages of trade secrets concerning display power development programs, architecture analyses, fabrication decisions, engineering data for an unannounced Apple product, and advanced research compilations for additional undisclosed product features (Dkt. 38 at 1 (identifying documents pertaining to these topics by name)); instructed candidates to bring hardware "parts," "prototypes," and "CAD/design artifacts" for "show and tell" sessions (*id.* at 4); used a secret Apple product codename to solicit trade secrets from Apple employees (*id.* at 4-5); and misled one of Apple's trusted partners into disclosing a trade secret finishing process. (*id.* at 5-6). The Preliminary Injunction Motion seeks to end Defendants' ongoing misappropriation to prevent further irreparable harm. This Motion seeks to promptly determine the extent of that misappropriation, so that the injunction can be properly enforced and, if necessary, adjusted to match the misconduct as it is more fully revealed.

Defendants claim they "welcome that discovery" (Opp. at 1), but also call Apple's effort to determine the scope of their misconduct "moot" and insist that Apple's discovery requests should await the ebbs and flows of ordinary discovery over months or even years. Defendants ignore entirely that Apple's motion seeks to expedite discovery and set court-ordered deadlines for responses and certain depositions at the outset of this case, not over the course of the many ensuing months of regular discovery. Defendants' "mootness" position cannot be squared with court decisions in this district granting expedited discovery, even when ordinary discovery is set to open shortly. Moreover, this motion is now fully briefed, and resolving it promptly will inform the earliest stages of these proceedings. Even if expedited discovery overlaps with ordinary discovery, an order requiring some limited, urgent discovery to be completed at the outset will ensure that Defendants respond substantively in the first instance, rather than with boilerplate objections and promises to supplement over weeks and months. Defendants' own opposition brief telegraphs the alternative: absent a court

order, they will object, delay, and condition discovery into their misappropriation on tangential "reciprocal" demands.

## II. APPLE'S REQUEST FOR EXPEDITED DISCOVERY IS NOT MOOT

Defendants argue Apple's request for expedited discovery is moot because the parties' Rule 26(f) conference, the Court's initial case management conference ("CMC"), and the start of "full merits-based discovery" will occur before the Court hears this Motion. (Opp. at 5.) The Court should reject that argument for three reasons.

First, Defendants do not cite any case where—like here—there was good cause to order expedited discovery and the court declined to do so based on when discovery would open or the CMC would occur. Defendants speculate that Apple's cases only granted expedited discovery because fact discovery or the CMC were well in the future. (Opp. at 5 (citing *SolarPark Korea Co. v. Solaria Corp.*, 2023 WL 4983159, at *12 (N.D. Cal. Aug. 2, 2023); *Synopsys, Inc. v. InnoGrit, Corp.*, 2019 WL 1779978, at *4 (N.D. Cal. Apr. 23, 2019)).) But neither of those cases adopts that reasoning. In fact, courts often grant expedited discovery contemporaneously with merits-based discovery or the CMC. *See, e.g.*, *Perdomo v. Noem*, No. 2:25-CV-05605-MEMF-SP, 2025 WL 3053167, at *4 (C.D. Cal. Oct. 17, 2025) (noting that "[u]nder the 'typical process,' discovery would begin now," finding that "[t]his factor therefore weighs in favor of permitting expedited discovery," and granting expedited discovery); *Washington v. Lumber Liquidators, Inc.*, No. 15-CV-01475-JST, 2015 WL 2089992, at *3 (N.D. Cal. May 5, 2015) (finding that a request for expedited discovery made at the CMC was not untimely and granting expedited discovery).

Second, the Court can grant expedited discovery at the CMC, or even earlier without a hearing, and the parties and the Court would benefit from the early exchange of information in the infancy of the case, informing future proceedings. *See Visher v. Rose*, No. 3:18-cv-02472-WHO, Dkt. 15 (N.D. Cal. Oct. 30, 2018) (granting motion for expedited discovery on the papers without a hearing).

Third, Defendants do not consider the practical benefits of expedited discovery, even if it overlaps with ordinary discovery. Defendants would provide more complete discovery responses on

court-ordered deadlines than they would to ordinary requests made during a months-long discovery period. By ordering expedited discovery on Apple's identified requests for production ("RFPs") and interrogatories (Dkt. 49-2 to -7) and confirming that Defendants must substantively respond, the Court will cut through the typical discovery delays, where parties "respond" in 30 days, but only with objections and promises to supplement. Likewise, by granting expedited discovery on Apple's 30(b)(6) deposition of OpenAI (Dkt. 49-8), the Court would accelerate the typical timeline where parties wait until the last month of fact discovery to make a witness available.

