# EXHIBIT A

# REDACTED VERSION OF DOCUMENT FILED UNDER SEAL

REDACTED VERSION OF DOCUMENT FILED UNDER SEAL

Gabriel S. Gross (SBN 254672)
Gaby LaHatte (SBN 321844)
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, California 94065
Telephone: (650) 802-3000
Facsimile: (650) 802-3100
gabe.gross@weil.com
gaby.lahatte@weil.com

Christopher W. Henry (*pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
1001 Boylston Street, Suite 300
Boston, Massachusetts 02115
Telephone: (617) 772-8300
Facsimile: (617) 772-8333
chris.henry@weil.com

Rachel L. Weiner Cohen (*pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, DC 20036
Telephone: (202) 682-7000
Facsimile: (202) 857-0940
rachel.cohen@weil.com

John M. Desmarais (SBN 320875)
Karim Z. Oussayef (*pro hac vice*)
Steven Balcof (*pro hac vice*)
Ido Sadeh (*pro hac vice*)
DESMARAIS LLP
230 Park Ave, 26th Floor
New York, New York 10169
Telephone: (212) 351-3400
Facsimile: (212) 351-3401
jdesmarais@desmaraisllp.com
koussayef@desmaraisllp.com
sbalcof@desmaraisllp.com
isadeh@desmaraisllp.com

Marie Delzell (SBN 367393)
DESMARAIS LLP
101 California Street, Suite 3000
San Francisco, California 94111
Telephone: (415) 573-1900
Facsimile: (415) 573-1901
mdelzell@desmaraisllp.com

Atifah Safi (*pro hac vice*)
DESMARAIS LLP
1899 Pennsylvania Avenue, NW, Suite 400
Washington, DC 20006
Telephone: (202) 451-4900
Facsimile: (202) 451-4901
asafi@desmaraisllp.com

*Counsel for Plaintiff Apple Inc.*

[Additional counsel listed in signature block]

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

APPLE INC.,

Plaintiff,

vs.

CHANG LIU, TANG YEW TAN, OPENAI FOUNDATION f/k/a OPENAI, INC., OPENAI GROUP PBC, and IO PRODUCTS, LLC f/k/a IO PRODUCTS, INC.,

Defendants.

Case No. 5:26-cv-07078-EJD

**PLAINTIFF APPLE INC.'S SUPPLEMENTAL BRIEF IN SUPPORT OF ITS MOTION FOR EXPEDITED DISCOVERY**

**Judge:** Edward J. Davila

**Hearing Date:** Oct. 1, 2026

**Time:** 9:00 a.m.

## I. INTRODUCTION

The premises underlying Defendants' opposition to expedited discovery (and their motion to dismiss) are demonstrably false in light of any reasonable review of the MacBook that Mr. Liu used after leaving Apple, which he only recently produced to Apple. Despite having the MacBook in their possession since the start of this lawsuit, and notwithstanding the gravity of the allegations in the complaint, Defendants chose not to inspect it, opting instead to advance theories that the device's data disproves. Initial forensic analysis of the MacBook shows:

- Mr. Liu not only downloaded a confidential Apple circuit schematic but also ***used*** it in his work at OpenAI;
- Far from his unauthorized access to Apple's third-party cloud storage being unknown to him, Mr. Liu and others at OpenAI were ***well-aware*** of that access;
- Mr. Liu, upon learning of Apple's internal investigation of him, ***sent instructions for destroying evidence*** to an OpenAI colleague who confirmed she would comply; and
- Mr. Liu used a tool in his work at OpenAI that has the same name as an ***internal Apple engineering application*** used for Apple development work.

This shocking evidence—which Defendants chose to ignore despite its availability—demonstrates why Apple urgently needs expedited discovery. The MacBook represents the very limited information Defendants provided so far (and only after weeks of delay), and shows Apple is not conducting "fishing expeditions" but that its trade secrets are being used and evidence is being destroyed.

