# EXHIBIT B

# REDACTED VERSION OF DOCUMENT FILED UNDER SEAL

REDACTED VERSION OF
DOCUMENT FILED
UNDER SEAL

Gabriel S. Gross (SBN 254672)
Gaby LaHatte (SBN 321844)
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, California 94065
Telephone: (650) 802-3000
Facsimile: (650) 802-3100
gabe.gross@weil.com
gaby.lahatte@weil.com

Christopher W. Henry (*pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
1001 Boylston Street, Suite 300
Boston, Massachusetts 02115
Telephone: (617) 772-8300
Facsimile: (617) 772-8333
chris.henry@weil.com

Rachel L. Weiner Cohen (*pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, DC 20036
Telephone: (202) 682-7000
Facsimile: (202) 857-0940
rachel.cohen@weil.com

John M. Desmarais (SBN 320875)
Karim Z. Oussayef (*pro hac vice*)
Steven Balcof (*pro hac vice*)
Ido Sadeh (*pro hac vice*)
DESMARAIS LLP
230 Park Ave, 26th Floor
New York, New York 10169
Telephone: (212) 351-3400
Facsimile: (212) 351-3401
jdesmarais@desmaraisllp.com
koussayef@desmaraisllp.com
sbalcof@desmaraisllp.com
isadeh@desmaraisllp.com

Marie Delzell (SBN 367393)
DESMARAIS LLP
101 California Street, Suite 3000
San Francisco, California 94111
Telephone: (415) 573-1900
Facsimile: (415) 573-1901
mdelzell@desmaraisllp.com

Atifah Safi (*pro hac vice*)
DESMARAIS LLP
1899 Pennsylvania Avenue, NW, Suite 400
Washington, DC 20006
Telephone: (202) 451-4900
Facsimile: (202) 451-4901
asafi@desmaraisllp.com

*Counsel for Plaintiff Apple Inc.*

[Additional counsel listed in signature block]

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| APPLE INC.,<br><br>Plaintiff,<br><br>vs.<br><br>CHANG LIU, TANG YEW TAN, OPENAI FOUNDATION f/k/a OPENAI, INC., OPENAI GROUP PBC, and IO PRODUCTS, LLC f/k/a IO PRODUCTS, INC.,<br><br>Defendants. | Case No. 5:26-cv-07078-EJD<br><br>**DECLARATION OF DANIEL ROFFMAN IN SUPPORT OF PLAINTIFF APPLE INC.'S MOTION FOR EXPEDITED DISCOVERY**<br><br>**Judge:** Edward J. Davila<br><br>**Hearing Date:** Oct. 1, 2026<br><br>**Time:** 9:00 a.m. |

## I. INTRODUCTION

1. My name is Daniel Roffman. I am a Vice President in the Forensic Services Practice at Charles River Associates, Inc. ("CRA"). I have over twenty years of digital forensics and information security consulting experience, helping clients protect their most valuable information, and investigating allegations of cyber incidents. My primary job duties involve leading digital forensic investigations and providing expert advice or testimony for clients.

2. I previously submitted a declaration in this matter on August 3, 2026, in support of Apple's Motion for a Preliminary Injunction (Dkt. 45, hereafter, my "PI Declaration") which I incorporate by reference. Additional information about my background, qualifications, engagement, and compensation is included in my PI Declaration. If called upon to testify, I would do so consistent with the statements and opinions contained in this declaration and my PI Declaration.

3. My PI Declaration describes, among other things, my digital forensic investigation of communications that were left on Apple-issued work MacBooks, such as communications between Chang Liu and others who were then employed by Apple, and who have now since joined OpenAI. My PI Declaration states, for example, that Mr. Liu left Apple on January 22, 2026. (PI Decl. ¶18.) That day, in response to a message from Ms. Peng, Mr. Liu messaged her, "I'll check it for you tonight; I still have another computer," followed by a collection of five crying laughing emojis. (*Id.* Ex. E.)

4. In addition to compiling certain of Mr. Liu's communications left on Apple-issued work MacBooks, my PI Declaration discusses how I investigated Mr. Liu's activities relating to third-party cloud storage. (*Id.* ¶20.) As I describe in my PI Declaration, Mr. Liu performed over 240 downloads from Apple's third-party cloud storage, including downloads of at least thirty-seven unique Apple files, between February 8, 2026 and April 27, 2026, which is well after his employment at Apple ended. (*See id.*, Ex. B; *see also id.*, Ex. E, Mr. Liu's Apple-issued work MacBook iMessage: "LOL, I found out I can access" the repository, "so funny." (Feb. 8, 2026 at 10:08 pm PT / Feb. 9, 2026 at 6:08 am UTC).)

