Andrew H. Schapiro (*pro hac vice*)
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
(312) 705-7400
andrewschapiro@quinnemanuel.com

Patrick D. Curran (Bar No. 241630)
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
111 Huntington Ave, Suite 520
Boston, MA 02199
(617) 712-7100
patrickcurran@quinnemanuel.com

Jodie W. Cheng (Bar No. 292330)
David Eiseman (Bar No. 114758)
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600
jodiecheng@quinnemanuel.com
davideiseman@quinnemanuel.com

Yehuda Goor (*pro hac vice*)
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
295 Fifth Avenue, 9th Floor
New York, NY 10016
(212) 849-7000
yehudagoor@quinnemanuel.com

*Attorneys for Defendants OpenAI Foundation, OpenAI Group PBC, io Products LLC, and Tang Yew Tan*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| APPLE INC.,<br><br>Plaintiff,<br><br>vs.<br><br>CHANG LIU, TANG YEW TAN, OPENAI FOUNDATION f/k/a OPENAI, INC., OPENAI GROUP PBC, and IO PRODUCTS, LLC f/k/a IO PRODUCTS, INC.,<br><br>Defendants. | Case No. 5:26-cv-07078-EJD<br><br>**DECLARATION OF VICTORIA E. LAMPTON IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**<br><br>Hon. Edward J. Davila<br>Courtroom 4<br><br>Hearing Date: Oct. 1, 2026<br>Hearing Time: 9:00 a.m. |

**DECLARATION OF VICTORIA E. LAMPTON**

I, Victoria ("Vikki") E. Lampton, declare as follows:

1. I submit this declaration in support of Defendants' Opposition to Apple's Motion for a Preliminary Injunction (ECF No. 38) (the "Motion"). I have personal knowledge of the facts stated herein, and if called as a witness, I could and would testify competently thereto.

2. I serve as a Recruiting Manager in OpenAI's Robotics division, a position I have held since October 2025. In that role, I lead hiring for the Robotics division and manage a team of recruiters. Before taking over the manager role, I individually handled recruiting for the Robotics team and held several other recruiting roles at OpenAI. I began working at OpenAI in May 2023. I previously worked as a recruiter at other technology companies.

3. OpenAI's Robotics division is separate from its Consumer Hardware division acquired from io Products, and there is little overlap between the two. The Robotics recruiters I manage at OpenAI and I do not do any recruiting work for the Consumer Hardware division, and we have no interaction with candidates being considered for, or interviewed by, the Consumer Hardware division. The Robotics recruiters I manage at OpenAI and I do not participate in the preparation or distribution of Consumer Hardware division recruiting documents, including documentation associated with candidates and interviews. Nor do we do any recruiting for roles involving consumer hardware.

4. OpenAI's Robotics division and Consumer Hardware division have different recruiting agendas. I understand that the Consumer Hardware division has its own recruiters and that it is interested in different candidate profiles than OpenAI's Robotics division. From my experience, OpenAI's Robotics division does not seek candidates from Apple because consumer electronics experience does not align with the need to build dynamic, integrated physical systems. Instead, candidates often have experience working at companies with robotics, industrial equipment, autonomous vehicles, aerospace, or mechatronics-focused environments involving motion, actuation, and controls. Only five employees in the OpenAI Robotics division previously worked at Apple. According to my team's records, across the total number of candidates who reached an introduction chat (known as a "screening call") with a recruiter from the OpenAI Robotics division,

less than 6% were working at Apple. Similarly, only ten candidates from Apple have reached an onsite interview with a technical deep dive with the OpenAI Robotics division.

5. I understand that in its Motion, Apple quoted language from an email sent by one of the OpenAI Robotics recruiters who reports to me, [redacted], which is a template of a generic pre-interview guide for candidates being interviewed with OpenAI's Robotics division. I am copied on the email. A true and correct copy of the email is attached hereto as Exhibit A. I further understand that Apple alleges that Tang Tan was responsible for the content of that email. Mot. at 1; *see id.* at 4, 14 (citing Roffman Decl. ¶ 37). Apple is mistaken. In fact, Tan had no role or input in the preparation of this email, and to my knowledge it was never shared with him before the commencement of this litigation, nor am I aware of any reason for it to be shared with Tan or anyone else with OpenAI's Consumer Hardware division. Nor does this document make any mention of Apple or its information. My group created this generic pre-interview guide and it is used only for recruiting at OpenAI's Robotics division. To my knowledge, this pre-interview guide has been shared with a total of only three candidates who worked at Apple, each of whom interviewed with OpenAI's Robotics division, not its Consumer Hardware division.

6. This document is an example of a typical form email that the Robotics recruiters I manage and I send to Robotics candidates, regardless of where they currently work or worked previously. The email informs candidates that as part of their interview at OpenAI, they will do a "Technical Deep Dive" in which they "walk us through a technical project" that they have "led or contributed to." Ex. A at 1. It advises candidates to use a slide deck but also invites them to bring "any other supporting materials—such as a portfolio, CAD/design artifacts, or prototypes—that help explain [their] work." *Id.* In my industry experience outside of OpenAI, this process is customary and is also called a "technical presentation." I have routinely encountered candidates who have pre-existing presentation slide decks from their interviews with other companies who use those same presentations with the OpenAI Robotics division.

7. After these emails are sent, my team's process is to call the candidate directly to walk him or her through their contents. *See* Ex. A at 1 ("Please prioritize connecting with [Vikki Lampton] for interview preparation by booking time on her calendar."). During these calls, my

team and I tell the candidates not to bring or share anything confidential and to focus instead on public information. We use a standard script for these calls. The "Technical Deep Dive," or "TDD," portion of that script contains the following guidelines regarding any "confidential projects" the candidate worked on at their current or previous employer:

> • **If working on confidential projects:**
>
> • You may anonymize or abstract sensitive details (e.g., use generic labels instead of product names, omit specific metrics, replace internal architecture diagrams with high-level schematics).
>
> • Focus on **the nature of the challenge and your approach**, not the confidential business context.
>
> • You can also substitute with a representative past project that's similar in scope/complexity but safe to share.
>
> • If unsure, check with your current employer's policy before the interview.
>
> • The key is to preserve **technical depth** while stripping out identifiers or proprietary data.

8. I went through this script with the Apple candidate who received the email attached as Exhibit A.

9. As the script shows, OpenAI's Robotics recruiters instruct candidates to "check with [their] employer's policy before the interview" if they are unsure whether they have permission to share information during the Technical Deep Dive. The script also makes clear that we tell candidates to "[f]ocus on **the nature of the challenge and [their] approach**, not the confidential business context."

10. It is my policy, which I train the recruiters I manage to follow, to be clear with candidates throughout the recruiting and interviewing processes that OpenAI expects candidates not to discuss or provide us with any confidential information from their current or previous employers. Because we make that expectation clear, I am not aware of any occasion in which a candidate brought or discussed confidential information during an interview or other recruiting interaction.

11. To my understanding, the essence of a Technical Deep Dive is to allow the candidate to talk about how, in the past, he or she applied the skills OpenAI is looking for. The point is to learn about the candidate's skills and approach to problem-solving; it is never for OpenAI to learn

any confidential information. For example, per the script discussed *supra* ¶¶ 7-9, we instruct candidates to "[f]ocus on the nature of the challenge and your approach, not the confidential business context."

12. In my experience, such Technical Deep Dives are standard in recruiting across the tech industry.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 31st day of August, 2026 in Oakland, California.

Signed by:

By Victoria Lampton

DAF186BEBECF461...

Victoria Lampton