Andrew H. Schapiro (*pro hac vice*)
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
(312) 705-7400
andrewschapiro@quinnemanuel.com

Patrick D. Curran (Bar No. 241630)
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
111 Huntington Ave, Suite 520
Boston, MA 02199
(617) 712-7100
patrickcurran@quinnemanuel.com

Jodie W. Cheng (Bar No. 292330)
David Eiseman (Bar No. 114758)
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600
jodiecheng@quinnemanuel.com
davideiseman@quinnemanuel.com

Yehuda Goor (*pro hac vice*)
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
295 Fifth Avenue, 9th Floor
New York, NY 10016
(212) 849-7000
yehudagoor@quinnemanuel.com

*Attorneys for Defendants OpenAI Foundation, OpenAI Group PBC, io Products LLC, and Tang Yew Tan*

Kate E. Lazarus (Bar No. 268242)
klazarus@kblfirm.com
KWUN BHANSALI LAZARUS LLP
555 Montgomery Street, Suite 750
San Francisco, CA 94111
Tel: (415) 630-2350

*Attorneys for Defendant Chang Liu*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| APPLE INC.,<br><br>Plaintiff,<br><br>vs.<br><br>CHANG LIU, TANG YEW TAN, OPENAI FOUNDATION f/k/a OPENAI, INC., OPENAI GROUP PBC, and IO PRODUCTS, LLC f/k/a IO PRODUCTS, INC.,<br><br>Defendants. | Case No. 5:26-CV-07078-EJD<br><br>**DECLARATION OF KATE E. LAZARUS IN SUPPORT OF DEFENDANTS' RESPONSE TO PLAINTIFF APPLE INC.'S SUPPLEMENTAL BRIEF IN SUPPORT OF ITS MOTION FOR EXPEDITED DISCOVERY**<br><br>**Judge:** Edward J. Davila<br><br>**Complaint Filed:** July 10, 2026 |

I, Kate E. Lazarus, declare as follows:

1. I am an attorney licensed to practice in the State of California and am an attorney of the law firm Kwun Bhansali Lazarus LLP, counsel for Defendant Chang Liu in the above captioned action. I submit this declaration in support of Defendants' Response to Plaintiff Apple Inc.'s ("Apple") Supplemental Brief in Support of its Motion for Expedited Discovery (the "Supplemental Brief"), dated August 31, 2026. I have personal knowledge of the facts stated herein, and if called as a witness, I could and would testify competently thereto.

2. On or approximately July 15, 2026, shortly after Liu retained me as counsel in this matter and five days after Apple's complaint was filed, I retained Sync Forensics, a forensics vendor, on behalf of Liu. I then worked with Liu to promptly quarantine and send to Sync all computers and storage devices owned by Liu that he could identify as even potentially containing any documents originating from Apple. Similarly, we provided Sync with access to any of Liu's electronic accounts that could conceivably contain such documents. Sync then imaged all such devices and accounts. I understand those devices and accounts are listed as Exhibit B to the Declaration of Andy Crain in Support of Defendants' Opposition to Plaintiff Apple Inc's Motion for a Preliminary Injunction (the "Crain PI Declaration") (ECF No. 98).

3. In addition to Liu's personal devices that were promptly sent to Sync for preservation and investigation, Liu identified an Apple-owned MacBook Pro (the "MacBook Pro") and an old Apple-owned iPhone that he still had in his possession when this lawsuit was filed. Because these devices were Apple property, I did not think they should be imaged or reviewed without Apple's permission. Accordingly, instead of delivering them to Sync, Liu promptly delivered those devices to me for safekeeping. After receipt, I put them in a locked drawer in my office.

4. On July 21, 2026, I had a call with Apple's counsel. I informed them that I had the Apple-owned MacBook Pro and iPhone in my office, and that Liu was prepared to return them to Apple once forensic images of the devices were made. Apple's counsel asked if Charles River & Associates ("CRA") could do the imaging, and I responded that I preferred a third-party provider that was not retained exclusively by Apple to prepare the images. Apple's counsel indicated they understood and said they would follow-up with a proposal about who could handle the

images. Based on this conversation, I believe that Apple's counsel understood that Liu was not searching or reviewing these Apple-owned devices, but rather they were being held by me pending further instruction from Apple.

