Gabriel S. Gross (SBN 254672)
Gaby LaHatte (SBN 321844)
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, California 94065
Telephone: (650) 802-3000
Facsimile: (650) 802-3100
gabe.gross@weil.com
gaby.lahatte@weil.com

Christopher W. Henry (*pro hac vice*)
Adam Gershenson (*pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
1001 Boylston Street, Suite 300
Boston, Massachusetts 02115
Telephone: (617) 772-8300
Facsimile: (617) 772-8333
chris.henry@weil.com
adam.gershenson@weil.com

Rachel L. Weiner Cohen (*pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, DC 20036
Telephone: (202) 682-7000
Facsimile: (202) 857-0940
rachel.cohen@weil.com

John M. Desmarais (SBN 320875)
Karim Z. Oussayef (*pro hac vice*)
Steven Balcof (*pro hac vice*)
Jun Tong (*pro hac vice*)
Ido Sadeh (*pro hac vice*)
DESMARAIS LLP
230 Park Avenue, 26th Floor
New York, New York 10169
Telephone: (212) 351-3400
Facsimile: (212) 351-3401
jdesmarais@desmaraisllp.com
koussayef@desmaraisllp.com
sbalcof@desmaraisllp.com
jtong@desmaraisllp.com
isadeh@desmaraisllp.com

Marie Delzell (SBN 367393)
DESMARAIS LLP
101 California Street, Suite 3000
San Francisco, California 94111
Telephone: (415) 573-1900
Facsimile: (415) 573-1901
mdelzell@desmaraisllp.com

Atifah Safi (*pro hac vice*)
DESMARAIS LLP
1899 Pennsylvania Avenue, NW, Suite 400
Washington, DC 20006
Telephone: (202) 451-4900
Facsimile: (202) 451-4901
asafi@desmaraisllp.com

*Counsel for Plaintiff Apple Inc.*

[Additional counsel listed in signature block]

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

APPLE INC.,

Plaintiff,

v.

CHANG LIU, TANG YEW TAN, OPENAI FOUNDATION f/k/a OPENAI, INC., OPENAI GROUP PBC, and IO PRODUCTS, LLC f/k/a IO PRODUCTS, INC.,

Defendants.

Case No. 5:26-cv-07078-EJD

**JOINT SUBMISSION REGARDING EXPEDITED DISCOVERY**

## I. PLAINTIFF'S STATEMENT REGARDING THE NEED TO EXPEDITE ITS PROPOSED DISCOVERY REQUESTS

As the Court requested at the September 14, 2026, Status Conference, Apple has attached a narrowed set of expedited requests for production ("RFPs"), interrogatories ("ROGs"), and deposition notices and topics. Exhibit 1. The narrowed RFPs target specific subject matter within the expedited discovery that Apple previously submitted. *See, e.g.,* Dkt. 49-7 (original expedited discovery) at No. 1 (use and dissemination of Apple Originated Information generally), No. 3 (forensic images), No. 5 (battery, metal finishing, and power management technology), and No. 6 (documents Defendants rely on in opposition to preliminary injunction). And the narrowed ROGs and deposition topics are near verbatim subsets (e.g., 2-3 ROGs per Defendant, instead of 5-7 ROGs) of Apple's original expedited discovery. *See* Dkt. 49-2, -3, -4, and -8.

Apple proposes that Defendants produce materials in response to the RFPs and respond to the ROGs within 14 days of the Court granting Apple's discovery, or within 5 days if Defendants have already collected the materials in connection with this case (as with the forensic images requested by RFP No. 1, for example). Depositions will occur within 30 days after Defendants respond.

Defendants' complaints are largely directed to issues that Apple addressed during the meet and confer process, such as agreeing that this narrowed expedited discovery would be in lieu of expedited discovery previously served and setting specific deadlines for Defendants to respond. Apple was prepared to further confer on the scope of its requests, but Defendants refused any expedited discovery.

