# EXHIBIT 1 – FILED UNDER SEAL

quinn emanuel trial lawyers | boston
111 Huntington Avenue, Suite 520, Boston, Massachusetts 02199-7626 | TEL (617) 712-7100 FAX (617) 712-7200

October 9, 2026

Gabriel S. Gross
Weil, Gotshal & Manges LLP
201 Redwood Shores Parkway, 5th floor
Redwood Shores, CA 94065
Gabe.Gross@weil.com

Re: Cease and Desist; Preservation and Remediation of OpenAI Confidential Information

Dear Gabe:

We write concerning former OpenAI employee [redacted], who we understand recently returned to Apple after a short period working for OpenAI.[1] We are gravely concerned that [redacted] took highly confidential information regarding OpenAI's unreleased products to Apple, and is now using that material at Apple's direction. OpenAI's investigation has identified multiple transfers of OpenAI materials from one of [redacted]'s OpenAI iMessage accounts to his personal accounts and devices (including associated personal iMessage accounts). Indeed, after accepting employment at Apple but before formally departing OpenAI, [redacted] sent multiple highly confidential files about an unreleased OpenAI device under development to his personal phone numbers from a work iMessage account. The files at issue include detailed images of unreleased devices, as well as highly confidential engineering and manufacturing data about those devices. The files also include supplier information and project files, standards for cosmetic finishes, and reports regarding coating and sealing of hardware components. Some of those files were sent just after midnight in Singapore on June 2, 2026—[redacted]'s final day at OpenAI, and only moments before he joined Apple. [redacted] has apparently been using the information for Apple's benefit after leaving OpenAI and joining Apple—even reportedly sharing details about OpenAI's unreleased products at a presentation to other Apple employees.

[1] We are sending this letter to Apple counsel only. We have not contacted [redacted] directly because we have reason to believe [redacted]'s conduct may be imputed to his employer Apple. Consistent with the ethical rules, we are contacting Apple's counsel rather than [redacted]. Please confirm that your firm will be representing [redacted] on these issues. If [redacted] has separate counsel, please identify that counsel immediately.

[redacted] was required to return company information when he left OpenAI, which was reiterated directly to him by his manager and our product security lead. He could retain confidential materials only with the Company's written consent, which was neither sought nor provided. His departure did not entitle him to keep these files for future personal work or work at Apple. We are very concerned by reports of [redacted] using this information for Apple's benefit, including for presentations to colleagues.

We request that Apple immediately take all necessary steps to investigate and remediate these issues—including providing OpenAI with a comprehensive report of any and all information shared and/or used, confirming that unauthorized access has ceased, and preserving all evidence related to these issues. This letter also places Apple on notice of [redacted]'s contractual obligations. We need your commitment to respecting those contractual obligations. That is particularly urgent here. Given the reports of [redacted]'s presenting to Apple employees on unreleased OpenAI products, combined with Apple's practices concerning personal and work iCloud accounts, as well as Apple's reported launch next week of a new product after [redacted] presented to Apple on OpenAI's confidential product strategy, we need Apple to turn to these issues immediately.

Given the urgency of these matters, we request Apple's cooperation in addressing these issues immediately. Please acknowledge receipt and confirm immediate preservation and containment by 12pm Pacific on Saturday, October 10, 2026, and provide a substantive response to each request below no later than 5pm Pacific on Sunday, October 11, 2026. We are available to discuss over the weekend.

## I. [redacted]'s contractual obligations

[redacted] entered into a Contract of Employment dated October 17, 2025 and a Confidential Information and Invention Assignment Agreement ("CIIAA") dated October 18, 2025. The agreements protect confidential information and materials relating to the Company and the OpenAI Group (each as defined therein).

The CIIAA expressly includes within "Confidential Information" nonpublic "product or service ideas or plans," "engineering designs and drawings," "hardware configuration information," and confidential supplier information. CIIAA § 4(b). Section 10 states that [redacted] "will not use or disclose such Confidential Information except as authorized by OpenAI or as otherwise provided by this Agreement" during his employment.

Section 7 of the CIIAA restricts removal of OpenAI documents and materials from business premises and delivery outside the OpenAI Group, except as required to perform his employment duties. It also requires him, "immediately upon the termination of the Relationship," to "return all OpenAI Documents and Materials," together with company property and reproductions, subject to exceptions for his personal compensation records and copy of the agreement. That provision expressly covers drawings, photographs, and materials embodying confidential information.

The employment contract independently requires [redacted] upon termination, to "immediately return to the Company all Confidential Information" and provides that he "shall not without the written consent of the Company retain any copies thereof." Contract of Employment

cl. 15.4(a). Clause 15.4(b), in turn, addresses company information on personal devices and storage facilities, expressly including cloud storage and personal email accounts, and requires delivery of a copy to the Company followed by deletion. Clause 15.5 also permits the Company to require a signed statement confirming return. Any return or deletion undertaken now must follow the evidence-preservation protocol requested below.

