# EXHIBIT 2 – FILED UNDER SEAL

Debevoise & Plimpton

Debevoise & Plimpton LLP
650 California Street
San Francisco, CA 94108
+1 415 738 5700

Josh Lerner
Partner
jhlerner@debevoise.com
+1 415 738 5705

October 12, 2026

**Via Email**

Patrick D. Curran
Quinn Emanuel Urquhart & Sullivan, LLP
111 Huntington Ave., Suite 520
Boston, Massachusetts 02199

Dear Mr. Curran:

As we discussed today by telephone, we represent Apple Inc. ("Apple") in connection with your letter dated October 9, 2026 (the "Letter") and follow up emails concerning [redacted]. Apple's investigation into the issues raised in your letter is ongoing, so we address the allegations in your letter below based on available information.

**1. The Letter's Phone Numbers Do Not Match [redacted]'s Apple Work Phone Number**

Your Letter alleges that [redacted] sent OpenAI materials from a work iMessage account to his two alleged personal phone numbers: [redacted] (a mainland China number), and [redacted] (a Singapore number). Neither phone number matches the number [redacted] uses for his Apple work. It thus appears that Apple does not have possession, custody, or control of data sent to these numbers while [redacted] was employed at OpenAI.

**2. No Evidence of OpenAI Files Referenced in Your Letter on Apple's Servers**

Your Letter identifies a file named [redacted] that [redacted] allegedly sent to his Singapore number, and an unnamed file that [redacted] allegedly sent to both his mainland China and Singapore numbers, which you claim contains device images, inspection visualizations, and processing source code for unreleased OpenAI consumer devices. To date, the investigation of repositories associated with [redacted]'s work at Apple has not uncovered a "[redacted]" file or device images, inspection visualizations, or processing source code that are plainly associated with OpenAI based on their file names.

Based on your description of the [redacted] file, it appears [redacted] and [redacted] may refer to two quality control methodologies widely implemented at least by the 1990s. Other than searching for the specific file name, which Apple is doing, it will be difficult to locate potentially relevant files, if they exist, based only on the terms "[redacted] and "[redacted] If OpenAI is willing to provide additional file names and search terms, Apple will perform reasonable searches for those files or terms in repositories associated with [redacted]'s work at Apple.

**3. Apple Is Not Aware of [redacted] Presenting About OpenAI Products to Apple Employees**

Your Letter alleges that [redacted] has been "reportedly sharing details about OpenAI's unreleased products at a presentation to other Apple employees." To date, we have not learned about any presentation [redacted] gave to Apple employees about unreleased OpenAI products.

If OpenAI has details (e.g., date, location, or attendees) about the presentation referenced in the Letter, please provide those so that Apple can further investigate.

**4. Current Role at Apple**

[redacted] is an engineer on Apple's Manufacturing Design team, which is the same role he held at Apple before departing for OpenAI. He focuses on iPhone.

**5. Preservation of Evidence and Remediation**

As to your demands concerning preservation, Apple is taking appropriate steps, including preservation of evidence, to comply with its legal obligations in connection with your Letter. As to your demands for remedial steps or a protocol for return or deletion, Apple is unaware of anything to remediate or delete but will work with OpenAI on this issue should Apple's ongoing investigation identify any OpenAI confidential information that [redacted] brought to Apple.

Regards,

*/s/ Josh Lerner*

Josh Lerner