## III. APPLE HAS ESTABLISHED GOOD CAUSE FOR EXPEDITED DISCOVERY

The parties agree on the expedited discovery factors: "(1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made." (Mot. at 3 (citing *Eurofins Elec. & Elec. Testing NA, LLC v. SGS N. Am. Inc.*, No. 5:24-cv-06340, 2024 WL 4453315, at *1 (N.D. Cal. Oct. 8, 2024)); Opp. at 6 (citing *Am. LegalNet, Inc. v. Davis*, 673 F. Supp. 2d 1063, 1067 (C.D. Cal. 2009)).)

### A. Apple's Diligent Pursuit Of A Preliminary Injunction Justifies Expedited Discovery.

Defendants do not dispute that "[g]ood cause for expedited discovery is 'frequently found' in cases 'where the plaintiff seeks a preliminary injunction.'" (Mot. at 3 (citing *Twitch Interactive, Inc. v. Johnston*, No. 16-cv-03404, 2017 WL 1133520, at *2 (N.D. Cal. Mar. 27, 2017)); *see also* Mot. at 11.) Nor do Defendants dispute that courts routinely grant requests for expedited discovery accompanying preliminary injunction motions. (*Id.* (citing *SolarPark*, 2023 WL 4983159, at *12; *Synopsys*, 2019 WL 1779978, at *4; *U.S. Legal Support, Inc. v. Beverly*, No. 5:25-CV-00218-SSS-SPX, 2025 WL 1766348, at *5 (C.D. Cal. Jan. 30, 2025)).) Instead, Defendants argue that Apple delayed in bringing this motion.

The only case that Defendants rely on for their delay argument is *Satmodo, LLC v. Whenever Commc'ns, LLC*, 2017 WL 4557214, at *5 (S.D. Cal. Oct. 12, 2017). That case is nothing like this

one. *Satmodo* did not involve a claim of trade secret misappropriation, a request for a preliminary injunction, or any need for urgent relief. Rather, the plaintiff alleged that a competitor had participated in a "click-fraud" scheme to simulate clicking on advertisements on a website. *Id.* at *1. The plaintiff had already amended the complaint after a motion to dismiss, and the court raised doubts about whether the plaintiff could "establish to the Court's satisfaction that plaintiff's suit against defendant could withstand a motion to dismiss." *Id.* at *5 (quoting *Columbia Ins. Co. v. seescandy.com*, 185 F.R.D. 573, 579 (N.D. Cal. 1999)). The plaintiff sought to serve 12 subpoenas, which would have "require[d] 12 unnamed, third party ISP's to respond to subpoenas including providing notice to consumers for, approximately 700 IP addresses." *Id.* at *4. That discovery could have "potentially add[ed] hundreds of new parties, implicating issues of improper joinder and jurisdiction." *Id.* at *2. Moreover, the plaintiff waited eight months to serve its overbroad third-party discovery. *Id.* at *5. In sum, *Satmodo* has nothing to do with Apple's urgent request to determine the scope of Defendants' misappropriation three weeks after filing suit.

Here, Apple conducted a detailed investigation (without discovery from Defendants), which is why the Complaint uses direct quotes from specific documents to support its claims. *See generally* Dkt. 88-4 at 2–5 (summarizing the allegations in the Complaint). The Motion for Preliminary Injunction substantiates those allegations and adds further detail by, among other things, (1) identifying the trade secrets with greater specificity (Dkt. 47-8); (2) identifying stolen files by name and tying them to trade secrets (*id.* ¶¶ 1, 12, 45, 62, 67, 72, 77–104); and (3) detailing the vendor OpenAI approached to exploit Apple's misappropriated metal-finishing techniques and processes. (Dkt. 38 at 5–6.) Apple submitted nine declarations, each with multiple exhibits, based on facts gathered from former employees of its suppliers (Dkt. 48-23 ¶¶ 38–41), personnel records (Dkt. 48-38 ¶¶ 17–25), former employees' Apple-owned work devices (Dkt. 48-52 ¶¶ 16, 24, 26, 28–30, 38), messages among former Apple employees left on Apple-owned work devices (*id.* ¶¶ 17–18, 24–25, 27, 31–37, 39–41), and those employees' use of Apple's third-party storage repository (*id.* ¶¶ 19–23). Considering Apple's diligent investigation, which all parties agree was necessary, Defendants cannot

credibly characterize the time Apple took to bring suit as "unexplained."[1] (Opp. at 6.) Apple was diligent after it filed its suit too. Apple tried to reach agreement with Defendants to avoid the need to file a motion for a preliminary injunction and promptly filed its motion when the parties could not reach agreement, three weeks after filing the Complaint.