## II. THE NEW EVIDENCE

### A. New evidence confirms that Mr. Liu used Apple's trade secrets while employed by OpenAI and for OpenAI.

On August 21, Mr. Liu's counsel delivered a MacBook that was in Mr. Liu's possession (the "MacBook") to Apple's forensic expert. (Declaration of Daniel Roffman in Support of Apple's Motion for Expedited Discovery ("Roffman Decl.") ¶ 7.) On August 26, Mr. Roffman reported initial results of his forensic analysis of the MacBook to Apple. (Declaration of Gabriel S. Gross in Support of Apple Inc.'s Administrative Motion for Leave to File a Supplemental Brief ("Gross Decl.") ¶ 3.) The analysis revealed that in March 2026—while employed by OpenAI—Mr. Liu used an Apple trade secret file named "[redacted]" (the "[redacted]" file), which contains the circuit schematic for a power-converter circuit as well as simulation input data for modeling the circuit's operating modes. (Roffman Decl. ¶¶ 13-18.) The circuit is used in or under consideration for Apple products and is

highly confidential and proprietary to Apple. (*See* Dkt. 39, Patel Decl. ¶¶ 4, 65 (discussing Patel Decl. Ex. 24, the [redacted] file); *see also* August 31, 2026, Declaration of Ayman Fayed ("Fayed Decl.") ¶¶ 16-20 (further discussing the [redacted] file).) The [redacted] file is one of the dozens of confidential Apple files Mr. Liu downloaded from Apple's third-party cloud storage *after* he left Apple for OpenAI in January 2026. (Dkt. 45, Roffman PI Decl. ¶ 20.) It was downloaded on March 7. (*Id.*)

On Wednesday, March 18, Mr. Liu used the circuit file to run a simulation in LTspice, an electrical engineering tool used to develop and analyze electronic circuits, under the user profile "changliu." (Roffman Decl. ¶¶ 15-18; *see also* Fayed Decl. ¶¶ 9-15.) This simulation created at least three output files that were uploaded to Mr. Liu's iCloud from a different computer, a "Mac Mini." (Roffman Decl. ¶¶ 15, 19.) In messages from around the same time, Mr. Liu boasted that for his work at OpenAI, he was "[f]eeling AI all day long," and that "[i]n the past hour," his AI "agent learned how to run LTspice and look at result, tune compensation parameter." (*Id.* ¶¶ 20-22.) He further explained that he ran these simulations, including with AI agents, for power conversion development work: "I try to make a behavior buck. With voltage outer and current inner. Everything ideal. It still took me a day.. now it's two hour. Including learning fresh." (*Id.* Ex. A (recipient of these messages responding, "Oh man! Why do they even need you then?" i.e., at OpenAI).) Weeks later, on April 11, the Apple circuit file and the outputs resulting from the simulation "changliu" ran on March 18 were synchronized to the MacBook, when Mr. Liu signed into his iCloud account on that device. (*Id.* ¶¶ 11, 15, 19.) This is what allowed Apple to determine Mr. Liu's actions on the "Mac Mini" from the MacBook.

Apple asked Defendants about Mr. Liu's use of Apple's trade secret circuit in advance of this filing, but Defendants had not inspected the MacBook and did not offer an explanation. (Gross Decl. ¶ 6.) There also is no indication Defendants have inspected the Mac Mini that was used to run the LTspice simulation of Apple's trade secret circuit. Accordingly, it appears Mr. Liu had in his possession multiple devices that Defendants failed to investigate before claiming that Mr. Liu was "entirely innocent." (Dkt. 91 at 7.)

### B. New evidence refutes Defendants' claim that Mr. Liu's illicit downloads were the result of inadvertent synchronization unknown to him.

The Macbook also confirms that Mr. Liu knew his unauthorized access to Apple's third-party

cloud storage was still ongoing in early April 2026, weeks after his initial illicit downloads of files containing Apple trade secrets. (*See* Roffman Decl. Ex. B.) Mr. Liu knew he could sign out of Apple's third-party cloud storage, but instead continued to access and download files from it through the end of April. (*See* Dkt. 45, Roffman PI Decl. ¶ 20.) This is inconsistent with Defendants' claim that Mr. Liu's downloads were the result of inadvertent "device syncing" unknown to him. (Dkt. 59 at 16.)

**C. New evidence confirms the significant risk of evidence being destroyed.**

The MacBook further shows that in June 2026 and after learning they were the subject of an internal Apple investigation, Mr. Liu and his OpenAI colleague Yu-Ting ("Alyssa") Peng exchanged messages in which he told her to have Apple-issued devices "restored" and to then "start using" them more. (Roffman Decl. ¶ 25, Ex. D.) Deliberately "restoring" and subsequently using a device is an example of "anti-forensic" conduct that overwrites forensic artifacts and evidence (*Id.* ¶ 26), such as evidence that would show what Mr. Liu did with misappropriated trade secrets.