5. In my PI Declaration, I describe how Apple took steps to deprovision Mr. Liu's account at the time of his termination, but a bug that was then unknown to Apple allowed Mr. Liu to continue to

have access to the third-party cloud storage after his employment ended. (*Id.* ¶22.)

6. In this declaration in support of Apple's motion for expedited discovery, I describe preliminary findings from my inspection of a MacBook that Mr. Liu used after his departure from Apple, which I understand was sent to me from Mr. Liu's counsel's vendor, Sync Forensics. In this declaration, I refer to this computer as the "MacBook."

## II. MY ONGOING INVESTIGATION INTO MR. LIU'S RECENTLY RETURNED MACBOOK

7. On Friday, August 21, 2026, CRA received the MacBook from Sync Forensics, which I understand was directed to send this computer to CRA by Mr. Liu's counsel because this computer is a MacBook that Mr. Liu still had in his possession after this lawsuit began.

8. The serial number on the MacBook is "[redacted]," and the computer name for the MacBook is "C's MacBook Pro."

9. CRA personnel, working at my direction, forensically imaged the MacBook on Monday, August 24, 2026. Since then, my team and I have been investigating the data on this forensic image. This investigation is ongoing.

10. My preliminary investigation of the forensic image for the MacBook revealed that the Mr. Liu's user profile on the MacBook ("C") was created on March 14, 2026.

11. Files in Mr. Liu's iCloud Drive on the MacBook were added to this computer on April 11, 2026, through iCloud synchronization.[1]

12. The latest-in-time evidence of use of the MacBook I have observed was from July 3, 2026. Thus, based on my preliminary inspection, Mr. Liu used the MacBook between March 14 and July 3, 2026.

---

[1] When a person is signed into iCloud on more than one device, files added to iCloud Drive from one device are copied to other devices signed into that same iCloud account. This is why the files I describe further below, though created using a different computer, appeared on the MacBook once Mr. Liu set up this device and signed into his iCloud account on it.

13. In my PI Declaration, I explained that Mr. Liu downloaded files from Apple's third-party cloud storage after his employment with Apple ended, exploiting a bug that at the time was unknown to Apple and which has since been corrected. (*See* PI Decl. ¶¶ 20-23.)

14. One of the files Mr. Liu downloaded is named [redacted]. Mr. Liu downloaded that file from Apple's third-party cloud storage on March 7, 2026.

15. I located the [redacted] file on the MacBook. I also located three related files that synced from Mr. Liu's iCloud Drive on April 11, 2026. These three related files, shown in the table below, share the same file name as [redacted], but have different file extensions—.log, .net, and .raw extensions. In this declaration, I refer to these files as the "Related [redacted] Files."

| [redacted] Files on the MacBook | | | | |
|---|---|---|---|---|
| **#** | **Full Path** | **kMDItemDateAdded** | **_kMDItemCreationDate** | **kMDItemLastUsedDate** |
| **1** | [redacted] | 4/11/26 4:50 PM[2] | 7/16/25 9:42 PM | 3/18/26 5:45 PM |
| **2** | [redacted] | 4/11/26 3:40 PM | 3/18/26 5:47 PM | N/A |
| **3** | [redacted] | 4/11/26 3:40 PM | 3/18/26 5:47 PM | N/A |
| **4** | [redacted] | 4/11/26 3:40 PM | 3/18/26 5:47 PM | 3/18/26 5:47 PM |

16. The [redacted] file and the Related [redacted] Files were all located in the "LTspice" folder on the MacBook, at the filepath /Users/c/Documents/Ltspice/. LTSpice® is a "simulator software, schematic capture and waveform viewer with enhancements and models for improving the simulation of analog circuits" that "allows you to probe schematics and produce simulation results."[3]

17. The timestamps on the Related [redacted] Files on the MacBook are consistent with a LTspice simulation of the [redacted] file being run at approximately 5:47 PM PT on March 18, 2026.

---

[2] Unless otherwise stated, all dates and times are in the Pacific Time zone.

[3] https://www.analog.com/en/resources/design-tools-and-calculators/ltspice-simulator.html.