5. Apple's counsel did not follow up about the iPhone and MacBook Pro until August 13, over three weeks after our July 21 call. On that date, Apple's counsel emailed me and stated "We further understand that you would prefer a vendor other than CRA image these devices before their return. As you are already working with a discovery vendor in this case, we propose that your vendor image Mr. Liu's and Ms. Peng's devices, and that after such imaging, the devices be immediately returned to Apple." A true and correct copy of this email is attached as Exhibit 1.

6. On August 18, I confirmed to Apple's counsel that the devices were being shipped to Sync, and after they were imaged, they would be returned to Apple. *Id.* I asked Apple's counsel to provide a delivery address for the devices. That same day, Apple's counsel responded with the address for Apple's office in Cupertino. By the following day, August 19, Sync had taken the images and prepared the devices to be sent to Apple consistent with these instructions. Sync provided me a FedEx tracking number for the devices, which I in turn provided to Apple's counsel. Shortly after I emailed Apple's counsel the tracking number, Apple's counsel called me and said Apple would actually provide a different address (which was not yet available), and asked that we try to stop the shipment. FedEx had not picked up the devices from Sync yet, so we were able to stop the planned delivery. Later on August 19, Apple provided a new address, this time for CRA. Sync then promptly shipped the devices to the new address. *See* Ex. 1.

7. Unlike with Liu's personal devices and accounts, I did not instruct Sync to review the images from the Apple-owned devices. As noted above, I did not believe it was proper to investigate these devices without Apple's permission, given they belonged to Apple and there was no protective order in place. Nor did I receive any indication from Apple or its counsel that they wanted Sync or me to access and review the contents of the Apple-owned devices prior to execution of a protective order. Because of that, I instructed Sync to simply preserve the images. My expectation was that these devices would be searched and relevant information and documents would be produced in the normal course of discovery in this case.

8. On August 27, counsel for Apple emailed counsel for OpenAI and myself about meeting and conferring regarding a proposed supplemental brief concerning information obtained from the MacBook Pro. This is the first time Apple raised any issues related to the MacBook Pro. The other defendants' counsel and I made ourselves available to meet and confer the following morning, August 28. On that call, I informed Apple's counsel that we had not reviewed or searched the image of the MacBook Pro because we did not have Apple's permission to do so. I then stated that in view of Apple's new concerns, we would review the image and investigate. Following the August 28 call, I instructed Sync to review and analyze the image of the MacBook Pro.

9. Apple incorrectly states in its Supplemental Brief that "[t]here also is no indication Defendants have inspected the Mac Mini that was used to run the LTspice simulation of Apple's trade secret circuit. Accordingly, it appears Mr. Liu had in his possession multiple devices that Defendants failed to investigate before claiming that Mr. Liu was 'entirely innocent.'" ECF No. 93-3 at 2. This is in reference to Liu's personal Mac Mini. Counsel for Apple never asked me whether we had inspected Liu's Mac Mini prior to making this statement to the Court, and Apple is wrong. In fact, as detailed in the Crain PI Declaration, Sync did promptly investigate this machine after receiving it from Liu. *See* ECF No. 98. However, because the allegations in Apple's Complaint and Motion for a Preliminary Injunction relate to activity on Liu's Apple [redacted] account, the initial investigation of the Mac Mini was focused on files saved to [redacted] rather than files in Liu's personal iCloud account.

10. I understand from Apple's Supplemental Brief that Apple has searched and viewed the contents of Liu's personal iCloud account, which had synced to the MacBook Pro when Liu used the device several months after he had left his employment at Apple. Apple then quoted Liu's personal text messages with other non-Apple employees in an unsealed court filing. Roffman Decl. Exs. A-F. Those text messages were sent and received while Liu was no longer an Apple employee. Apple never asked for Liu's permission to search or view the contents of his personal iCloud account.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 11th day of September, 2026 in San Francisco, California.

*/s/ Kate E. Lazarus*
Kate E. Lazarus

**ATTESTATION**

I, Andrew H. Schapiro, am the ECF user whose ID and password are being used to file the above document. In compliance with Local Rule 5-1(i)(3), I hereby attest that Kate E. Lazarus has concurred in the filing of the above document.

By *<u>/s/ Andrew H. Schapiro</u>*
Andrew H. Schapiro