### A. Forensic Images (Liu RFP Nos. 1-2; Tan RFP No. 1; OpenAI RFP Nos. 1-3; Liu and Tan ROG Nos. 1-2; OpenAI ROG Nos. 1-3; 30(b)(6) Topic Nos. 5-6)

Apple's requests related to forensic images are specifically tailored to devices and accounts for which expedited production and review are necessary. The first category of these requests relates to forensic images that Defendants "***have already collected*** in connection with the subject matter of Apple's claims," such as those "relied on by Mr. Crain." (Liu/Tan/OpenAI RFP No. 1). Defendants have explicitly relied upon such images in their opposition to Apple's Motion for a Preliminary Injunction and their opposition to Apple's Motion for Expedited Discovery. *See, e.g.*, Dkt. 144-1 at 4 ("Defendants' forensic expert worked with Liu and his counsel to 'expeditiously quarantine various devices….'"); *see also, e.g.,* Dkt. 114-7 at 9 ("A forensic investigation has revealed that, contrary to Apple's assertion that Liu downloaded certain documents on March 11 and April 27, all 37 files Apple

identifies as 'Apple files' are ***zero-byte*** files on Liu's Mac Mini, strongly suggesting that Liu never opened, copied, or otherwise interacted with them."); *id.* at 18 (similar).

The second category of Apple's forensic image discovery requests relates to forensic images of devices that Chang Liu, Tang Yew Tan, Yu-Ting ("Alyssa") Peng, or Individual 1 (Dkt. 114-9) have used that contain or contained Apple Originated Information. If OpenAI employees continue to possess devices that contain Apple Originated Information, those devices likely interact with OpenAI devices, systems, or networks, creating an immediate risk of further spreading Apple's confidential information. Thus, expedited discovery into these devices is critically needed to uncover the full scope of the misappropriation before Apple's trade secrets become so deeply entangled with OpenAI's hardware products or other research and development efforts that the harm cannot be undone. *See, e.g., Comet Techs. United States of Am. Inc. v. Beuerman,* 2018 WL 1990226, at *7 (N.D. Cal. Mar. 15, 2018); *Blackbird Techs., Inc. v. Joshi*, 2015 WL 5818067, at *6 (N.D. Cal. Oct. 6, 2015).

The third category relates to Mr. Liu's use of AI tools. Defendants have alleged that "a forensic investigation of Liu's Mac Mini, the device on which use of [Apple's confidential file] and the AI experiments would have taken place, revealed no evidence that Liu used [Apple's confidential file] in connection with any AI platform, including OpenClaw, ChatGPT, Codex, and Claude." Dkt. 144-1 at 4. Defendants, however, did not provide any evidence to support that assertion.

Apple's forensic expert has already uncovered several critical flaws in the analysis conducted by Defendants' experts, including (1) failures to locate files on Mr. Liu's Mac Mini that were demonstrably used and stored on that device and (2) incorrect conclusions that the presence of files with zero bytes or an empty kMDItemLastUsedDate field on the Mac Mini means those files were not accessed. Dkt. 150-6 ¶¶ 15-26, 28. Giving Apple's experts direct access to these forensic images is critical to understanding what other errors Defendants' experts may have committed.

Moreover, expedited review of these devices and accounts is needed to ensure they are not erased, wiped, overwritten, or lost, which would result in the loss of forensic evidence. *See* Dkt. 93-5 (Roffman Decl.) ¶ 26. This is particularly critical here, where Mr. Liu had already wiped his Apple-owned iMac prior to returning it to Apple, and directed Ms. Peng to similarly restore, i.e., "wipe," her devices. *See, e.g.*, Dkt. 150-6 ¶ 8, Ex. A; Dkt. 93-5, Ex. D. Courts routinely order the production of

forensic images in trade secret cases such as this one. *See WeRide Corp. v. Kun Huang*, 379 F. Supp. 3d 834, 856 (N.D. Cal. 2019) (ordering defendants during expedited discovery to make devices "available to [plaintiff's] counsel of record for full-disk forensic imaging and data preservation by [plaintiff], for [plaintiff's] counsel's review on an Attorney's Eyes Only basis"); *eHealthinsurance Servs., Inc. v. Healthpilot Techs.*, 2021 WL 3052918, at *3 (N.D. Cal. July 20, 2021).