The CIIAA also requires [redacted] to inform any person or entity with whom he seeks a business relationship within twelve months after termination of his contractual obligations to OpenAI. CIIAA § 9. Apple must confirm whether, and if so, when, [redacted] disclosed those obligations in connection with his recruitment and employment.

**II. Transfers of sensitive OpenAI information**

[redacted] joined OpenAI on December 2, 2025, worked on manufacturing quality and inspection for the consumer hardware division, resigned five months later on May 19, 2026, and departed on June 2, 2026.

It has recently come to OpenAI's attention that [redacted] sent outgoing iMessage attachments from a work account to his personal phone numbers [redacted] and [redacted]. The OpenAI materials [redacted] sent from his work account to his personal accounts include the following:

- ***Device appearance and inspection materials***. [redacted] sent himself detailed archives of materials regarding unreleased devices on several occasions just before his departure. This includes sending a zip file of confidential product materials to his personal phone [redacted] on May 28, 2026 and again to [redacted] on June 1, 2026. These materials include device images and inspection visualizations for unreleased OpenAI consumer devices, as well as processing source code. These highly confidential and trade secret materials reveal the appearance and inspection process for unreleased devices. Their disclosure could give a competitor advance insight into confidential product design and development.

- ***Device engineering and manufacturing data***. [redacted] repeatedly sent himself OpenAI technical information shortly before leaving, one example being sending the archive [redacted] to [redacted] on June 1, 2026. The contents of these files and other files he sent himself include troves of highly confidential trade secret information regarding unreleased devices, including cross-section drawings, standards and requirements for cosmetic finishes, reports regarding coating and sealing for components, dimensions, tolerances, actual measurements, process-capability results, yields, and supplier information, together with a measurement repeatability and reproducibility workbook. These materials reveal both physical specifications and manufacturing performance. Their disclosure would provide competitive insight into engineering decisions, production constraints, and quality requirements that are not apparent from a product's exterior.

These are only two examples of [redacted]'s expansive misuse of OpenAI files, and OpenAI's investigation is ongoing. Copying or transferring confidential material without authorization is a

violation of [redacted]'s contractual obligations. Retaining copies after departure without the Company's written consent also violates the express return and non-retention obligations.

The misappropriation of OpenAI's information creates a serious concern that [redacted] continued to misuse this information after his departure, including in the course of his renewed employment at Apple, particularly given that the misappropriated information remained accessible in [redacted]'s iMessage account after his departure. Apple's admitted co-mingling of personal and work iMessage accounts means that [redacted]'s iMessage materials may now be accessible on and syncing to Apple's enterprise servers, and may have placed highly confidential OpenAI trade secret information in Apple's possession. As established in court proceedings, Apple can and does access its employees' iMessage accounts, meaning that the confidential information [redacted] took from OpenAI may now be accessible to Apple or has already been accessed and used. We request that Apple investigate these issues without delay and provide a supported response. Apple's response should address not only the use of the stolen files themselves but also whether information was disclosed orally by [redacted] (for example, in presentations to coworkers) or incorporated into Apple work without a corresponding file transfer.

**III. Required action and information**

OpenAI demands immediate cessation of any unauthorized use or disclosure of its information. By the deadlines above, please provide a written response addressing each of the following:

1. Confirm that Apple has instructed [redacted] and relevant personnel not to use or disclose OpenAI confidential information and has implemented reasonable safeguards to prevent its use in Apple's work; describe those safeguards; and confirm [redacted]'s current role and responsibilities at Apple.

2. Confirm whether Apple personnel received, accessed, used, or disclosed OpenAI confidential information, including in electronic form or in presentations or other verbal exchanges, and describe any identified instances and remedial steps.

3. Preserve relevant evidence and segregate any identified OpenAI confidential information from operational use. Confirm what information has been secured and who may access it, describe any remedial steps taken, and propose a protocol for its return or deletion, subject to preservation obligations and written agreement between counsel.

**IV. Preservation of evidence**

OpenAI further demands that Apple immediately preserve all documents and information, in any form whatsoever, that may be relevant to the misappropriation of OpenAI's information. As you know, litigation is already underway, and Apple and [redacted] must preserve relevant documents, communications, files, data, and metadata within their possession, custody, or control. This includes evidence regarding [redacted]'s recruitment and employment; his obligations to OpenAI; the acquisition, transmission, receipt, access, retention, disclosure, or use of OpenAI information; and Apple's investigation and remediation. We also request that Apple notify [redacted]

[redacted] and other relevant custodians of their preservation obligation, including as to responsive information on personal devices and accounts.

OpenAI's investigation is ongoing, and OpenAI reserves all rights and remedies, including the right to seek appropriate injunctive relief. We look forward to your prompt response.

Regards,

Patrick D. Curran