**B. Apple's Discovery Requests Are Appropriately Limited.**

Defendants do not engage with Apple's detailed explanation of how each of its requests is appropriately tailored. First, Apple justified its requests—six RFPs to each Individual Defendant and seven RFPs to the Corporate Defendants—citing caselaw showing that the subject matter and number of RFPs are reasonable. (Mot. at 5–6 (citing *Trulite Glass & Aluminim Sols., LLC v. Smith*, No. 2:16-cv-01798-JAM-CKD, 2016 WL 8738432, at *1 (E.D. Cal. Aug. 10, 2016); *Eurofins*, 2024 WL 4453315, at *2; *Accretive Specialty Ins. Sols., LLC v. XPT Partners, LLC*, No. 8:23-cv-01903, 2023 WL 9019017, at *4 (C.D. Cal. Oct. 13, 2023)).) Next, Apple demonstrated how each of its interrogatories was justified, based on authority granting comparable discovery. (Mot. at 6 (citing *Advanced Lab'ys Int'l, LLC v. Valentus, Inc.*, No. 17-MC-80096, 2017 WL 6209297, at *4 (N.D. Cal. Dec. 8, 2017); *Accretive*, 2023 WL 9019017, at *4).) Finally, Apple showed that its proposed depositions are targeted, seeking testimony only from the key actors with knowledge of the relevant information. (Mot. at 6–8 (citing *Trulite*, 2016 WL 8738432, at *1; *Perdomo*, 2025 WL 3053167, at *6; *Accretive*, 2023 WL 9019017, at *4).)

---

[1] Defendants repeat their misleading suggestion that Apple did not contact OpenAI with its concerns. (Opp. at 6.) That is not true. Apple told OpenAI, "[f]orensic evidence of Apple systems indicates that several former Apple employees now at OpenAI retained Apple's non-public, confidential, and proprietary information before they left." (Dkt. 47-1 at 2.) Although OpenAI refers to a different "letter to the wrong person" (Opp. at 6), that is misdirection; OpenAI does not contend that it did not receive Apple's letter. Nor does OpenAI provide any reason why it did not respond to Apple's serious concerns about "several former Apple employees."

Defendants do not address the subject matter of Apple's discovery requests. Instead, they fixate on two terms in the definition sections of those requests: "Apple Originated Information" and "Certain Former Apple Employees." (Opp. at 7–9.) Contrary to Defendants' arguments, those defined terms are reasonable and designed to avoid disputes.

Apple defines "Apple Originated Information" as "any information that was created for or by Apple, or that was learned as a result of or created for purposes of supporting, analyzing, or otherwise advancing any Apple business or other endeavor, and which is not provided or disseminated in its entirety to the public." (Dkt. 49-2 at 2.) In other words, this term captures non-public information that originated from Apple and should not be in the possession of Defendants, and does not require any party to assess in discovery whether the information qualifies as confidential or subject to trade secret protection. Defendants complain that "Apple Originated Information" is not limited to "trade secrets." (Opp. at 7.) But including the term "trade secrets" would have been unproductive given that Defendants dispute their scope and are sure to argue (as they already have) that Apple's trade secrets are not, in fact, trade secrets. Similarly, Defendants also complain that "Apple Originated Information" is not strictly limited to confidential information. (*Id.*) But it is limited to information that is "not provided or disseminated in its entirety to the public." (*Id.* (quoting Dkt. 49-2 at 2).) This limitation makes good sense: a highly confidential document may contain both confidential and nonconfidential material (such as an image of the outside of an iPhone on one page and an image of confidential internal hardware components on the next page). Just because a document may contain public information does not mean the document itself is public. Apple's definition of "Apple Originated Information" properly accounts for this possibility and will help the parties avoid merits-related disputes during discovery over whether discoverable information merits legal or contractual protection as trade secrets or confidential information.[2]