**D. New evidence shows previously unknown use of a tool at OpenAI that has the same name as an Apple internal engineering tool.**

The MacBook also reveals additional acts of potential trade secret misappropriation previously unknown to Apple. While working at OpenAI, Mr. Liu referred to using a tool and related software packages with names identical to proprietary internal engineering tools used at Apple. (*Id.*, Ex. F.)

**III. THE NEW EVIDENCE CONFIRMS GOOD CAUSE FOR EXPEDITED DISCOVERY.**

**A. The new evidence confirms misappropriation and use of Apple's trade secrets.**

In opposing Apple's motion for expedited discovery, Defendants asserted that "no trade secrets were misappropriated" and disparaged Apple's motion as a "fishing expedition" aimed at "rummaging through everything" to find "something [Apple] can then claim is a trade secret." (Dkt. 87 at 1, 8, 12.) The newly discovered shows those assertions are meritless.

Apple identified the [redacted] file among its misappropriated trade secrets before receiving any discovery from Defendants. Dkt. 47-8 at ¶ 82. And Apple's ongoing forensic inspection already has confirmed that this trade secret file was not "inadvertently retained" or innocently possessed. The [redacted] file and its trade secret power-converter circuit were run in a simulation, which generated new outputs (.log, .net, and .raw files) derived from Apple's trade secrets. (Roffman Decl. ¶¶ 14-18.) At the same time, Mr. Liu was having an AI agent learn to "run" such simulations, "look at [the]

result[s]," and "tune compensation parameter[s]"—all in support his OpenAI work. (*Id.* ¶ 22, Ex. A.)

This is precisely the type of active use and exploitation of trade secrets that warrants expedited discovery. As courts recognize, "[q]uickly determining what information Defendant removed from Plaintiff, and whether and how Plaintiff's information is being used by Plaintiff's competitors is essential." *AssuredPartners of California Ins. Servs., LLC v. Clem*, No. 2:25-cv-11856, 2026 WL 1182808, at *5 (C.D. Cal. Jan. 28, 2026) (ordering expedited discovery) (internal quotation marks omitted). Accordingly, "[d]istrict courts in the Ninth Circuit regularly permit expedited discovery in cases that, like this one, implicate claims of improper use of confidential information or trade secrets." *Id.* (internal quotation marks omitted). Further, because the [redacted] file is just one of dozens that Mr. Liu illicitly downloaded (*see* Dkt. 45, Roffman PI Decl. ¶ 20), the active use of this file raises the reasonable inference that other misappropriated files have been similarly exploited—making expedited discovery into Defendants' unlawful conduct even more necessary.

**B. The new evidence demonstrates the need for discovery into and imaging of relevant devices and accounts.**

The MacBook is not the only device Mr. Liu used to misappropriate trade secrets. The LTspice simulation of Apple's power-converter circuit in the downloaded file ran on a separate computer—a Mac Mini—which Defendants have not produced and Apple has not examined. (Roffman Decl. ¶¶ 19, 28.) The full scope of Mr. Liu's misconduct thus remains unknown. (*Id.* ¶¶ 28-30.) This too supports granting expedited discovery, including imaging of devices used to "access, copy, download, obtain, receive, retrieve, share, store, or otherwise transmit Apple Originated Information." (Dkt. 49-5 at 8.)

Courts routinely order forensic imaging in expedited discovery where, as here, multiple devices are involved in the misappropriation. *See WeRide Corp. v. Kun Huang*, 379 F. Supp. 3d 834, 856 (N.D. Cal. 2019) (ordering "full-disk forensic imaging" of "[a]ny computer" "which contain or have ever contained [plaintiff's] trade secrets" "and/or any copies and/or references thereto"); *eHealthinsurance Servs., Inc. v. Healthpilot Techs.*, No. 21-cv-4061, 2021 WL 3052918, at *3 (N.D. Cal. July 20, 2021) (ordering defendants to make available for forensic imaging "all of their electronic data storage system(s) and/or personal computer(s)"). So should the Court here.