18. The .raw output file on the MacBook, which I have excerpted below, recorded the exact time the LTspice simulation was run—5:47:59 PM PT on March 18, 2026—and the file path used to run it, which included the user profile name "changliu."

[redacted]

19. I also reviewed the server.db file on Mr. Liu's MacBook, which records information about synchronization to iCloud Drive. Based on the "version_device_name" field associated with the .log, .net, and .raw Related [redacted] Files, I determined these files were added to Mr. Liu's iCloud Drive from a computer named "Mac Mini"—not the MacBook.

20. In my preliminary inspection of the MacBook, I also analyzed communications left on the MacBook, including communications on March 18, 2026, around the time the LTSpice® simulation was run.

21. **Exhibit A** to this declaration is a true and correct copy of iMessages sent and received by Mr. Liu on the MacBook on March 18, 2026.[4]

---

[4] Times in Exhibits A, B, C, D, and F are in Coordinated Universal Time (UTC), which is seven hours ahead of Pacific Daylight Time (PDT).

22. In messages sent on March 18 at 5:33 PM and 5:34 PM PT, Mr. Liu wrote to an individual who I understand is an Apple employee and was a former colleague of Mr. Liu's: "Feeling AI all day long," and "In the past hour. My agent learned how to run LT spice and look at result, tune compensation parameter." Ex. B. At 5:59 PM PT on March 18, Mr. Liu wrote: "Seriously … I try to make a behavior buck. With voltage outer and current inner. Everything ideal. It still took me a day.. now it's two hour. Including learning fresh." *Id.* These messages span the time during which the LTspice simulation of the [redacted] file was run, as I explained above.

23. **<u>Exhibit B</u>** to this declaration is a true and correct copy of iMessages sent and received by Mr. Liu on the MacBook on April 8, 2026.

24. **<u>Exhibit C</u>** to this declaration is a true and correct copy of excerpts of iMessages sent and received by Mr. Liu on the MacBook on June 7, 2026.

25. **<u>Exhibit D</u>**, excerpted below, is a true and correct copy of iMessages exchanged by Mr. Liu and Ms. Peng on the MacBook on June 6, 2026.[5]

| **Liu iMessages, Table 1** | | | |
|---|---|---|---|
| **Date/Time in PT** | **Sender** | **Recipient** | **Message Content** |
| 6/6/26 4:12 PM | Chang Liu | Alyssa Peng | It's really important—make sure [Individual No. 16]/[Individual No. 17] has access to your device. If it hasn't been restored yet, maybe you should restore it and start using it more often. |
| 6/6/26 4:13 PM | Chang Liu | Alyssa Peng | [Individual No. 18] said Apple has started collecting my data. |
| 6/6/26 4:24 PM | Chang Liu | Alyssa Peng | 🐶 🐶 Omg crying. |
| 6/6/26 5:16 PM | Alyssa Peng | Chang Liu | Exclaimed "[Individual No. 18] said Apple has started collecting my data." |
| 6/6/26 5:18 PM | Alyssa Peng | Chang Liu | Oh, they've already restored and started using them. |
| 6/6/26 5:18 PM | Alyssa Peng | Chang Liu | I think I still have an old phone that hasn't been restored. I'll go back and use it, haha. |
| 6/6/26 5:18 PM | Alyssa Peng | Chang Liu | Thanks for the reminder 🔔 |

[5] **<u>Exhibit E</u>** is a true and correct copy of the certification for the translation of iMessages in Ex. D.

| Liu iMessages, Table 1 | | | |
|---|---|---|---|
| **Date/Time in PT** | **Sender** | **Recipient** | **Message Content** |
| 6/6/26 5:20 PM | Chang Liu | Alyssa Peng | Liked "Oh, they've already restored and started using them." |

26. In the above messages, Mr. Liu and Ms. Peng discuss performing a "restore" on devices. Based on my experience, this refers to resetting devices to factory condition, erasing the contents and the traces of their past actions. On a MacOS computer, "restoring" or resetting a device to factory condition erases everything that was present, making the data unrecoverable to a forensic examiner. Resetting or "restoring" a device to erase what was there previously is something I typically refer to as "anti-forensics," which is an industry term to describe steps a user may take to cover up traces of their past actions. One of the most common anti-forensic techniques that I have observed is when a user "restores" their device to reset or wipe it, erasing the data that was present before so that it is unrecoverable to a forensic examiner. Mr. Liu also wrote that after restoring a device, Ms. Peng should "start using it more." In other words, it appears that Mr. Liu was suggesting both erasing device contents, and putting new data onto devices, to obfuscate the act of erasing data. These tactics of restoring or resetting and using a device track closely with anti-forensic behaviors I have seen before.