Defendants have professed concerns that forensic images may include emails, messages, or calendar invites containing privileged and/or HIPAA-protected information. Such concerns ring hollow given that Defendants had no issues with their forensic vendor, Mr. Crain, imaging ***Apple's*** devices before returning them. Apple's experts can surely avoid reviewing such protected information just as Mr. Crain must have. Apple agrees (and expects Defendants likewise will agree) that (1) the production of forensic images will not constitute waiver of any privilege, (2) forensic images will be analyzed only by forensic experts bound by the Protective Order, (3) forensic experts will immediately sequester any information encountered from forensic images that appears potentially privileged on its face, will promptly identify it to the other side, and will not use it for any purpose, and (4) forensic experts will not use any personal information not related to the subject matter of this case.

**B. Defendants' Use of Apple's Trade Secrets (Liu RFP No. 3; Tan RFP No. 3; OpenAI RFP No. 4; 30(b)(6) Topic Nos. 2–3)**

Apple seeks expedited discovery regarding how Defendants are using the misappropriated Apple trade secrets to test Defendants' assertions. For instance, regarding metal-finishing, Defendants argued they did not use Apple's proprietary metal-finishing process in developing OpenAI's new consumer hardware device, but rather, that they "have developed their own standard metal finishes and colors (and the techniques to achieve those results) through extensive trials and iterative refinement, not any Apple confidential information." Dkt. 114-7 at 23. As Defendants have now put their development at issue, they must prove their assertions that they "developed their own standard metal finishes and colors" by producing supporting documents. Apple is not requesting "a complete technical record of OpenAI's development of any technology," as OpenAI asserts, but rather technology related to "metal finishes, power management, or battery functionality," the technology that Defendants have put at issue in defending against Apple's claims.

Similarly, regarding power management and battery functionality, Defendants have taken the

position that the simulation Mr. Liu ran and the Apple confidential file he used for that simulation had nothing to do with OpenAI's soon-to-be-released product. *See, e.g.,* Dkt. 144-1 at 3-4; Dkt. 144-6 ¶¶ 14, 18. The only way to test that proposition is for Defendants to produce discovery on their new product's power management and battery functionality. Again, Defendants put these points at issue for the upcoming argument, so fairness requires expedited production.

The need for expedited discovery is particularly urgent here because OpenAI has been in the process of developing its new product (Dkt. 1, ¶ 38); thus, each passing day increases the risk of the entanglement of Apple's trade secrets with OpenAI's new product in a manner that would be hard to undo. *See, e.g.*, *Comet Techs.*, 2018 WL 1990226, at *7; *Blackbird*, 2015 WL 5818067, at *6.

### C. Interview-Related Documents (Liu RFP No. 4; Tan RFP No. 3; OpenAI RFP No. 5; 30(b)(6) Topic No. 4)

In opposition to Apple's Motion for a Preliminary Injunction, Defendants argued that Apple relied upon a pre-interview guide used in a different OpenAI division, not the Consumer Hardware Products Group. *See* Dkt. 114-7 at 3-4. But Defendants never identified what the Consumer Hardware Products Group ***does*** use for its interviews. *Id.* This request thus seeks to obtain that missing information. Similarly, Defendants took the position that they used Apple's Manager's Checklist to help Apple employees. *See id.* at 5. The communications the Defendants had with those departing employees will test the statement they relied upon to oppose Apple's motion.

The issue of entanglement applies here as well. If interviewees from Apple were presenting "[t]echnical deep dive[s]" about Apple's technology or were bringing "CAD/design artifacts, or prototypes" of Apple's parts to OpenAI interviews, as its pre-interview guide indicates (*see* Dkt. 114, Lampton Decl., Ex. A at 1), expedited discovery is needed to ensure that the transfer of Apple's trade secrets is immediately contained and not spread throughout OpenAI.

### D. LINE Conversations (Liu RFP No. 5; Liu ROG No. 1)

LINE is a messaging application that many individuals may use in lieu of text messages or iMessages. Similar to the forensic images, Defendants have already collected, reviewed, and relied upon LINE conversations between Mr. Liu and Ms. Peng in opposing Apple's Motion for a Preliminary Injunction. *See, e.g.,* Dkt. 114-7 at 7 ("On January 27, Peng, who had taken over many of Liu's responsibilities at Apple, asked Liu a series of technical questions regarding Apple work. **Liu**

**Decl. Ex. F at 1**."); Dkt. 104 (August 31, 2026, Declaration of Chang Liu) ¶ 25b ("A true and correct copy of an excerpt of Peng's and my LINE exchange is attached hereto as **Exhibit F**.").