---

[2] Defendants also argue that Apple's RFPs are not limited to a specific timeframe. (Dkt. 87 at 1, 8.) Defendants should not have Apple's confidential information from any timeframe. However, to

The term "Certain Former Apple Employees" is neither "unnamed" nor "undefined" as Defendants argue. (Opp. at 8, 12.) Apple limits the term to a set of individuals that Apple previously disclosed to OpenAI and who are central to this case. (Dkt. 49-2 at 1 (citing Dkt. 48-89 at 2 (Apple's July 10 Pre-Suit Letter to OpenAI listing individuals by name)); Dkt. 49-5 at 1 (same); Dkt. 49-6 at 1 (same); Dkt. 49-7 at 1–2 (same).) Further, Defendants' suggestion that "Certain Former Apple Employees" implicates information not within OpenAI's "possession, custody, or control" is not credible when considered in the context of Apple's requests. (Opp. at 8.) For example, Apple asks OpenAI to produce materials "showing any steps [it] took, or failed to take, to ensure that OpenAI[,] including Certain Former Apple Employees hired by OpenAI[,] were not misusing or misappropriating by receiving, accessing, acquiring, storing, reviewing, disclosing, soliciting, misusing or misappropriating Apple Originated Information for any purpose, including for OpenAI's business, its platforms, and its systems." (Dkt. 49-7 at 8; *see also* Dkt. 49-5 at 8; Dkt. 49-6 at 8.) Given Defendants' argument that they took steps to prevent the alleged misappropriation—for example, that "Mr. Tan repeatedly instructed recruits and his team not to bring or disclose former employers' confidential information" (Dkt. 59 at 1)—information pertaining to "Certain Former Apple Employees" is without a doubt in OpenAI's "possession, custody, or control." And to the extent Defendants do not have complete information, they should produce the responsive information in their possession, custody, or control.

**1. Apple's Requests For Written Discovery Are Appropriate.**

The Court should reject Defendants' efforts to avoid producing forensic evidence about devices that were used with or exposed to "Apple Originated Information." This evidence is critical to determining which trade secrets were misappropriated, who took them, how they were

---

address Defendants' concerns, Apple further specifies that it seeks Communications, Documents, and Things (as defined in the RFPs) dated on or after August 1, 2023—approximately six months before Mr. Tan left Apple to join OpenAI.

communicated, and the extent to which they were copied and used. Defendants do not have a legitimate explanation for refusing to produce such evidence.

Defendants attempt to distinguish *WeRide* by arguing that in that case, there was evidence that the defendant had concealed its activities. (Opp. at 8–9 (citing *WeRide Corp. v. Kun Huang*, 379 F. Supp. 3d 834, 854 (N.D. Cal. 2019), *modified in part*, 2019 WL 5722620 (N.D. Cal. Nov. 5, 2019)).) Yet here too, Defendants have sought to conceal their activities. For example, Mr. Liu coached Ms. Peng on how to access and copy files from Apple workstations "to avoid trouble with the security team," and directed her to communicate with him over the Line Messenger app to avoid detection. (Dkt. 38 at 4.) As another example, OpenAI has been helping departing Apple employees avoid the checks and protections of Apple's exit processes. (Dkt. 38 at 5.) Furthermore, *WeRide* did not ***condition*** expedited discovery on a finding that the defendant had deleted files. It found only that evidence of deletion was one factor favoring discovery. *WeRide*, 379 F. Supp. 3d at 854.

Defendants attempt to distinguish *eHealthinsurance* by arguing that Apple has not identified its trade secrets with particularity. (Opp. at 9 (citing *eHealthinsurance Servs., Inc. v. Healthpilot Techs. LLC*, No. 21-CV-4061-YGR, 2021 WL 3052918, at *2 (N.D. Cal. July 20, 2021)).) That is disingenuous. To start, Defendants' argument ignores Apple's allegations in the Complaint that detail the misappropriated materials and link them to the trade secrets. (*See, e.g.*, Dkt. 88-4 at 6.) It also ignores the additional context Apple provides in its Motion for Preliminary Injunction, including that Apple already has provided Defendants with a preliminary trade secret identification. (*See, e.g.,* Dkt. 38 at 10–11 (identifying the misappropriated trade secrets); Dkt. 47-8 (Apple's preliminary trade secret identification).)