### C. The new evidence confirms the urgent need for expedited discovery.

As noted above, courts routinely order expedited discovery where, as in this case, misappropriating parties are actively using stolen trade secrets. *See* Section III.A. And here, Mr. Liu's use of Apple's trade secret power-converter circuit while employed by OpenAI and his use of AI agents to learn to run simulations raise concerns extending beyond ordinary document theft. Where trade secret information is fed into an AI agent or model that "learn[s]" from it, such "learning" may create irreversible and continually propagating uses of the trade secret (Roffman Decl. ¶ 31; Fayed Decl. ¶ 26)—harm that, at a minimum, is uniquely challenging to undo and requires prompt investigation. Moreover, the fact that Mr. Liu's counsel had the MacBook but had not yet looked at its data (and seemingly have not looked at the Mac Mini) demonstrates that expedited discovery with hard deadlines for substantive responses early in these proceedings is merited.

Additionally, the newly discovered evidence demonstrates the very real risk of evidence destruction. Important forensic artifacts on which forensic inspections rely—such as logs, metadata, and usage records—are transient and at risk of being lost, overwritten, or destroyed. (Roffman Decl. ¶¶ 29-32; Fayed Decl. ¶¶ 23-25) And the MacBook shows that after Mr. Liu and Ms. Peng found out about Apple's investigation in June (*see* Roffman Decl. Exs. C-D), they discussed the need to "restore" and then "start using" Apple-owned devices in their possession. (*Id.* ¶¶ 25, Ex. D.) In other words, they discussed destroying the types of forensic data Apple needs. This too favors expedited discovery. (*Id.* ¶ 26) "Courts have specifically found good cause for expedited discovery where"—as here—the "evidence sought is at risk of destruction." *AssuredPartners*, 2026 WL 1182808, at *6; *WeRide*, 379 F. Supp. 3d at 854 (granting expedited discovery where defendant had "already deleted computer files" on at least two relevant devices").

## IV. CONCLUSION

New evidence confirms Mr. Liu used the trade secrets he misappropriated from Apple while employed by OpenAI. It further confirms that additional pertinent devices remain uninvestigated, that the full scope of Defendants' misappropriation is yet to be exposed, and that relevant evidence is at risk of degradation and destruction. For these reasons, and those set out in Apple's motion (Dkt. 49) and reply (Dkt. 90), Apple respectfully requests that the Court grant its motion for expedited discovery.

Dated: August 31, 2026

Respectfully submitted,

WEIL, GOTSHAL & MANGES LLP
*/s/ Gabriel S. Gross*
Gabriel S. Gross (SBN 254672)
Gaby LaHatte (SBN 321844)
Vanessa K. Sim (SBN 341107)
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, California 94065
Telephone: (650) 802-3000
Facsimile: (650) 802-3100
gabe.gross@weil.com
gaby.lahatte@weil.com
vanessa.sim@weil.com

Christopher W. Henry (*pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
1001 Boylston Street, Suite 300
Boston, Massachusetts 02115
Telephone: (617) 772-8300
Facsimile: (617) 772-8333
chris.henry@weil.com

Rachel L. Weiner Cohen (*pro hac vice*)
Nicole Elena Bruner (*pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, DC 20036
Telephone: (202) 682-7000
Facsimile: (202) 857-0940
rachel.cohen@weil.com
nicole.bruner@weil.com

Heather Blacklaws (*pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
600 Congress Avenue, Suite 2170
Austin, Texas 78701
Telephone: (512) 487-1480
Facsimile: (512) 487-1520
heather.blacklaws@weil.com

Nina Shapiro (*pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
767 5th Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
nina.shapiro@weil.com

John M. Desmarais (SBN 320875)
Karim Z. Oussayef (*pro hac vice*)
Steven Balcof (*pro hac vice*)
Ido Sadeh (*pro hac vice*)
DESMARAIS LLP
230 Park Ave, 26th Floor
New York, New York 10169
Telephone: (212) 351-3400
Facsimile: (212) 351-3401
jdesmarais@desmaraisllp.com
koussayef@desmaraisllp.com
sbalcof@desmaraisllp.com
isadeh@desmaraisllp.com

Marie Delzell (SBN 367393)
DESMARAIS LLP
101 California Street, Suite 3000
San Francisco, California 94111
Telephone: (415) 573-1900
Facsimile: (415) 573-1901
mdelzell@desmaraisllp.com

Atifah Safi (*pro hac vice*)
DESMARAIS LLP
1899 Pennsylvania Avenue, NW, Suite 400
Washington, DC 20006
Telephone: (202) 451-4900
Facsimile: (202) 451-4901
asafi@desmaraisllp.com

*Counsel for Plaintiff Apple Inc.*