27. **<u>Exhibit F</u>** is a true and correct copy of excerpts of iMessages sent and received by Mr. Liu on the MacBook on May 8, 2026 and June 10, 2026.

28. My investigation has been limited by the time and information available to me to date. For example, I have not yet identified the device Mr. Liu used to download Apple files from Apple's third-party cloud storage, nor have I been able to examine the "Mac Mini" device Mr. Liu used to run the LTspice simulation described above. And the full scope of Mr. Liu's actions is still unknown. However, from my preliminary analysis of the MacBook, I have determined that Mr. Liu used an Apple file to run a simulation after he left Apple, and that the resulting files were uploaded to iCloud and synchronized to other devices, including the MacBook.

29. Forensic examinations and investigations of full physical images of the "Mac Mini" and any other devices Mr. Liu used to acquire, use, or disclose Apple files, including at and to OpenAI, is necessary to determine the full extent and scope of these activities. Forensic access to and

examinations of these devices will facilitate determinations of what other Apple files Mr. Liu accessed, copied, used, or transferred; whether Mr. Liu transferred files to additional repositories; what steps Mr. Liu may have taken to conceal his conduct; and what OpenAI and io did with files Mr. Liu downloaded or used at OpenAI, including to train AI models and agents.

30. In my experience, the devices of people who directly take confidential information are rarely the only devices that matter to determine the extent of how that confidential information has been used. Files that leave a company are often shared, copied, or incorporated into others' work, an example of which could be using a confidential .asc file to run circuit simulations, which generates new output files based on the .asc file input. For this reason, and based on the facts in this declaration and my PI Declaration, I believe forensic examination is needed beyond Mr. Liu's own devices—including of relevant OpenAI and io devices and accounts, and the devices of others I identified in my PI Declaration. This is necessary to determine how Apple's information moved after it left Apple's systems, who received it, where it went, whether it was incorporated into OpenAI's or io's work, and whether it remains accessible or has been deleted.

31. This need is heightened by Mr. Liu's messages suggesting that he had an AI agent that "learned how to run" the simulation described above. In my experience, when a task is performed by an AI agent rather than a person directly, that process can generate additional logs, outputs, or records—on the device running the agent, or on any service the agent connects to—that would not exist if the same task were performed manually. An AI agent that "learns" trade secret information may also be using, modifying, and storing the trade secret and derivative information in ways that cannot be detected or understood without forensic examination. Without forensic access to the device or devices involved, I cannot determine what additional records, if any, the conduct described above may have created, or whether they still exist.

32. Additionally, as I explained in my PI Declaration, forensic evidence is often temporal in nature and prompt preservation is necessary to avoid its loss. The iMessages described above, in which Mr. Liu discusses a potential investigation into his own conduct and advises others to "restore" their devices, directly illustrate that risk. And given the number of individuals and devices involved, I

believe prompt, coordinated forensic imaging of devices in Defendants' possession, and of OpenAI's and io's own devices and accounts, is necessary to discern the full scope of what happened to Apple's information.

I declare under penalty of perjury that, to the best of my knowledge, the foregoing is true and correct.

Executed in Baltimore, Maryland, August 31, 2026.

Daniel Roffman

# EXHIBIT A

# FILED UNDER SEAL

# EXHIBIT B

# FILED UNDER SEAL

# EXHIBIT C

# FILED UNDER SEAL

# EXHIBIT D

# FILED UNDER SEAL

# EXHIBIT E

# REDACTED VERSION OF DOCUMENT FILED UNDER SEAL

MORNINGSIDE
A Questel Company

morningtrans.com

# TRANSLATION CERTIFICATION

**Date: 2026/08/28**

To whom it may concern:

This is to certify that the attached translation is an accurate representation of the documents received by this office. The translation was completed from:

- Chinese (PRC)

To:

- English (USA)

The documents are designated as:

- [redacted]

Samuel Wu, Managing Director of this company, attests to the following:

"To the best of my knowledge, the aforementioned documents are a true, full and accurate translation of the specified documents."

Signature of Samuel Wu, Managing Director



299 South Main Street, Suite 1300
Salt Lake City, UT 84111

# EXHIBIT F

# FILED UNDER SEAL