Accordingly, Defendants should not be permitted to access and rely upon isolated LINE messages without allowing Apple to access the full conversations that include such messages. Because Defendants are using these materials to defend the outstanding Motion for A Preliminary Injunction, their production should be expedited so that Apple can review them in advance of the hearing.

**E. Defendants' Proposal**

Defendants' proposal does not follow the Court's instructions. Rather than submitting "narrowed requests" for expedited discovery, *see* Dkt. 145, Defendants propose simply proceeding with the ordinary discovery the parties already served. That is not what the Parties and the Court discussed. Moreover, Defendants' proposal is inequitable. It would require Apple to respond 21 days from September 10, while allowing Defendants to respond 21 days from September 15. Further, Defendants' proposal obstructs Apple's ability to review any of the requested discovery—including that which has already been collected and considered by Mr. Crain—in advance of the upcoming hearing. Allowing Defendants to merely respond to Apple's expedited discovery 21 days from September 15 ultimately means that the full production of Defendants' responsive materials will not be completed until months later—well after the October 14 hearing.

Defendants also propose that, contrary to their own conduct to date, forensic images would be produced to a forensic neutral—and only after the entry of a joint forensic protocol. In other words, Defendants' procedure blocks Apple's experts from directly accessing the forensic images that Defendants' experts have already directly accessed and relied on in this case. It also prevents Apple from receiving any information at all—whether through a neutral or otherwise—until Defendants decide to engage on a forensic protocol and the selection of a neutral. Thus far, Defendants have shown little interest in doing so. The Court should reject a proposal that would delay and frustrate Apple's prompt access to this critical discovery.

## II. DEFENDANTS' STATEMENT

Apple's proposal does not satisfy the Court's directive to narrow its "expedited" discovery—something Apple represented during the September 14 conference it would be "happy to do." Tr. at 20:20. Instead, Apple's proposed discovery is, in many respects, broader and less tailored to its preliminary injunction motion than its original set. Apple has admitted that no expedited discovery is necessary for the PI hearing. Its requests remain directed to the merits (and beyond), and its own proposed schedule would result in the discovery not being completed until after the PI hearing.

Apple's proposal remains unworkable and confirms what Defendants have said all along (*see* Dkt. 87 at 1): the parties are best served by moving quickly in merits discovery, rather than breaking the process into inefficient phases. To that end, Defendants' counter-proposal is that the parties move forward with the discovery that has already been served on a 21-day rather than a 30-day timeline, with all such discovery requests counting against the parties' limits under the Federal Rules. This proposal fully addresses Apple's purported concerns regarding "entanglement" and preservation of information. Yet Apple rejected that proposal, suggesting that it does not want or need expedited discovery for its PI, but instead wants a one-sided fishing expedition to gain litigation advantage. For the reasons below, the Court should deny Apple's multi-phased approach to discovery and direct the parties to proceed with merits-based discovery on an expedited timeline.

### A. <u>Background</u>

Apple has been inconsistent both as to the discovery sought and its purported reasons for needing it. Apple waited until August 4 to file a motion for "expedited" discovery, yet noticed the motion for October 1, ***after*** discovery opened and without filing a motion to shorten time. Dkt. 49 (motion); Dkt. 32 (setting Case Management Conference for October 1); *see* Fed. R. Civ. P. 26(d)(1), (f)(1). Its "expedited" discovery motion attached 18 interrogatories, 19 requests for production, six 30(b)(6) topics, and requested a nearly unlimited number of 30(b)(1) depositions, broadly directed to the merits of the case. Dkts. 49-50. Apple asked that these "expedited" discovery requests not count against the limits imposed by applicable rules. Dkt. 49-9 at 2.

Discovery opened on September 10. That day, Apple served the same proposed "expedited" requests, due in 30 days, it attached to its motion for "expedited" discovery without any Court order that such requests would not count against the limits imposed by applicable rules. It also served

"regular" discovery, also due in 30 days, consisting of 165 document requests and 38 interrogatories. Apple initially designated its requests as "Highly Confidential—Attorneys' Eyes Only" in their entirety, making it impossible to share them with Defendants (and thus impossible to respond). Apple eventually agreed to designate the requests "Confidential," allowing only the individual defendants and three designated corporate reps to review, while redacting information from everyone else. The redacted requests, e.g., "All Communications between You and [REDACTED] on or after February 2, 2024" (RFP 27), are essentially unusable. In other words, while it sought rapid discovery, Apple made it impossible for Defendants to fully and promptly respond.