Next, Defendants try to avoid discovery into the deletion or destruction of relevant evidence. Again, this information is critically important to investigating Apple's misappropriated trade secrets and what Defendants have done with them. And again, Defendants do not have a legitimate explanation for refusing to produce this information. The cases Defendants rely on are inapposite because they did not involve trade secret misappropriation or expedited discovery. (Opp. at 9 (citing

*Bagdasaryan v. City of Los Angeles*, No. 2:15-cv-01008-JLS-KES, 2017 WL 10560536, at *11 (C.D. Cal. Nov. 1, 2017); *Taylor v. Google LLC*, No. 20-CV-07956-VKD, 2024 WL 4947270, at *2 (N.D. Cal. Dec. 3, 2024)).)

Finally, Defendants cite cases that limited the scope of expedited discovery to "the extent of the alleged misappropriation" or the "confidential and proprietary information allegedly misappropriated." (Opp. at 9–10 (citing *U.S. Legal Support*, 2025 WL 1766348; *Pyro Spectaculars N., Inc. v. Souza*, No. CIV S-12-0299 GGH, 2012 WL 13220023, at *3 (E.D. Cal. Feb. 8, 2012), *amended in part*, 2012 WL 13220022 (E.D. Cal. Feb. 23, 2012)).) These cases support Apple's position because Apple's requests are narrowly targeted to such topics. They also demonstrate that Defendants' request to "deny Apple's motion for expedited discovery in its entirety" (Opp. at 14) is unreasonable. If the Court finds that one of Apple's requests is too broad, the solution is to modify the scope of expedited discovery, not deny it entirely. *See, e.g.*, *SolarPark*, 2023 WL 4983159, at *12; *Eurofins*, 2024 WL 4453315, at *1.

**2. Apple's Requests For Depositions Are Appropriate.**

Defendants concede that Apple should be permitted to take its requested depositions but propose that they occur only once, presumably at the end of fact discovery. (Opp. at 10.) That proposal does not address the need to promptly discover the scope of Defendants' misappropriation and deal with the actual or potential dissemination of Apple's trade secrets. It would mean that Apple would have to wait months or years to ask a witness about that information. Meanwhile, OpenAI could continue to use Apple's hardware trade secrets while racing to design and launch its own hardware device.

Defendants' position is based on the premise that a witness should not be deposed twice. Yet the rule Defendants cite, Fed. R. Civ. P. 30(a)(2)(A)(ii), expressly contemplates multiple depositions with leave of court, and Apple has proposed reasonable deposition limits to reduce the burden on witnesses. That approach makes sense in this case. Apple should have limited depositions at the beginning of the case to understand the scope of the misappropriation, and subsequent depositions

once the parties have completed written and document discovery on the merits. That approach is common in trade secret cases. *See, e.g.*, *Accretive*, 2023 WL 9019017, at *4 (ordering that "[a]ny expedited discovery taken pursuant to this Section (including interrogatories, requests for production, and depositions) is in addition to, and is not subject to, the limits on discovery set forth in the Federal Rules of Civil Procedure and the Local Rules of this Court"); *Fed. Trade Comm'n v. GM UniverseApps Ltd.*, No. 26-CV-05232-HSG, 2026 WL 1912087, at *10 (N.D. Cal. July 2, 2026) ("Any such deposition taken pursuant to this Section will not be counted towards the deposition limit set forth in Rules 30(a)(2)(A) and 31(a)(2)(A) . . . .").

Finally, Defendants quibble over the number of depositions and the number of hours. (Opp. at 11.) They have no grounds to do so. Apple makes a reasonable request for 20 hours of deposition testimony across five fact witnesses, plus depositions of any declarants Defendants might use in preliminary injunction briefing. *Accretive* permitted five depositions, the same number of fact witnesses that Apple requests here. *Accretive*, 2023 WL 9019017, at *4. *Trulite* granted three hours of deposition testimony per defendant—a total of 18 hours if all six defendants were deposed. *Trulite*, 2016 WL 8738432, at *1. And while it is true that *U.S. Legal Support* granted two depositions of three hours each, it involved just one individual who left a company to join a competitor and brought "five excel files" allegedly containing "pricing rates" and "clients"—a far cry from the broader and more diverse allegations here, involving multiple actors, the misappropriation of dozens of confidential files, apparently institutionalized unlawful interviewing tactics, and the commercial exploitation of Apple's trade secrets from Apple's suppliers. *U.S. Legal Support*, 2025 WL 1766348, at *5. Thus, Apple's requests are reasonable. *See MACOM Technology Solutions Holdings, Inc. v. Infineon Technologies AG*, No. 2:16-cv-02859-CAS-PLAx, 2017 WL 1371247, at *5 (C.D. Cal. Mar. 17, 2017) (granting expedited discovery and permitting "up to twenty hours of depositions" on the expedited discovery topics).