During the Court's September 14 conference, Apple began by admitting that no expedited discovery is necessary for its PI motion. Tr. at 8:22-23 ("That preliminary injunction can be granted without this discovery."); *see also id.* at 8:23-9:21. Later, Apple reversed course, stating Defendants "should be ordered immediately to share" forensic images of the devices that Defendants relied upon in their PI Opposition, *i.e.*, Defendant Liu's personal device (Dkt. 98 ¶ 19), "before we come to the October 14 hearing"—relief that Apple had never before sought. Tr. at 19:16-24. Apple then agreed to provide "narrow[ed]" discovery requests. *Id.* at 31:16-17 (advising Apple to "narrow[] the ***request that you have***, Mr. Desmarais, and see how narrow you can get ***those***" (emphasis added)).

But rather than narrowing its existing requests, Apple emailed Defendants late on September 15 (only after Defendants inquired), attaching entirely new proposed requests that, in many respects, broadened the discovery Apple sought. For example, Apple sought forensic images of ***all*** devices and accounts used during employment at Apple, whether or not they contain any Apple trade secrets, and "[a]ll documents related to OpenAI's research and development related to metal finishes, power management, or battery functionality for consumer hardware." Given that Apple's proposal went to the merits of the case (and beyond)—not Apple's PI motion—Defendants proposed that the parties simply respond to all as-served discovery on an expedited basis and subject to the limits imposed by the Federal Rules. Doing so would allow all parties to move this case along quickly, without the additional complications that phased discovery imposes.

The parties met and conferred on September 17. During that discussion, Apple confirmed (i) its proposal was additive to, rather than in lieu of, the "expedited" discovery requests Apple had

previously attached to its motion and served on Defendants; (ii) it did not have a proposed deadline for service of responses or production of documents; (iii) any "expedited" depositions would take place 30 days following production of documents; and (iv) its "expedited" discovery would not count against the presumptive limits set by the Federal Rules. Apple's positions were inconsistent with what Apple told the Court, which is that it would prioritize the discovery it most needed in advance of the PI hearing—that is, an image of Liu's personal device. *See* Tr. at 22:12-14 ("The part we need for the PI are the images that they haven't given us that they have used in their opposition papers that, you know, ***we need those right away***." (emphasis added)).

Following that meet and confer—on the evening before this Statement was due—Apple reversed course yet again, revising its proposal and indicating it now considers the revised proposal to be in lieu of (not in addition to) the expedited discovery previously served. The revision dropped one request for production—only to broaden another. Apple's revision still did not tailor its requests to its PI motion, as it represented to the Court it would. *E.g.*, Tr. at 22:7-18. Further underscoring Apple's failure to demonstrate good cause, it cites materials filed just hours before this submission to buttress its request, which is improper. *See* Civil L.R. 7-3(d). Regardless, the same filings make clear that Apple's PI is centered on a limited set of files Liu allegedly downloaded from Box.

**B. <u>Argument</u>**

Despite the Court's clear guidance, Apple's so-called "narrowed" discovery is untethered to the issues raised in its PI motion and instead go to the heart of the merits in this case. Its requests are not suitable for expedited discovery and should be denied. *XimpleWare Corp. v. Versata Software, Inc.*, 2013 WL 6405979, at *3 (N.D. Cal. Dec. 6, 2013) (denying expedited discovery where requests were "not narrowly tailored to obtain evidence relevant to [the PI] motion")*; Navarrete v. Hill's Pet Nutrition, Inc.*, 2019 WL 1932388, at *2 (N.D. Cal. May 1, 2019) (same).

1. <u>Category One: Requests for Production</u>

Apple's requests for production remain irredeemably overbroad and should be denied.