* * *

Defendants rely on three cases for the proposition that courts "overwhelmingly" reject the type of discovery Apple is seeking. (Opp. at 11.) They do not.

First, the court in *Apple v. Samsung* ***granted*** expedited discovery. *Apple Inc. v. Samsung Elecs. Co.*, No. 11-CV-01846-LHK, 2011 WL 1938154, at *2 (N.D. Cal. May 18, 2011) ("[The] Court agrees that Apple has demonstrated good cause for some, limited expedited discovery."). Although the court declined to permit a Rule 30(b)(6) deposition, it did so only because the notice sought testimony on five different products on a highly compressed timeframe. *Id.* at *3. Here, by contrast, Apple seeks testimony focused solely on its trade secrets and requests a response in 50 days. Notably, the *Apple v. Samsung* court granted expedited discovery before any motion for preliminary injunction had been filed; the case for expedited discovery is stronger still here, where Apple's preliminary injunction motion is pending. Finally, *Apple v. Samsung* was a trademark and patent infringement action, not a trade secret action like this one. It thus did not involve the same urgent need to depose witnesses on the full scope of trade secret misappropriation and ensure they do not further disseminate Apple's proprietary information.

Second, the court in *Am. LegalNet* denied expedited discovery because the plaintiff could not show a nexus between the generic discovery it sought about "sales, products, and customers" and its requested preliminary injunction. *Am. LegalNet*, 673 F. Supp. 2d at 1069. Here, however, Apple's requests target the very misappropriation underlying its preliminary injunction motion and are narrowly tailored to that conduct. (Mot. at 4–9.) Indeed, just months ago, the court in *AssuredPartners* distinguished *Am. LegalNet* on precisely this ground and granted expedited discovery in a trade secret case like this one. *AssuredPartners of California Ins. Servs., LLC v. Clem*, No. 2:25-CV-11856-JAK (AGRX), 2026 WL 1182808, at *5 (C.D. Cal. Jan. 28, 2026). The court recognized that in misappropriation cases, "[q]uickly determining what information Defendant[s] removed from Plaintiff, and whether and how Plaintiff's information is being used by Plaintiff's competitors is essential" to minimizing harm. *Id.* It further permitted discovery into the individual defendants who

had left the plaintiff to join its competitor, and their surrounding activities, because "[t]his alleged conduct is part of the basis for the PI Motion." *Id.* at *8.

Third, *Profil* is inapposite. *Profil Institut Fur Stoffwechselforschung GbmH v. Profil Inst. for Clinical Rsch.*, No. 16CV2762-LAB (BLM), 2016 WL 7325466 (S.D. Cal. Dec. 16, 2016). To start, *Profil* was a breach of contract case about trademark issues. *Id.* at *1. That is not comparable to the urgency here, where OpenAI is in possession of Apple's trade secrets and is attempting to launch hardware products of its own. Moreover, in *Profil*, "Plaintiff admit[ted] that it [did] not need the expedited discovery for its preliminary injunction motion." *Id.* at *3. Here, Apple explained precisely why it needs this discovery in connection with its preliminary injunction motion. (Mot. at 9–10.)

**C. Apple's Discovery Requests Are Appropriately Directed To Discovering The Nature Of Defendants' Misappropriation.**

Apple's opening brief explains at length why its requested discovery is permissible to (1) determine the extent of unauthorized use and (2) aid in the enforcement and potential adjustment of injunctive relief. (Mot. at 9–10.) Defendants do not address either of those bases.

Instead, Defendants repeat their unfounded assertion that Apple has not sufficiently identified its trade secrets. As explained above, Defendants are wrong. Apple's Complaint provided sufficient identification of trade secrets for a pleading (*see, e.g.*, Dkt. 88-4 at 6 (summarizing the misappropriated materials and linking them to the trade secrets identified in the Complaint)), and in its Motion for Preliminary Injunction, Apple further identified its trade secrets and discussed them in detail (Dkt. 38 at 10–11 (identifying the misappropriated trade secrets)); *see also* Dkt. 47-8 (Apple's preliminary trade secret identification); Dkt. 39 (Patel Decl.); Dkt. 40 (Dionello Decl.); Dkt. 41 (Hughes Decl.); Dkt. 43 (Hatch Decl.); Dkt. 44 (Fayed Decl.).) Defendants also repeat their citations to *Profil* and *Am. LegalNet*. (Opp. at 11.) Those cases are inapplicable for the reasons discussed above.