***First***, Apple broadly seeks (1) every forensic image Defendants have ever taken from anyone, whether or not it relates to Apple's PI motion; and (2) additional images of any device that once contained "Apple Originated Information" from Chang Liu, Tang Yew Tan, and two nonparty OpenAI

employees, which includes any information "learned" as a result of "advancing any Apple business or other endeavor" that is not entirely public (Ex. 1 at 1) and is thus not limited to issues relevant to Apple's PI motion or even Apple's ill-defined list of asserted trade secrets. Indeed, it is so broad that it is unclear what specific information Apple actually seeks. Apple's proposal then gives Apple and its forensic experts – not a forensic neutral – complete access to Defendants' devices to search for this undefined universe. Unlike Defendants' proposal, Apple does not provide for search terms nor other relevance, privacy, or privilege filtering. Instead Apple claims its expert will somehow avoid privileged or HIPAA-protected information, and makes no representations about who will be permitted to review OpenAI proprietary information and personal files present on the devices. These expansive requests for system-level access to entire devices are not tailored or proportional. With respect to the first category (RFP 1), the mere fact that Defendants took an image of a device to preserve its contents is not an admission of relevance, let alone an indication that those images were inspected, or relied on, for Defendants' PI opposition. And with respect to the second (RFP 2), putting aside that OpenAI does not have possession, custody, or control of its employees' personal devices, Apple does not even allege that the nonparty employees improperly retained or transferred Apple files, and Tan is alleged only to have forwarded himself emails (Dkt. 1 ¶ 9), making a complete inspection of their devices nothing more than a fishing expedition.

***Second***, Apple seeks all records of Liu's use of AI tools (RFP 3), regardless of whether such use related to Apple's asserted trade secrets in any way, and despite that its PI motion makes no mention of Liu's AI use. Apple also seeks all communications between Liu and Peng over a period of months, irrespective of the subject matter of those communications (RFP 6). Defendants do not object to producing relevant materials, but the vast majority of the requested materials are irrelevant, and the privacy and privilege concerns surrounding these personal communications are significant.

***Third***, Apple seeks all documents related to OpenAI's research and development regarding broad swaths of technology, and all communications with a commonly known supplier, regardless of whether any Apple information was involved. This demand for a complete technical record of OpenAI's development of any technology within Apple's broad categories is overbroad and premature, and an apparent attempt to snoop on a competitor. Apple's request is not even limited to

OpenAI's first product under development, which Apple expressed ostensible concern about (Tr. at 28:17-29:1)—it encompasses ***any*** research and development. And it requires OpenAI to reveal its trade secrets before Apple has revealed its own (which are the subject of this lawsuit)—placing this request far beyond the scope of merits-based discovery, let alone "expedited" discovery.

Apple's concerns about "intermingling" do not justify its overbroad production requests. Under Defendants' proposal, Apple will receive the same information well before any device ships—which will occur no earlier than the end of February 2027. *See iyO Inc. v. io Products et al.*, No. 3:25-cv-04861-TLT (N.D. Cal.), Dkt. 145 ¶ 2. Nor do Apple's purported concerns regarding preservation have merit. Defendants are complying with their preservation obligations. Regardless, Defendants' proposal for expedited discovery addresses this concern as well.

2. Category Two: Interrogatories

Consistent with its approach to RFPs, Apple's interrogatories are not tethered to its PI motion. In fact, every single interrogatory is tied to Apple's overbroad definition of "Apple Originated Information." Apple's requests are likewise not limited to the individuals relevant to the PI motion, but seek discovery regarding any of the more than 400 OpenAI employees who used to work at Apple. On top of this, Apple contends these interrogatories should not count toward the 25-interrogatory limit under the Federal Rules, giving Apple extra merits-based discovery.

3. Category Three: Depositions

Apple's "narrowed" request demands at least one 30(b)(6) and four 30(b)(1) depositions. It concedes these depositions are irrelevant to its PI motion by asking that they take place 30 days after production of documents (and thus long after the hearing). Yet Apple also argues these depositions should not count against the limitations imposed by the Federal Rules. Defendants agree that all parties may notice depositions on any timeline they wish, but there is no reason to force witnesses to sit for multiple depositions in violation of the Federal Rules.

***

Apple's proposal is not narrowly tailored to the issues raised in its PI motion. It should be denied, and all parties should be directed to respond to all already-served discovery within 21 days of proper service, and consistent with the Federal Rules.