**D. Apple's Discovery Requests Are Not Unduly Burdensome.**

Apple's opening brief explains why its discovery requests are not unduly burdensome and cites multiple cases supporting that conclusion. (Mot. at 10–11.) Defendants have no response.

Defendants' burden arguments rehash points made elsewhere in their brief, and they are no more persuasive here. First, Defendants reiterate their objections to the definitions of "Apple Originated Information" and "Certain Former Apple Employees." Those terms are addressed above in Section III.B. Second, *Wedge Water* is readily distinguishable. That case involved trademark claims, not trade secrets, and no preliminary injunction motion was pending—so it presented none of the urgency at issue here. *Wedge Water LLC v. Ocean Spray Cranberries, Inc.*, No. 21-CV-0809-GPC(BLM), 2021 WL 2138519, at *1, *3 (S.D. Cal. May 26, 2021). Despite the lack of urgency, the plaintiff demanded a "very expedited" timeline—written discovery in 10 days and depositions in 14 days. *Id.* at *4. That led the court to deny the request for expedited discovery. *Id.* Apple, in contrast, requests written discovery in 30 days and a 30(b)(6) deposition in 50 days. Third, Defendants cite *Profil* again. As discussed above in Section III.B, that case did not involve trade secrets and the plaintiff admitted it did not need the discovery it sought. *Profil*, 2016 WL 7325466, at *3.

**E. Apple's Discovery Requests Were Made At An Appropriate Time.**

Apple's opening brief explains why courts routinely grant expedited discovery at this stage. (Mot. at 11–12.) Apart from their arguments that Apple's motion is supposedly moot, Defendants do not address this factor.

**F. Defendants' Request For "Reciprocal" Expedited Discovery Should Be Denied.**

In the alternative, Defendants ask for "reciprocal" expedited discovery. To be sure, all parties are entitled to and will receive reciprocal discovery in the ordinary course. But Defendants' requests should be denied because they are procedurally improper, and their scope goes beyond the issues of Apple's preliminary injunction.

Defendants' request for "reciprocal" expedited discovery is procedurally improper because parties may not move for such relief in opposition briefs. *See, e.g.*, *Rosario v. 11343 Penrose Inc.*, No. 2:20-CV-04715-SB-RAO, 2020 WL 8812460, at *7 (C.D. Cal. Oct. 26, 2020) ("Without commenting on the merits of this specific request, the Court notes that opposition papers are an inappropriate place to request further discovery."); *Kincaid v. Cnty. of Los Angeles*, 2023 WL

4681603, at *1 n.2 (C.D. Cal. June 6, 2023), *report and recommendation adopted*, 2023 WL 5154472 (C.D. Cal. Aug. 7, 2023) ("[R]equests for court action must be made by motion and cannot be made in an opposition brief."); *Finjan, Inc. v. Blue Coat Sys., Inc.*, No. 13-CV-03999-BLF, 2015 WL 3630000, at *13 n.8 (N.D. Cal. June 2, 2015) ("[N]or is such a request for affirmative relief properly presented in an opposition brief."). That rule makes especially good sense here, where Defendants have added a single paragraph at the end of their brief as an afterthought, without any legal support or substantive analysis, and which would deny Apple and the Court the benefit of proper briefing.

Defendants' examples of the discovery they seek further demonstrate why "reciprocal" expedited discovery should be denied. (Opp. at 13.) First, Defendants seek to discover evidence that Mr. Liu's access to Apple systems "was at the request of Apple employees." (*Id.*) If that were true, Mr. Liu would already have evidence of such requests. Second, Defendants seek discovery "into Apple's allegations that Mr. Tan encouraged the disclosure of Apple confidential information." (*Id.*) Apple has already disclosed its allegations against Mr. Tan in the Complaint and the Motion for Preliminary Injunction. It is unclear what more Defendants require before Apple has received discovery into Mr. Tan's conduct. Third, Defendants seek discovery of Apple's iCloud policies and security. (*Id.*) Yet Apple does not allege misappropriation through iCloud. To the extent that Defendants wish to develop a defense based on iCloud, they can do so in ordinary discovery. Defendants' other requests are similarly unreasonable. For instance, Defendants provide no reason why they need 34 RFPs from Apple (Dkt. 87-2 to -4), when Apple seeks to serve six to seven RFPs on each Defendant. (Dkt. 49-2 to -8.)