Dated: September 18, 2026

By: *Karim Z. Oussayef*
Gabriel S. Gross (SBN 254672)
Gaby LaHatte (SBN 321844)
Vanessa K. Sim (SBN 341107)
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, California 94065
Telephone: (650) 802-3000
Facsimile: (650) 802-3100
gabe.gross@weil.com
gaby.lahatte@weil.com
vanessa.sim@weil.com

Christopher W. Henry (*pro hac vice*)
Adam Gershenson (*pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
1001 Boylston Street, Suite 300
Boston, Massachusetts 02115
Telephone: (617) 772-8300
Facsimile: (617) 772-8333
chris.henry@weil.com
adam.gershenson@weil.com

Rachel L. Weiner Cohen (*pro hac vice*)
Nicole Elena Bruner (*pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, DC 20036
Telephone: (202) 682-7000
Facsimile: (202) 857-0940
rachel.cohen@weil.com
nicole.bruner@weil.com

Heather Blacklaws (*pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
600 Congress Avenue, Suite 2170
Austin, Texas 78701
Telephone: (512) 487-1480
Facsimile: (512) 487-1520
heather.blacklaws@weil.com

Nina Shapiro (*pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
767 5th Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Respectfully submitted,

By: */s/ Andrew H. Schapiro*
Andrew H. Schapiro (*pro hac vice*)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
(312) 705-7400
andrewschapiro@quinnemanuel.com

Patrick D. Curran (Bar No. 241630)
111 Huntington Ave, Suite 520
Boston, MA 02199
(617) 712-7100
patrickcurran@quinnemanuel.com

David Eiseman (Bar No. 114758)
Jodie W. Cheng (Bar No. 292330)
Victoria B. Parker (Bar No. 290862)
Andrew M. Mather (Bar No. 345548)
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600
davideiseman@quinnemanuel.com
jodiecheng@quinnemanuel.com
vickiparker@quinnemanuel.com
andrewmather@quinnemanuel.com

Yehuda Goor (*pro hac vice*)
Lucas A. Hammill (*pro hac vice*)
Jordan M. Nakdimon (*pro hac vice*)
295 Fifth Avenue, 9th Floor
New York, NY 10016
(212) 849-7000
yehudagoor@quinnemanuel.com
lucashammill@quinnemanuel.com
jordannakdimon@quinnemanuel.com

Joseph E. Reed (Bar No. 323524)
555 Twin Dolphin Dr., 5th Floor
Redwood Shores, CA 94065
(650) 801-5000
joereed@quinnemanuel.com

*Attorneys for Defendants OpenAI Foundation, OpenAI Group PBC, io Products LLC, and Tang Yew Tan*

By: */s/ Kate E. Lazarus*
Kate E. Lazarus (Bar No. 268242)
KWUN BHANSALI LAZARUS LLP
klazarus@kblfirm.com
555 Montgomery Street, Suite 750
San Francisco, CA 94111
Tel: (415) 630-2350

nina.shapiro@weil.com

*Attorney for Defendant Chang Liu*

John M. Desmarais (SBN 320875)
Karim Z. Oussayef (*pro hac vice*)
Steven Balcof (*pro hac vice*)
Jun H. Tong (*pro hac vice*)
Ido Sadeh (*pro hac vice*)
DESMARAIS LLP
230 Park Ave, 26th Floor
New York, New York 10169
Telephone: (212) 351-3400
Facsimile: (212) 351-3401
jdesmarais@desmaraisllp.com
koussayef@desmaraisllp.com
sbalcof@desmaraisllp.com
jtong@desmaraisllp.com
isadeh@desmaraisllp.com

Marie Delzell (SBN 367393)
DESMARAIS LLP
101 California Street, Suite 3000
San Francisco, California 94111
Telephone: (415) 573-1900
Facsimile: (415) 573-1901
mdelzell@desmaraisllp.com

Atifah Safi (*pro hac vice*)
DESMARAIS LLP
1899 Pennsylvania Avenue, NW, Suite 400
Washington, DC 20006
Telephone: (202) 451-4900
Facsimile: (202) 451-4901
asafi@desmaraisllp.com

*Attorneys for Plaintiff Apple Inc.*