Defendants' reciprocal-discovery tactic has been tried before—and rejected. In *Apple v. Samsung*, Apple alleged that Samsung's products "infringe[d] Apple's trade dress, trademarks, and utility and design patents." *Apple Inc. v. Samsung Elecs. Co.*, 768 F. Supp. 2d 1040, 1042 (N.D. Cal. 2011). At the hearing, Samsung's counsel "argued that if Apple were granted expedited discovery, Samsung should be entitled to some form of reciprocal discovery." *Id.* at 1043. There, as here, "Apple indicated that it would agree to some reciprocal expedited discovery, provided the requested discovery

was reasonable and necessary to oppose a preliminary injunction."[3] *Id.* The court held that Samsung's request was not ripe because it was raised only in response to Apple's motion rather than by Samsung's own application—precisely the impermissible posture of Defendants' request here. *Id.* When Samsung did later move for expedited discovery, it did not limit its requests to evidence bearing on Apple's claims; it demanded samples of Apple's unreleased next-generation products. *Id.* The court denied that request because the discovery was untethered to Apple's claim that Samsung had copied its existing products. *Id.* at 1045–47. *Apple v. Samsung* thus illustrates two principles: (1) a defendant seeking reciprocal expedited discovery must properly present that request by its own properly noticed motion, not as a rider to its opposition; and (2) any expedited discovery must be narrowly focused on the claims actually at issue. Both principles require denying Defendants' request.

## IV. CONCLUSION

Apple respectfully requests that the Court grant its motion for expedited discovery.

[3] Even though Defendants' discovery requests should be denied for the reasons discussed above, Apple is amenable to reasonable expedited discovery for Defendants and intends to meet and confer with Defendants about an appropriate scope of such discovery.

DATED: August 25, 2026

*/s/ Karim Z. Oussayef*
Karim Z. Oussayef

Gabriel S. Gross (SBN 254672)
Gaby LaHatte (SBN 321844)
Vanessa K. Sim (SBN 341107)
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, California 94065
Telephone: (650) 802-3000
Facsimile: (650) 802-3100
gabe.gross@weil.com
gaby.lahatte@weil.com
vanessa.sim@weil.com

Christopher W. Henry (*pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
1001 Boylston Street, Suite 300
Boston, Massachusetts 02115
Telephone: (617) 772-8300
Facsimile: (617) 772-8333
chris.henry@weil.com

Rachel L. Weiner Cohen (*pro hac vice*)
Nicole Elena Bruner (*pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, DC 20036
Telephone: (202) 682-7000
Facsimile: (202) 857-0940
rachel.cohen@weil.com
nicole.bruner@weil.com

Heather Blacklaws (*pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
600 Congress Avenue, Suite 2170
Austin, Texas 78701
Telephone: (512) 487-1480
Facsimile: (512) 487-1520
heather.blacklaws@weil.com

Nina Shapiro (*pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
767 5th Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
nina.shapiro@weil.com

John M. Desmarais (SBN 320875)
Karim Z. Oussayef (*pro hac vice*)
Steven Balcof (*pro hac vice*)
Ido Sadeh (*pro hac vice*)
DESMARAIS LLP
230 Park Avenue, 26th Floor
New York, New York 10169
Telephone: (212) 351-3400
Facsimile: (212) 351-3401
jdesmarais@desmaraisllp.com
koussayef@desmaraisllp.com
sbalcof@desmaraisllp.com
isadeh@desmaraisllp.com

Marie Delzell (SBN 367393)
DESMARAIS LLP
101 California Street, Suite 3000
San Francisco, California 94111
Telephone: (415) 573-1900
Facsimile: (415) 573-1901
mdelzell@desmaraisllp.com

Atifah Safi (*pro hac vice*)
DESMARAIS LLP
1899 Pennsylvania Avenue, NW, Suite 400
Washington, DC 20006
Telephone: (202) 451-4900
Facsimile: (202) 451-4901
asafi@desmaraisllp.com

*Counsel for Plaintiff Apple Inc.*